## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HERCULES OFFSHORE, INC., *et al.* | ) | Case No. 15-11685 (___) |
| | ) | |
| Debtors.[1] | ) | (Joint Administration Requested) |
| | ) | |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO FILE (A) CONSOLIDATED LIST OF CREDITORS AND (B) CONSOLIDATED LIST OF DEBTORS' TOP THIRTY-FIVE CREDITORS; (II) WAIVING THE REQUIREMENT TO FILE A LIST OF EQUITY SECURITY HOLDERS; (III) EXTENDING THE TIME, AND, UPON PLAN CONFIRMATION, WAIVING THE REQUIREMENT, TO FILE SCHEDULES AND STATEMENTS OF FINANCIAL AFFAIRS; (IV) WAIVING THE REQUIREMENT TO CONVENE THE SECTION 341(A) MEETING OF CREDITORS; (V) LIMITING NOTICE REQUIRED UNDER BANKRUPTCY RULE 2002; (VI) CONDITIONALLY WAIVING (A) THE STAFFING AND BUDGET REQUIREMENTS OF THE U.S. TRUSTEE FEE GUIDELINES AND (B) ANY APPLICABLE REQUIREMENT TO APPOINT A FEE EXAMINER; AND (VII) GRANTING RELATED RELIEF

Hercules Offshore, Inc. ("HERO") and certain of its affiliates, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby move (the "Motion") for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105, 521 and 341 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 1001-1(c), 1007-1, 1007-2, and 2002-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (i) authorizing the Debtors to file (a) a consolidated list

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Cliffs Drilling Company (8934); Cliffs Drilling Trinidad L.L.C. (5205); FDT LLC (7581); FDT Holdings LLC (4277); Hercules Drilling Company, LLC (2771); Hercules Liftboat Company, LLC (0791); Hercules Offshore, Inc. (2838); Hercules Offshore Services LLC (1670); Hercules Offshore Liftboat Company LLC (5303); HERO Holdings, Inc. (5475); SD Drilling LLC (8190); THE Offshore Drilling Company (4465); THE Onshore Drilling Company (1072); TODCO Americas Inc. (0289); and TODCO International Inc. (6326).

of creditors in lieu of submitting separate mailing matrices for each Debtor and (b) a consolidated list of the Debtors' thirty-five (35) largest unsecured creditors; (ii) waiving the requirement to file a list of equity security holders; (iii) extending the time for the Debtors to file schedules of assets and liabilities and statements of financial affairs (collectively, "Schedules and Statements") through and including November 7, 2015 (the "Deadline"), and waiving the requirement that the Debtors file their Schedules and Statements upon confirmation of the Plan (as defined below) if confirmation occurs on or before the Deadline; (iv) waiving the requirement to convene the section 341(a) meeting of creditors if the Plan becomes effective on or before the Deadline; (v) limiting notice required under Bankruptcy Rule 2002 to be provided in these cases; (vi) conditionally waiving, to the extent applicable, (a) the budget and staffing requirements of the *Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under United States Code by Attorneys in Large Chapter 11 Cases* (the "Large Case Fee Guidelines") and (b) any requirement to appoint a fee examiner based on the Debtors' total assets or liabilities; and (vii) granting related relief.  In support of the Motion, the Debtors rely upon and incorporate by reference the *Declaration of Troy L. Carson in Support of First Day Motions* (the "First Day Declaration"), filed with the Court concurrently herewith.[2]  In further support of the Motion, the Debtors, by and through their undersigned proposed counsel, respectfully state as follows:

## JURISDICTION

1.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant

---

[2]   Capitalized terms not defined herein are defined in the First Day Declaration.

to 28 U.S.C. §§ 157(b)(2).  Venue of these proceedings and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 521(a)(1), and 341(e) of the Bankruptcy Code, as supplemented by Bankruptcy Rules 1007(a)(1), (a)(3) and (d) and Local Rules 1001-1(c), 1007-1, 1007-2, and 2002-1.

3.      The Debtors consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

### BACKGROUND

4.      The Debtors intend to continue in the possession of their respective properties and the management of their respective businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No trustee, examiner, or official committee has been appointed in these cases.

5.      On the date hereof (the "Petition Date"), each Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code to effectuate the *Debtors' Joint Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated July 13, 2015 (the "Plan"), enhance liquidity, and solidify their long-term growth prospects and operating performance.   The Debtors commenced solicitation of votes to accept or reject the Plan on July 13, 2015.  As of the Petition Date, holders of more than 99% in amount of Class 3

Senior Notes Claims—the only class entitled to vote on the Plan—already have voted to accept the Plan.[3]

6.      Information regarding the Debtors' business operations, corporate structure, capital structure, and the reasons for commencing these cases is set forth in the First Day Declaration, incorporated herein by reference.

7.      The Debtors and their Non-Debtor Subsidiaries (collectively, "<u>Hercules</u>" or the "<u>Company</u>") are leading providers of shallow-water drilling and marine services to the oil and natural gas exploration and production industry globally.  Hercules operates a fleet of 27 self-elevating, mobile drilling units, or "jackup rigs," including one rig under construction, and 24 self-elevating, self-propelled "liftboat" vessels.  This diverse fleet is capable of providing services such as oil and gas exploration and development drilling, well service, platform inspection, maintenance and decommissioning operations.

8.      Largely driven by the recent decline in the price of crude oil, Hercules, like other companies in the offshore drilling market, has faced challenges as demand for jackup rigs remains weak, while, at the same time, the market is scheduled to deliver a significant number of newbuild rigs in the next several years.  In early 2015, faced with a heavy debt burden, including approximately $1.2 billion in outstanding unsecured Senior Notes, and declining revenues, Hercules hired financial and legal advisors to evaluate a wide range of options to improve Hercules' financial position in the event of a prolonged market downturn.  To this end, Hercules and an ad hoc group of holders of Senior Notes—which would ultimately become the Steering Group—entered into negotiations regarding a potential restructuring transaction that would allow

---

[3] *See Declaration of James Daloia of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Debtors' Joint Prepackaged Chapter 11 Plan*, filed contemporaneously herewith.  The Debtors commenced solicitation of the Plan on July 13, 2015.  The deadline for submitting ballots was August 12, 2015.

Hercules to substantially reduce its debt burden and secure additional liquidity to help Hercules navigate the current down cycle.

9.      On June 17, 2015, after many weeks of intensive negotiations, the Debtors and the Steering Group, the members of which hold in excess of two-thirds of the aggregate principal amounts outstanding under the Senior Notes, entered into the Restructuring Support Agreement (as may be amended from time to time, the "Restructuring Support Agreement").   The Restructuring Support Agreement sets forth, subject to certain conditions, the commitment to and obligations of, on the one hand, the Debtors, and on the other hand, the Steering Group members in connection with a restructuring of the Debtors' Senior Notes, which is to be implemented through the Plan.

10.      The restructuring transactions contemplated by the Plan will significantly deleverage the Debtors' balance sheet, eliminating the Debtors' funded debt obligations by converting the entire $1.2 billion in principal amount of its Senior Notes into 96.9% of the New HERO Common Stock.  Despite the fact that the amount of the Debtors' liabilities significantly exceeds the Debtors' enterprise value--by more than $500 million--and thus, the existing equity holders are substantially out of the money, the Plan provides that the other 3.1% of the New HERO Common Stock and 100% of the New HERO Warrants, which provide holders the opportunity to purchase their pro rata share of up to an additional 20.0% of the New HERO Common Stock at a price per share price based upon a $1.55 billion total enterprise value, will be allocated to existing equity holders in exchange for cancellation of their existing stock and their agreement to grant the voluntary third-party releases set forth in the Plan.

11.      Importantly, holders of Allowed General Unsecured Claims will be paid in the ordinary course of business in accordance with ordinary course terms under the Plan subject to

any rights or defenses the Debtors may have to all or any portion of such Claims.  Effectively, the Plan will reinstate those General Unsecured Claims and leave them unimpaired.  The Debtors have also received commitments from certain members of the Steering Group for a new $450 million term loan exit facility to provide liquidity for the continuation of operations following the Effective Date.

12.    Contemporaneously herewith, the Debtors have filed the *Motion of Hercules Offshore Inc. et. al., for Entry of an Order (A) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (B) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures, (C) Approving the Solicitation Procedures, (D) Approving the Confirmation Hearing Notice, and (E) Approving Procedures for Equity Holders to Opt Out of Releases* (the "Solicitation Procedures Motion").  The Solicitation Procedures Motion, requests that the Court set a combined hearing on approval of the Disclosure Statement and confirmation of the Plan for September 25, 2015.  Based on that timeline, the Debtors anticipate emerging from chapter 11 on or about October 9, 2015, or approximately 57 days following the Petition Date.

## RELIEF REQUESTED

13.    By this Motion, the Debtors seek entry of an order (i) authorizing the Debtors to file (a) a consolidated list of creditors in lieu of submitting separate mailing matrices for each Debtor and (b) a consolidated list of the Debtors' thirty-five (35) largest unsecured creditors; (ii) waiving the requirement to file a list of equity security holders; (iii) waiving the requirement, that the Debtors file their Schedules and Statements upon confirmation of the Plan if confirmation occurs on or before the Deadline; (iv) waiving the requirement to convene the section 341(a) meeting of creditors if the Plan becomes effective on or before the Deadline; (v) limiting notice required under Bankruptcy Rule 2002 to be provided in these cases; (vi)

conditionally waiving, to the extent applicable, (a) the budget and staffing requirements of the Large Case Fee Guidelines and (b) any requirement to appoint a fee examiner based on the Debtors' total assets or liabilities; and (vii) granting related relief.

**BASIS FOR RELIEF**

**A.    Request for Authority to File Consolidated List of Creditors in Lieu of Submitting Separate Mailing Matrices for Each Debtor**

14.    Local Rule 1007-2 provides that, in a voluntary chapter 11 case, the debtor must file "a list containing the name and complete address of each creditor in such format as directed by the Clerk's Office Procedures."  Local Rule 2002-1(f)(v) requires each debtor in jointly administered cases to maintain a separate creditor mailing matrix.  Local Rule 1001-1(c) permits modification of the Local Rules by the Court "in the interest of justice."

15.    The Debtors presently maintain computerized lists of the names and addresses of their respective creditors that are entitled to receive notices and other documents in these chapter 11 cases.  The lists are maintained without regard for which entity a party may have a relationship with.  The Debtors believe that the information as maintained in computer files (or those of their agents) may be utilized efficiently to provide interested parties with notices and other similar documents as contemplated by Local Rule 1007-2 on a consolidated basis. Requiring the Debtors to submit Debtor-specific creditor matrices for each of the Debtors would be an unnecessarily burdensome task and would likely result in duplicate mailings.  Accordingly, by this Motion, the Debtors seek authority to file the lists on a consolidated basis, identifying their creditors in the format or formats currently maintained in the ordinary course of the Debtors' businesses.

16.    Moreover, concurrently with this Motion, the Debtors have filed applications (together, the "Noticing, Balloting and Disbursing Agent Applications") seeking the appointment

of Prime Clerk LLC ("Agent") as noticing, balloting and disbursing agent in these chapter 11 cases.  If the Noticing, Balloting, and Disbursing Agent Applications are granted, Agent will, among other things, (a) assist with the consolidation of the Debtors' computer records into a creditor and security holder database and (b) complete the mailing of notices and other documents in these chapter 11 cases to the parties in these databases.  After consultation with Agent, the Debtors believe that filing the lists in the format or formats currently maintained in the ordinary course of business will be sufficient to permit Agent to notice promptly all applicable parties as required by Local Rule 1007-2.

17.    Finally, the Court has granted relief similar to the relief requested herein since the modifications to Local Rule 2002-1(f)(v) took effect.  *See, e.g.*, *In re EveryWare Global, Inc.*, No. 15-10743 (LSS) (Bankr. D. Del. Apr. 9, 2015) (authorizing filing of a consolidated list of creditors in lieu of separate mailing matrices); *In re USA Synthetic Fuel Corporation*, No. 15-10599 (MFW) (Bankr. D. Del. Mar. 19, 2015) (same); *In re The Dolan Company*, No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014) (same); *In re Sorenson Commc'ns, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014) (same); *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Dec. 6, 2013) (same).

**B.    Request for Authority to File Consolidated List of Debtors' Top Thirty-Five Unsecured Creditors**

18.    Pursuant to Bankruptcy Rule 1007(d), a chapter 11 debtor must file with its voluntary petition a list setting forth the names, addresses, and claim amounts of the creditors, excluding insiders, that hold the twenty largest unsecured claims in the debtor's case (a "Top 20 List").  This Top 20 List is primarily used by the United States Trustee (the "U.S. Trustee") to evaluate the types and amounts of unsecured claims against the debtor and thus identify potential

candidates to serve on an official committee of unsecured creditors appointed in the debtor's case pursuant to section 1102 of the Bankruptcy Code.

19.     The Debtors request authority to file a single list of their thirty-five (35) largest general unsecured creditors on a consolidated basis.  Because the Top 20 Lists of several of the Debtors could overlap, and certain other Debtors may have fewer than twenty identifiable unsecured creditors, the Debtors submit that filing separate Top 20 Lists for each Debtor would be of limited utility.  In addition, given the international operations of the Debtors and worldwide location of many of their general unsecured creditors, the exercise of compiling separate Top 20 Lists for each individual Debtor could consume an excessive amount of the company's limited time and resources, and could constitute a distraction of management's attention otherwise needed on operations at the start of these chapter 11 cases.  Further, the Debtors do not believe that any of their unsecured creditors will be prejudiced if the Debtors file a single list of their thirty-five (35) largest unsecured creditors because the Plan contemplates that the Debtors' unsecured creditors (other than the holders of Senior Notes) will be paid in full.  Finally, the Debtors believe a single, consolidated list of the company's thirty-five (35) largest unsecured, non-insider creditors will aid the U.S. Trustee in its efforts to communicate with these creditors.

20.     Therefore, the Debtors respectfully request authorization to file a single consolidated list of their thirty-five (35) largest unsecured creditors in these cases (the "Consolidated Top 35 List").

21.     The Debtors believe that such relief is not only appropriate under the circumstances, but necessary for the efficient and orderly administration of these cases.

**C.      Request for Waiver of the Requirement to File the List of Equity Security Holders**

22.     Bankruptcy Rule 1007(a)(3) requires a debtor, within 14 days of the petition date, to file a list containing the name, address, and the number and kind of interests of each equity

security holder. *See* Fed. R. Bankr. P. 1007(a)(3). Further, Bankruptcy Rule 2002(d) requires that equity security holders be provided notice of, among other things, the commencement of the bankruptcy case and the confirmation hearing. *See* Fed. R. Bankr. P. 2002(d).

23. The Debtors respectfully submit that the requirements to file a list of equity holders should be waived in these cases. As of the Petition Date, HERO common stock was listed for trading on The Nasdaq Global Select Market ("NASDAQ") and approximately 161,639,357 shares of HERO Equity Interests were issued and outstanding. The Debtors submit that preparing a list of HERO's equity security holders with last known addresses and sending notice of all motions and pleadings to such parties would prove extremely expensive and time-consuming and serve little or no beneficial purpose. This is especially true where, as here, the only class entitled to vote to accept or reject the Plan has already accepted the Plan, and the Debtors believe that these chapter 11 cases will be expeditiously concluded. Moreover, HERO filed with its petition a list of holders of five percent or more of HERO's outstanding common stock based on information ascertained from filings with the Securities and Exchange Commission.

24. Even without a list of HERO's equity security holders, the Debtors will be able to serve a combined notice of commencement of the cases and the confirmation hearing on each of HERO's equity security holders. During the pre-petition solicitation period, the Debtors sent each of HERO's equity security holders the *Notice of (a) Non-Voting Status with Respect to the Debtors' Plan and (B) Election to Opt Out of Voluntary Release of Claims by Holders of Hero Equity Interests*, attached hereto as **Exhibit B** (the "Equity Release Consent Notice"), thereby providing HERO's equity security holders with notice of the commencement of solicitation of votes to accept the Plan, and giving them the opportunity to receive a distribution they are not

otherwise entitled to receive.  At that time, the Debtors' proposed notice and claims agent obtained a list of registered holders and nominee holders and coordinated with those parties to provide the Equity Release Consent Notice to all of HERO's equity security holders.  The Debtors intend to send notice of commencement and the confirmation hearing in the same manner.

25.    Further, the equity markets had immediate notice of the execution of the Restructuring Support Agreement, the solicitation of the Plan and Disclosure Statement, and the filing of these chapter 11 cases by virtue of the Debtors filing Form 8-Ks with the Securities and Exchange Commission, and the Debtors' publication of a notice of commencement of the chapter 11 cases on their public website, www.herculesoffshore.com, the website of the notice and claims agent, http://cases.primeclerk.com/hercules, and in the Wall Street Journal. Similarly, the equity markets will have immediate notice of material events during the chapter 11 cases by virtue of HERO's filing Form 8-Ks with the Securities and Exchange Commission. Finally, and most importantly, despite being $500 million out of the money, holders of HERO Equity Interests are receiving  the opportunity to obtain a distribution under the Plan.  Thus, HERO's equity security holders will not be prejudiced.

26.    Courts routinely grant substantially similar relief in cases involving publicly-traded debtors.  *See, e.g.*, *In re The Dolan Company*, No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014) (waiving the requirement to file a list of equity security holders and the requirement to provide notice directly to equity security holders); *In re Gatehouse Media, Inc.*, No. 13-12503 (MFW) (Bankr. D. Del. Sept. 30, 2013 (extending the deadline to, and, if the debtors' plans were confirmed in such time, waiving the requirement to file a list of equity security holders); *In re PMGI Holdings, Inc.*, No. 13-12404 (CSS) (Bankr. D. Del. Sept. 18, 2013) (waiving the

requirement to file a list of equity security holders); *In re Maxcom Telecomunicaciones, S.A.B. de C.V.*, No. 13-11839 (PJW) (Bankr. D. Del. Aug. 15, 2013) (extending deadline to, and, if the debtors' plan were confirmed in such time, waiving the requirement to file a list of equity security holders); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013) (same).

27.     The Debtors other than HERO are all wholly-owned subsidiaries of HERO or another Debtor.  The ownership of these entities will be reflected on the corporate ownership statement filed with their voluntary petitions.  Accordingly, filing a separate list of equity security holders will serve no beneficial purpose.

28.     In light of the foregoing, the Debtors submit that cause exists for the Court to waive the requirement under Bankruptcy Rule 1007(a)(3) with respect to lists of equity security holders.  Bankruptcy Code section 105(a) also empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  The Debtors submit that the relief requested is appropriate in these chapter 11 cases and is within the Court's equitable powers.

**D.      Request for Extension of Time to File Schedules and Statements, and Waiver of, the Requirement to File Schedules and Statements**

29.     Section 521 of the Bankruptcy Code requires a debtor to file schedules and statements, unless the court orders otherwise.  Furthermore, Bankruptcy Rule 1007 requires that a debtor file schedules and statements within 14 days of its petition date, unless the Court grants an extension of such time for "cause."  Fed. R. Bankr. P. 1007(c) (permitting extension of time to file schedules and statements "on motion for cause shown").  Under Local Rule 1007-1(b), in a voluntary chapter 11 case where the debtor has more than 200 creditors and otherwise satisfies the conditions of Local Rule 1007-2, the time within which the debtor must file its schedules and

statements is extended to 30 days from the date of the petition date. A further extension may be granted for cause upon filing of a motion. *See* Del. Bankr. L.R. 1007-1(b).

30.     The Court's grant of an extension of time to file the Schedules and Statements through and including the Deadline is necessary and appropriate in light of the circumstances surrounding these prepackaged chapter 11 cases. First, the Debtors have thousands of potential creditors and the operation of the Debtors' international businesses requires the Debtors to maintain voluminous books, records, and complex accounting systems. Accordingly, completing the Schedules and Statements would require the Debtors and their advisors to dedicate substantial time and resources, and at substantial cost, with little or no benefit to the estate and creditors because the Debtors have proposed a prepackaged, "ride through" Plan that has been accepted overwhelmingly by the only impaired voting class.

31.     Second, for the same reasons, no party in interest would be prejudiced by the Court granting the Debtors' request for an extension through and including the Deadline. General unsecured creditors are unimpaired under the Plan. Additionally, the ad hoc group of holders of Senior Notes that collectively hold in excess of 66 2/3% of the Senior Notes (the "Steering Group") -- which is the only impaired voting class -- support the relief sought in this Motion, and more than 99% of holders of Senior Notes that have voted on the Plan have voted to accept the Plan. For these reasons, "cause" exists under Bankruptcy Rule 1007 and Local Rule 1007-1(b) to grant the requested extension.

32.     As noted above, section 105(a) of the Bankruptcy Code, which codifies the equitable powers of the bankruptcy court, empowers courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." In light of the facts and circumstances surrounding these prepackaged chapter 11 cases, the Court has authority,

consistent with section 521(a) of the Bankruptcy Code, to grant the relief requested herein. *See Hawkeye Renewables, LLC*, No. 09-14461 (KJC), 2010 WL 2745975, at *24 (Bankr. D. Del. June 2, 2010) (granting debtor's motion for waiver, upon confirmation of the debtor's prepackaged chapter 11 plan, of requirement to file and list, schedule, or statement under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007); *In re Elec. Components Int'l, Inc.*, No. 10-11054 (KJC), 2010 WL 3350305, at *25 (Bankr. D. Del. May 11, 2010) (same).

33.    Furthermore, it is appropriate to waive the requirement that the Debtors file the Schedules and Statements effective upon confirmation of the Plan if confirmation occurs on or before the Deadline. In light of the Debtors' substantial, international operations, the Debtors would require an enlargement of the time to prepare the Schedules and Statements. Indeed, the Debtors would expect to be in a position to file the Schedules and Statements at approximately the same time that the Debtors expect to emerge from chapter 11. And, as discussed above, no party in interest would be prejudiced if the requirement that the Debtors file the Schedules and Statements was waived. Finally, preparing the Schedules and Statements would cause the Debtors to incur substantial expense and would burden the Debtors' employees at a time when such employees should be implementing or preparing to implement the restructuring.

34.    Courts in this district have granted similar waivers in other prepackaged chapter 11 cases. *See, e.g.*, *In re EveryWare Global, Inc.*, No. 15-10743 (LSS) (Bankr. D. Del. Apr. 9, 2015) (permanently waiving requirement to file schedules and statements upon confirmation of plan); *In re The Dolan Company*, No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014) (same); *In re Sorenson Commc'ns, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014) (same); *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Dec. 6, 2013) (same); *In re*

*Maxcom Telecomunicaciones, S.A.B. de C. V.*, No. 13-11839 (PJW) (Bankr. D. Del. Aug. 15,
2013) (same); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Mar. 18, 2013) (same).

**E.**     **Request for Waiver of Requirement to Convene the Section 341(a) Meeting of
Creditors if the Plan Becomes Effective On or Prior to the Deadline**

35.     Section 341(a) of the Bankruptcy Code requires the U.S. Trustee to convene and

preside at a meeting of creditors (a "<u>Section 341(a) Meeting</u>"), and section 341(b) of the

Bankruptcy Code authorizes the U.S. Trustee to convene a meeting of equity security holders (a

"<u>Section 341(b) Meeting</u>" and collectively with a Section 341(a) Meeting, a "<u>Section 341</u>

<u>Meeting</u>").  However, Bankruptcy Code section 341(e) provides that:

> Notwithstanding subsections (a) and (b), the court, on the request
> of a party in interest and after notice and a hearing, for cause may
> order that the United States trustee not convene a meeting of
> creditors or equity security holders if the debtor has filed a plan as
> to which the debtor solicited acceptances prior to the
> commencement of the case.

11 U.S.C. § 341(e).

36.     The purpose of a Section 341 Meeting is to provide parties in interest with a

meaningful opportunity to examine a debtor and obtain important information about the debtor.

In these cases, however, the Plan was solicited prior to the Petition Date and has very strong

support from the Debtors' key stakeholders, as over 99% of holders of Class 3 Senior Notes

Claims—the only class entitled to vote on the Plan—have voted to accept the Plan.[4]  Further, the

holders of General Unsecured Claims are unimpaired under the Plan.  Therefore, parties are not

likely to receive any benefit from a Section 341 Meeting.

37.     The Debtors filed these chapter 11 cases to implement and effectuate the Plan and

the Debtors solicited the requisite acceptances of the Plan prior to commencing these chapter 11

---

[4]   *See Declaration of James Daloia of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of
Ballots Cast on the Debtors' Joint Prepackaged Chapter 11 Plan*, filed contemporaneously herewith.  The Debtors
commenced solicitation of the Plan on July 13, 2015.  The deadline for submitting ballots was August 12, 2015.

cases. The Debtors intend to proceed expeditiously to confirm the Plan and emerge from chapter 11 as quickly as possible.

38.     Accordingly, the Debtors respectfully request that the U.S. Trustee not convene a Section 341 Meeting unless the Plan is not confirmed on or prior to the Deadline.

**F.     Request to Limit Notice to Certain Creditors Under Bankruptcy Rule 2002**

39.     In the ordinary course of the Debtors' global business, the Debtors receive goods and services from both domestic and foreign vendors.  While the Debtors have made a good faith effort to compile a consolidated list of their respective creditors, the Debtors do not possess the notice information for certain foreign vendors, and dedicating company resources to research such notice information would unnecessarily expend the Debtors' resources and distract the Debtors' management during these chapter 11 cases.

40.     The Plan leaves all holders of General Unsecured Claims unimpaired, to be paid in the ordinary course of business in accordance with ordinary course terms, subject to any rights or defenses the Debtors may have to all or any portion of such Claims.  Thus, general unsecured creditors are not being impacted by the Plan and are riding through the Plan unimpaired.  The Bankruptcy Court is permitted under Bankruptcy Rule 2002(a) to limit notices required to be provided.  Here, it is appropriate to limit notices required under Bankruptcy Rule 2002 to those creditors for which the Debtors are able to determine notice addresses after expending reasonable, good faith efforts.

41.     Accordingly, the Debtors request that the Court waive the requirement to provide notice of the commencement of these chapter 11 cases or any future notice to foreign vendors for whom the Debtors do not possess a current address, unless the Plan is not confirmed on or prior to the Deadline.

**G.    Request for Waiver of Certain Large Case Fee Guidelines and Fee Examiner Requirement**

42.    Effective November 1, 2013, the U.S. Trustee adopted new guidelines for reviewing fee applications of estate-compensated attorneys retained in larger chapter 11 cases. Under the Large Case Fee Guidelines, attorneys are subject to additional disclosure and reporting requirements to aid the U.S. Trustee and other parties in reviewing fee applications in larger, more complex cases.   The U.S. Trustee's goals in adopting the new guidelines are stated expressly in the guidelines themselves, and include fostering greater transparency, accountability, and oversight, as well as assuring that bankruptcy attorneys are subject to the same market forces as non-bankruptcy attorneys. *See* Large Case Fee Guidelines § B.1 (*Goals*).

43.    Among the U.S. Trustee's stated goals is to "encourage the adoption of budgets and staffing plans developed between the client and the applicant." *See id.* § B.1.e.  One of the purposes behind the budget and staffing plans is to "encourage applicants to consider how to assign and staff more routine and 'commoditized' work, such as avoidance actions and claims objections." *Id.* § B.2.c. The budget and staffing requirements are not mandatory, however. Rather, the U.S. Trustee "ordinarily will seek the use of fee and expense budgets and staffing plans either with consent of the parties or by court order as soon as feasible after the commencement of the case." *Id.* § B.2.m.  Then, "if the applicant consents, or the court directs, the use of budget and staffing plans . . .," the applicant will attach a budget and staffing plan for the period covered by the fee application, which the guidelines suggest will typically cover a 120-day period. *See id.* §§ C.6, C.6.a., & E.

44.    The Debtors submit that, under the circumstances of these cases, the budget and staffing requirements of the Large Case Fee Guidelines would be unduly burdensome and would not serve their intended purpose.   Indeed, the "watchdog" function in these cases is being

effectively performed by the Steering Group, the members of which will hold a majority of the equity of HERO upon emergence.  Accordingly, the Debtors seek a limited, conditional waiver of the budget and staffing requirements of the Large Case Fee Guidelines.

45.     As described above, the Debtors have filed these cases with a prepackaged chapter 11 plan, under which all General Unsecured Claims "ride through" unimpaired.  The Debtors intend to be out of chapter 11 within 57 days (or less) of the Petition Date.  Additionally, unlike the vast majority of debtors in chapter 11, the Debtors in this case have no secured debt. As a result, the Debtors are not seeking debtor-in-possession financing or use of cash collateral, and, therefore, have not formulated a DIP or cash collateral budget from which to base a budget under the Large Case Fee Guidelines.  For these reasons, formulating a budget and staffing plan would be unduly burdensome.

46.     Moreover, the budget and staffing plan would have very limited or no utility if the cases go according to plan.  The goal of the budget and staffing plan requirements is to foster ongoing oversight and discipline over the duration of a chapter 11 case.  *See* Large Case Fee Guidelines § B.1.   In these cases, however, the Debtors intend to be in chapter 11 for approximately 57 days (or less).   Indeed, the Debtors are not seeking procedures for interim compensation because, due to the expected brief duration of these cases, the first monthly applications would be filed at around the time the Debtors exit chapter 11, and the first quarterly interim applications would not be due until after final applications are due under the Plan. Therefore, the oversight, forecasting, and predictive functions of the budget and staffing plans would serve no purpose in these cases.

47.     In addition, the other goals advanced by the budget and staffing plan would not be served in these cases.  As described above, a chief goal of the staffing plan is to encourage

allocation of work among professionals so that more routine and "commoditized" work, such as avoidance actions or claims objections, is performed by counsel with lower billing rates or alternative fee structures.  *See* Large Case Fee Guidelines § B.2.c.  In these cases, however, there will be no avoidance actions or claims objections because all General Unsecured Claims "ride through" the cases unimpaired.  Assuming the Debtors' Plan is confirmed in current form and on the envisioned timeframe, there will not be a bar date or claims allowance and disallowance process.

48.     Accordingly, for all of the foregoing reasons, the Debtors submit that a limited waiver of the staffing and budget requirements is appropriate, conditioned on the Plan being confirmed by the Deadline.  If the Plan is not confirmed by the Deadline, then the Debtors' professionals will work with the U.S. Trustee to provide appropriate budgets and staffing plans as applicable.

49.      In addition, by general order or by practice, certain of the judges in this district require the appointment of a fee examiner or fee auditor when the assets or liabilities of the debtor exceed a certain threshold, typically $100 million.  Due to the expected limited duration of these cases, and for the other reasons discussed above, the Debtors respectfully request a limited waiver of any applicable general order requiring appointment of a fee examiner or fee auditor, conditioned on the Plan being confirmed by the Deadline.

<u>**NOTICE**</u>

50.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 35 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Senior Notes Indenture Trustees; (d) counsel to the Steering Group; (e) the United States Environmental Protection Agency; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service;

(h) the office of the attorneys general for the states in which the Debtors operate; (i) the Securities and Exchange Commission; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-l (m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

51.    No prior request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:   August 13, 2015                         MORRIS, NICHOLS, ARSHT & TUNNELL LLP
         Wilmington, Delaware

                                                 */s/ Matthew B. Harvey*_____
                                                 Robert J. Dehney (No. 3578)
                                                 Eric D. Schwartz (No. 3134)
                                                 Matthew B. Harvey (No. 5186)
                                                 Tamara K. Minott (No. 5643)
                                                 1201 N. Market St., 16th Flr.
                                                 PO Box 1347
                                                 Wilmington, DE  19899-1347
                                                 Telephone: (302) 658-9200
                                                 Facsimile: (302) 658-3989
                                                 rdehney@mnat.com
                                                 eschwartz@mnat.com
                                                 mharvey@mnat.com
                                                 tminott@mnat.com

                                                         - and -

                                                 BAKER BOTTS LLP
                                                 Emanuel C. Grillo (pro hac vice pending)
                                                 Christopher Newcomb (pro hac vice pending)
                                                 30 Rockefeller Plaza
                                                 New York, New York 10112
                                                 Telephone: (212) 892-4000
                                                 emanuel.grillo@bakerbotts.com
                                                 chris.newcomb@bakerbotts.com

                                                         - and -

                                                 James Prince II (pro hac vice pending)
                                                 C. Luckey McDowell (pro hac vice pending)
                                                 Meggie S. Gilstrap (pro hac vice pending)
                                                 2001 Ross Avenue
                                                 Dallas, Texas 75201
                                                 Telephone: (214) 953-6500
                                                 jim.prince@bakerbotts.com
                                                 luckey.mcdowell@bakerbotts.com
                                                 meggie.gilstrap@bakerbotts.com

                                                 *Proposed Counsel for Debtors*
                                                 *and Debtors in Possession*

9307676.2