# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HERCULES OFFSHORE, INC., *et al.* | ) | Case No. 15-<u>11685</u> (___) |
| | ) | |
| Debtors.[1] | ) | |
| | ) | |

## DEBTORS' JOINT PREPACKAGED PLAN OF REORGANIZATION
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

---

**NO CHAPTER 11 CASES HAVE BEEN COMMENCED AT THIS TIME. THE SOLICITATION MATERIALS ACCOMPANYING THIS JOINT PREPACKAGED PLAN OF REORGANIZATION HAVE NOT BEEN APPROVED BY ANY COURT. FOLLOWING THE COMMENCEMENT OF THE CHAPTER 11 CASES, THE DEBTORS EXPECT TO PROMPTLY SEEK ENTRY OF AN ORDER SCHEDULING A COMBINED HEARING ON THE ADEQUACY OF THE DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES AND CONFIRMATION OF THE PLAN.**

---

Emanuel C. Grillo (pro hac vice pending)
Christopher Newcomb (pro hac vice pending)
BAKER BOTTS LLP
30 Rockefeller Plaza
New York, New York 10112
(212) 892-4000

- and –

James Prince II (pro hac vice pending)
C. Luckey McDowell (pro hac vice pending)
Meggie S. Gilstrap (pro hac vice pending)
BAKER BOTTS LLP
2001 Ross Avenue
Dallas, Texas 75201
(214) 953-6500

*Proposed Co-Counsel to Debtors and Debtors in Possession*

Robert J. Dehney
Matthew B. Harvey
Tamara K. Minott
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street, 16th Floor
Wilmington, Delaware 19801
(302) 658-9200

*Proposed Co-Counsel to Debtors and Debtors in Possession*

Dated: July 13, 2015

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Cliffs Drilling Company (8934); Cliffs Drilling Trinidad L.L.C. (5205); FDT LLC (7581); FDT Holdings LLC (4277); Hercules Drilling Company, LLC (2771); Hercules Liftboat Company, LLC (0791); Hercules Offshore, Inc. (2838); Hercules Offshore Services LLC (1670); Hercules Offshore Liftboat Company LLC (5303); HERO Holdings, Inc. (5475); SD Drilling LLC (8190); THE Offshore Drilling Company (4465); THE Onshore Drilling Company (1072); TODCO Americas Inc. (0289); and TODCO International Inc. (6326).

## TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

ARTICLE I. DEFINITIONS AND CONSTRUCTION OF TERMS ....................................... 1

    A.   Definitions ........................................................................................................ 1

    B.   Interpretation, Application of Definitions, and Rules of Construction ......................... 16

    C.   Computation of Time .......................................................................................... 17

ARTICLE II. ADMINISTRATIVE CLAIMS, FEE CLAIMS, AND PRIORITY CLAIMS .. 17

    A.   Administrative Claims (Other Than Fee Claims). ................................................. 17

    B.   Fee Claims. ....................................................................................................... 17

    C.   Priority Tax Claims. ........................................................................................... 18

    D.   U.S. Trustee Fees. ............................................................................................. 18

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
                INTERESTS ...................................................................................... 19

    A.   Classification of Claims and Equity Interests. ..................................................... 19

    B.   Record Date. ..................................................................................................... 19

    C.   Summary of Classification and Class Identification. ............................................. 19

    D.   Treatment of Classified Claims and Equity Interests. ........................................... 20

    E.   Special Provision Regarding Unimpaired and Reinstated Claims ............................ 24

    F.   Voting of Claims ............................................................................................... 24

    G.   Nonconsensual Confirmation ............................................................................. 25

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ................................... 25

    A.   Operations Between the Confirmation Date and Effective Date .............................. 25

    B.   First Lien Exit Facility. ..................................................................................... 25

    C.   Issuance of New HERO Common Stock and New HERO Warrants. ....................... 26

    D.   The New HERO Warrants. ................................................................................. 27

    E.   Cancellation of Certain Indebtedness, Agreements, and Existing Securities. ............. 28

    F.   Claims Against Non-Debtor Subsidiaries. ........................................................... 28

    G.   Intercompany Interests ....................................................................................... 29

    H.   Continued Corporate Existence and Vesting of Assets. ......................................... 29

    I.   Steering Group Fees and Expenses ...................................................................... 29

    J.   Senior Notes Indenture Trustee Fees and Expenses .............................................. 30

    K.   Waiver of Avoidance Actions ............................................................................. 30

    L.   Preservation of Causes of Action ........................................................................ 30

M.  Claims Incurred After the Effective Date. ................................................ 31

N.  Corporate Action. ........................................................................................ 31

ARTICLE V. PROVISIONS REGARDING CORPORATE GOVERNANCE OF THE
        REORGANIZED DEBTOR ........................................................................ 31

A.  Organizational Documents. .......................................................................... 31

B.  Appointment of Officers and Directors. ....................................................... 32

C.  Powers of Officers. ....................................................................................... 32

D.  Existing Benefits Agreements and Retiree Benefits. .................................... 32

E.  New HERO Management Incentive Program. ............................................... 32

F.  Indemnification of Directors, Officers, and Employees. .............................. 33

ARTICLE VI. CONFIRMATION OF THE PLAN ................................................. 33

A.  Conditions to Confirmation. ......................................................................... 33

B.  Waiver of Conditions Precedent to Confirmation. ....................................... 34

ARTICLE VII. SETTLEMENT,  RELEASE, INJUNCTION AND RELATED PROVISIONS
        .......................................................................................................... 34

A.  General Settlement of Claims and Interests. ................................................. 34

B.  Subordination of Claims ............................................................................... 35

C.  Discharge of the Debtors. ............................................................................. 35

D.  Release of Liens. ........................................................................................... 36

E.  Releases by the Debtor .................................................................................. 36

F.  Releases by Holders of Claims and Equity Interests. ................................... 37

G.  Exculpation. .................................................................................................. 38

H.  Injunction. ..................................................................................................... 38

I.  Limitations on Exculpations and Releases. .................................................. 39

J.  Preservation of Insurance. ............................................................................. 39

ARTICLE VIII. DISTRIBUTIONS UNDER THE PLAN ........................................ 39

A.  Procedures for Treating Disputed Claims. .................................................... 39

B.  Allowed Claims and Equity Interests. .......................................................... 40

C.  Allocation of Consideration. ........................................................................ 42

D.  Estimation. .................................................................................................... 43

E.  Insured Claims. ............................................................................................. 43

ARTICLE IX. RETENTION OF JURISDICTION .................................................. 43

ARTICLE X. EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............. 45

A.  Assumption of Executory Contracts and Unexpired Leases. ........................ 45

B.  Cure Claims. ................................................................................................. 46

C.    Reservation of Rights.................................................................................................47

D.    Assignment. ...............................................................................................................47

E.    Insurance Policies. .....................................................................................................47

F.    Post-Petition Contracts and Leases. ..........................................................................47

ARTICLE XI. EFFECTIVENESS OF THE PLAN ...............................................................48

A.    Conditions Precedent to Effectiveness.......................................................................48

B.    Waiver of Conditions Precedent to Effectiveness. .....................................................49

C.    Effect of Failure of Conditions. .................................................................................49

D.    Vacatur of Confirmation Order...................................................................................49

E.    Modification of the Plan. ............................................................................................49

F.    Revocation, Withdrawal, or Non-Consummation. ......................................................50

ARTICLE XII. MISCELLANEOUS PROVISIONS ..............................................................50

A.    Immediate Binding Effect...........................................................................................50

B.    Governing Law. ..........................................................................................................50

C.    Filing or Execution of Additional Documents............................................................51

D.    Term of Injunctions or Stays......................................................................................51

E.    Withholding and Reporting Requirements. .................................................................51

F.    Exemption From Transfer Taxes. ...............................................................................51

G.    Plan Supplement. ........................................................................................................52

H.    Notices. ......................................................................................................................52

I.    Conflicts......................................................................................................................52

## INTRODUCTION

Hercules Offshore, Inc. and certain of its affiliated Debtors jointly propose the following prepackaged plan of reorganization under section 1121(a) of chapter 11 of title 11 of the United States Code.   Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims against and Interests in each Debtor pursuant to the Bankruptcy Code.   The Debtors seek to consummate the restructuring on the Effective Date of the Plan. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.   The classifications of Claims and Interests set forth in Article III shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan does not contemplate substantive consolidation of any of the Debtors.

Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtors' history, business, results of operations, and projections for future operations and risk factors, together with a summary and analysis of the Plan.

THIS PLAN SHOULD BE CONSIDERED ONLY IN CONJUNCTION WITH THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED HEREWITH.  THE DISCLOSURE STATEMENT IS INTENDED TO PROVIDE YOU WITH INFORMATION YOU NEED TO MAKE AN INFORMED JUDGMENT WHETHER TO ACCEPT OR REJECT THIS PLAN.

## ARTICLE I.
## DEFINITIONS AND CONSTRUCTION OF TERMS

### A.    Definitions.

Unless otherwise defined herein, the following terms shall have the respective meanings set forth below:

1.    *2004 Long Term Incentive Plan*: means that certain Hercules 2004 Long-Term Incentive Plan, as amended and restated effective March 22, 2011, maintained by HERO.

2.    *2014 Long Term Incentive Plan*: means that certain Hercules Offshore, Inc. 2014 Long-Term Incentive Plan, effective May 14, 2014, maintained by HERO.

3.    *Accredited Investor*: has the meaning ascribed to such term in Rule 501(a) of Regulation D promulgated under the Securities Act.

4.    *Accrued Professional Compensation*: means, at any given time, and regardless of whether such amounts are billed or unbilled, all accrued, contingent, and/or unpaid fees and expenses (including success fees) for legal, financial advisory, accounting, and other services, and reimbursement of expenses by any Professional that the Court has not, as of the Effective Date, denied by Final Order (i) all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been filed for any

such amount) and (ii) after applying the remaining balance of any retainer that has been provided by the Debtor to such Professional; provided, however, that Accrued Professional Compensation shall not include fees and expenses that are reasonably incurred by the Senior Notes Indenture Trustees or that are awardable and allowable under section 503 of the Bankruptcy Code. To the extent the Court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation.

5.    _Administrative Claim_: means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, but not limited to, (i) any actual and necessary costs and expenses of preserving the Estates, (ii) any actual and necessary costs and expenses of operating the Debtors' businesses, (iii) any indebtedness or obligations assumed by the Debtors in connection with the conduct of its businesses, (iv) all compensation and reimbursement of expenses of Professionals to the extent awarded by the Court, (v) any fees or charges assessed against the Estates under section 1930 of title 28 of the United States Code, and (vi) any Claim for goods delivered to the Debtors within twenty (20) days of the Petition Date and entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code.

6.    _Allowed_: means, (i) with respect to any Claim, (a) following the Claims Objection Deadline, any Claim as to which no objection or request for estimation has been filed prior to the Claims Objection Deadline, (b) a Claim that has been expressly allowed by Final Order, (c) a Claim as to which the Debtors (with the consent of the Steering Group) or the Reorganized Debtors agree to the amount and/or priority thereof in writing, (d) a Claim that is expressly allowed pursuant to the terms of this Plan, or (e) a Claim that is listed in the Schedules (to the extent the Debtors file Schedules in the Chapter 11 Cases) as liquidated, non-contingent, and undisputed and (ii) with respect to any Equity Interest, such Equity Interest is reflected as outstanding in the stock transfer ledger or similar register of any of the Debtors on the Record Date and is not subject to any objection or challenge. If a Claim or Equity Interest is Allowed only in part, any provisions hereunder with respect to Allowed Claims or Allowed Equity Interests are applicable solely to the Allowed portion of such Claim or Equity Interest. For the avoidance of doubt, (a) there is no requirement to file a proof of Claim (or move the Court for allowance) to be an Allowed Claim under the Plan (provided <u>that</u> holders of (i) Fee Claims shall be required to file applications for allowance and payment of their Fee Claims in accordance with Article II.B hereof and (ii) Administrative Claims that are not based on liabilities incurred by the Debtors in the ordinary course of business shall be required to move the Court for allowance and payment of their Administrative Claims) and (b) Unimpaired Claims shall be Allowed to the same extent such Claims would be allowed under applicable nonbankruptcy law.

7.    _April 2019 Notes_: means the 10.250% Senior Notes due April 1, 2019 issued pursuant to the April 2019 Notes Indenture.

8.    _April 2019 Notes Claims_: means the Claims evidenced by, derived from, based upon, relating to, or arising from, the April 2019 Notes, which are deemed Allowed in the outstanding principal amount of $200 million plus accrued and unpaid interest.

9.     *April 2019 Notes Indenture*: means that certain Indenture dated April 3, 2012 between HERO, as issuer, the Debtor Subsidiaries, as guarantors, and U.S. Bank National Association, as trustee, as amended from time to time, pursuant to which the April 2019 Notes were issued.

10.     *April 2019 Notes Indenture Trustee*: means U.S. Bank National Association, as trustee for the April 2019 Notes.

11.     *April 2022 Notes*: means the 6.75% Senior Notes due April 1, 2022 issued pursuant to the April 2022 Notes Indenture.

12.     *April 2022 Notes Claims*: means the Claims evidenced by, derived from, based upon, relating to, or arising from, the April 2022 Notes, which are deemed Allowed in the outstanding principal amount of $300 million plus accrued and unpaid interest.

13.     *April 2022 Notes Indenture*: means that certain Indenture dated as of March 26, 2014 between HERO, as issuer, the Debtor Subsidiaries, as guarantors, and U.S. Bank National Association, as trustee, as amended from time to time, pursuant to which the April 2022 Notes were issued.

14.     *April 2022 Notes Indenture Trustee*: means U.S. Bank National Association, as trustee for the April 2022 Notes.

15.     *Ballots*: means each of the ballots distributed with the Disclosure Statement to each holder of an Impaired Claim that is entitled to vote to accept or reject the Plan.

16.     *Bankruptcy Code*: means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect with respect to the Chapter 11 Cases.

17.     *Bankruptcy Rules*: means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and local rules of the Court, as the context may require, as in effect with respect to the Chapter 11 Cases.

18.     *Business Day*: means any day on which commercial banks are open for business, and not authorized to close, in New York, New York, except any day designated as a legal holiday by Bankruptcy Rule 9006(a).

19.     *Cash*: means legal tender of the United States of America.

20.     *Causes of Action*: means any and all claims, causes of actions, cross-claims, counterclaims, third-party claims, indemnity claims, reimbursement claims, contribution claims, defenses, demands, rights, actions, debts, damages, judgments, remedies, Liens, indemnities, guarantees, suits, obligations, liabilities, accounts, offsets, recoupments, powers, privileges, licenses, and franchises of any kind or character whatsoever, known or unknown, contingent or noncontingent, matured or unmatured, suspected or unsuspected, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, whether arising before, on, or after the Petition Date, including through the Effective Date, in contract or

in tort, in law or in equity, or pursuant to any other theory of law (other than Avoidance Actions).  For the avoidance of doubt, the term "Causes of Action" shall include: (i) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law or in equity; (ii) the right to object to Claims; (iii) all claims pursuant to sections 362, 510, 542, 543, 544 through 550, 552 or 553 of the Bankruptcy Code; (iv) all claims and defenses, including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (v) any state law fraudulent transfer claims.

21. *Chapter 11 Cases*: means the chapter 11 cases commenced by the Debtors.

22. *Claim*: means a "claim" against any Debtor, as such term is defined in section 101(5) of the Bankruptcy Code.

23. *Claims Objection Deadline*: means the first Business Day that is the later of (i) one-hundred eighty (180) days after the Effective Date or (ii) such other later date the Court may establish upon a motion by the Debtors or the Reorganized Debtors, which motion shall be in form and substance reasonably satisfactory to the Steering Group and may be approved without a hearing and without notice to any party.

24. *Class*: means a group of Claims or Equity Interests classified under the Plan.

25. *Collateral*: means any property, or interest in property, of any of the Estates subject to a Lien to secure the payment or performance of a Claim, which Lien has not been avoided or is not subject to avoidance under the Bankruptcy Code or is otherwise invalid under the Bankruptcy Code or applicable law.

26. *Confirmation*: means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

27. *Confirmation Date*: means the date of Confirmation.

28. *Confirmation Hearing*: means the hearing held by the Court pursuant to Bankruptcy Rule 3020(b)(2) and section 1128 of the Bankruptcy Code, including any adjournments thereof, at which the Court will consider confirmation of the Plan, the adequacy of information in the Disclosure Statement and other related matters.

29. *Confirmation Order*: means the order entered by the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which order shall be in form and substance consistent with the Restructuring Support Agreement and otherwise reasonably satisfactory to the Steering Group.

30. *Convertible Notes*: means the 3.375% Convertible Senior Notes due 2038 issued pursuant the Convertible Notes Indenture.

31.    _Convertible Notes Claims_: means the Claims evidenced by, derived from, based upon, relating to, or arising from, the Convertible Notes, which are deemed Allowed in the outstanding principal amount of $7.027 million plus accrued and unpaid interest.

32.    _Convertible Notes Indenture_: means that certain Indenture dated June 3, 2008 between HERO, as issuer, and The Bank of New York Trust Company, National Association, as indenture trustee, as amended from time to time, pursuant to which the Convertible Notes were issued.

33.    _Convertible Notes Indenture Trustee_: means The Bank of New York Trust Company, National Association, as indenture trustee for the Convertible Notes.

34.    _Court_: means (i) the United States Bankruptcy Court for the District of Delaware, (ii) to the extent there is no reference pursuant to section 157 of title 28 of the United States Code, the United States District Court for the District of Delaware, and (iii) any other court having jurisdiction over the Chapter 11 Cases or proceedings arising therein.

35.    _Cure Claim_: means a Claim in an amount equal to all unpaid monetary obligations under an Executory Contract or Unexpired Lease assumed by the Debtors pursuant to section 365 of the Bankruptcy Code, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.  Any Cure Claim to which the holder thereof disagrees with the priority and/or amount thereof as determined by the Debtors (with the consent of the Steering Group) shall be deemed a Disputed Claim under this Plan.

36.    _Debtors_: means, collectively, each of the Debtor Subsidiaries and HERO.

37.    _Debtor Subsidiaries_: means, collectively, each of the following: Cliffs Drilling Company, Cliffs Drilling Trinidad LLC, FDT L.L.C., FDT Holdings LLC, Hercules Drilling Company, LLC, Hercules Liftboat Company, LLC, Hercules Offshore Services LLC, Hercules Offshore Liftboat Company LLC, HERO Holdings, Inc., SD Drilling LLC, THE Offshore Drilling Company, THE Onshore Drilling Company, TODCO Americas Inc., and TODCO International Inc.

38.    _Disclosure Statement_: means the Disclosure Statement for Debtors' Joint Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code, in furtherance of this Plan, which shall be in form and substance consistent with the Restructuring Support Agreement unless otherwise agreed to by the Steering Group, it being understood that the Disclosure Statement dated July 13, 2015 is satisfactory to the Steering Group.

39.    _Disputed_: means, with respect to any Claim or Equity Interest, other than a Claim or Equity Interest that has been Allowed pursuant to the Plan or a Final Order, a Claim or Equity Interest (i) that is listed in the Schedules (to the extent the Debtors file Schedules in the Chapter 11 Cases) as unliquidated, contingent, or disputed, and as to which no request for payment or proof of Claim or Equity Interest has been filed, (ii) as to which a proper request for payment or proof of Claim or Equity Interest has been filed, but with respect to which an objection or request for estimation has been filed and has not been withdrawn or determined

by a Final Order, (iii) that is disputed in accordance with the provisions of the Plan, or (iv) that is otherwise subject to a dispute that is being adjudicated, determined, or resolved in accordance with applicable nonbankruptcy law, pursuant to Article VIII.A.3.

40.    *DTC*: means the Depository Trust Company.

41.    *Effective Date*: means the date which is the first Business Day selected by the Debtors and the Steering Group, on which (a) all of the conditions to the occurrence of the Effective Date specified in Article XI.A have been satisfied or waived in accordance with Article XI.B and (b) no stay of the Confirmation Order is in effect, provided that if the first Business Day is a designated legal holiday in the United States, then the Effective Date will be the next Business Day in the United States.

42.    *Eligible Noteholder*: means a Senior Noteholder that certifies that it is: (a) a "Qualified Institutional Buyer" as such term is defined in 230 CFR 144A(a); or (b) an "Accredited Investor" as defined in Rule 501(a) of Regulation D promulgated under the Securities Act.

43.    *Entity*: means an "entity" as such term is defined in section 101(15) of the Bankruptcy Code.

44.    *Equity Interest*: means any "equity security" (as such term is defined in section 101(16) of the Bankruptcy Code) in any of the Debtors, including any issued or unissued share of common stock, preferred stock, or other instrument evidencing an ownership interest in one of the Debtors, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire any such interest in any of the Debtors (including any stock-based performance award, incentive stock option, restricted stock, restricted stock unit, stock appreciation right, dividend equivalent, or other stock based award) that existed immediately prior to the Effective Date, and any Claim against any of the Debtors subordinated pursuant to section 510(b) of the Bankruptcy Code.

45.    *Equity Release Consent Notice*: means the notice distributed to holders of HERO Equity Interests that provides the holder the option to not grant the voluntary releases provided for in Article VII.F of the Plan and provides notice that any such holder that opts out of the voluntary releases shall not be entitled to receive any consideration or distribution under the Plan, as set forth in Article III.D.7.

46.    *Estate*: means the estate of any Debtor created in the applicable Debtor's Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

47.    *Exchange Act*: means the Securities Exchange Act of 1934, as amended.

48.    *Exculpated Parties*: means (i) each Debtor, (2) each Steering Group Member and (3) the current and former officers, directors, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents and other representatives of the Debtors and the Steering Group.

49. *Executory Contract*: means a contract to which one or more Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

50. *Existing Benefits Agreement*: means all employment, retirement, severance, indemnification, and similar or related agreements, arrangements, and policies with the members of the Debtors' management team or directors as of the Petition Date.

51. *Fee Claim*: means a Claim for Accrued Professional Compensation.

52. *Final Order*: means an order or judgment of the Court which has not been modified, amended, reversed, vacated, or stayed, and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment of the Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired, as a result of which such order shall have become final in accordance with Bankruptcy Rule 8002; provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause an order not to be a Final Order.

53. *First Lien Exit Facility*: means the new credit facility entered into by the Reorganized Debtors on the terms set forth in the First Lien Exit Facility Credit Agreement, which credit facility shall be in the amount of no greater than $450 million.

54. *First Lien Exit Facility Commitment Letter*: means the commitment letter, dated as of July 13, 2015, pursuant to which certain Steering Group Members agree to backstop the First Lien Exit Facility, a copy of which is attached to the Disclosure Statement as Exhibit H.

55. *First Lien Exit Facility Credit Agreement*: means the credit agreement, to be effective as of the Effective Date, that will govern the First Lien Exit Facility, which shall be in form and substance consistent with the Restructuring Support Agreement and otherwise reasonably satisfactory to the Steering Group and included in the Plan Supplement.

56. *First Lien Exit Facility Documents*: means all loan and security documents, and other documents and filings, in each case related to the First Lien Exit Facility and as the same may be modified, supplemented or replaced from time to time and which shall be in form and substance consistent with the Restructuring Support Agreement and otherwise reasonably satisfactory to the Steering Group, the administrative and collateral agents under such First Lien Exit Facility and the lenders thereunder.

57.     *First Lien Exit Facility Subscription Procedures*: means the procedures with respect to the solicitation of holders of Allowed Senior Notes Claims that are Eligible Noteholders to participate, on a Pro Rata basis, in the First Lien Exit Facility, which procedures shall be in form and substance consistent with the Restructuring Support Agreement and otherwise reasonably satisfactory to the Steering Group.

58.     *General Unsecured Claim*: means any Claim that is not Secured or entitled to priority under the Bankruptcy Code or an order of the Court, including any Claim arising from the rejection of an Executory Contract or Unexpired Lease under section 365 of the Bankruptcy Code, other than (i) a Senior Notes Claim, (ii) a Guarantee Claim or (iii) an Intercompany Claim.

59.     *Governmental Unit*: has the meaning set forth in section 101(27) of the Bankruptcy Code.

60.     *Guarantee*: means each guarantee of HERO's obligations under the April 2019 Notes, the April 2022 Notes, the July 2021 Notes and the October 2021 Notes provided by one of the Debtor Subsidiaries.

61.     *Guarantee Claim*: means a "claim," as such term is defined in section 101(5) of the Bankruptcy Code, arising from each Guarantee.

62.     *Hercules*: means, collectively, the Debtors and the Non-Debtor Subsidiaries.

63.     *HERO*: means Hercules Offshore, Inc.

64.     *HERO Equity Interest*: means any Equity Interest in HERO, including, without limitation, (1) any share of common stock of HERO, of which 161,637,220 shares were outstanding as of July 8, 2015, and (2) any award  under the Debtors' 2004 Long Term Incentive Plan and 2014 Long-Term Incentive Plan of stock-based performance awards, incentive stock options, other options, restricted stock, restricted stock units, stock appreciation rights, dividend equivalents, and other stock based awards, and or any Claims in respect of same, whether vested or not.

65.     *Highlander*: means the Hercules Highlander, a newbuild jackup rig currently under construction.

66.     *Impaired*: means, when used with respect to Claims or Equity Interests, Claims or Equity Interests that are "impaired" within the meaning of section 1124 of the Bankruptcy Code.

67.     *Insured Claim*: means any Claim or portion of a Claim that is, or may be, insured under any of the Debtors' insurance policies.

68.     *Intercompany Claims*: means any Claim held by any Debtor or any Non-Debtor Subsidiary against any other Debtor or Non-Debtor Subsidiary.

69.    *Intercompany Interests*: means any Equity Interest or Non-Debtor Subsidiary Interest held by any Debtor or any Non-Debtor Subsidiary but excluding HERO Equity Interests.

70.    *July 2021 Notes*: means the 8.75% Senior Notes due July 15, 2021 issued pursuant to the July 2021 Notes Indenture.

71.    *July 2021 Notes Claims*: means the Claims evidenced by, derived from, based upon, relating to, or arising from, the July 2021 Notes, which are deemed Allowed in the outstanding principal amount of $400 million plus accrued and unpaid interest.

72.    *July 2021 Notes Indenture*: means that certain Indenture dated July 8, 2013 between HERO, as issuer, the Debtor Subsidiaries, as guarantors, and U.S. Bank National Association, as trustee, as amended from time to time, pursuant to which the July 2021 Notes were issued.

73.    *July 2021 Notes Indenture Trustee*: means U.S. Bank National Association, as trustee for the July 2021 Notes.

74.    *Legacy Notes*: means the 7.375% Senior Notes due March 1, 2018 issued pursuant to the Legacy Notes Indenture.

75.    *Legacy Notes Claims*: means the Claims evidenced by, derived from, based upon, relating to, or arising from, the Legacy Notes, which are deemed Allowed in the outstanding principal amount of $3.508 million plus accrued and unpaid interest.

76.    *Legacy Notes Indenture*: means that certain Indenture dated as of April 14, 1998, the First Supplemental Indenture dated as of February 14, 2002, and that certain Second Supplemental Indenture, dated as of March 13, 2002 between R&B Falcon Corporation, as issuer, and The Bank of New York, as trustee, as amended from time to time pursuant to which the Legacy Notes were issued.

77.    *Legacy Notes Indenture Trustee*: means The Bank of New York, as trustee for the Legacy Notes.

78.    *Lien*: has the meaning set forth in section 101(37) of the Bankruptcy Code.

79.    *Material Adverse Change*: has the meaning ascribed to such term in the Restructuring Support Agreement.

80.    *New Board*: means the board of directors of Reorganized HERO to be constituted as of the Effective Date pursuant to Article V.B.

81.    *New Hercules By-Laws*: means the amended and restated by-laws of the Reorganized HERO, which shall be in form and substance consistent with the Restructuring Support Agreement and otherwise reasonably satisfactory to the Steering Group and the form of which shall be included in the Plan Supplement.

82.    _New Hercules Charter_: means the amended and restated articles of incorporation of the Reorganized HERO, which shall be in form and substance consistent with the Restructuring Support Agreement and otherwise reasonably satisfactory to the Steering Group and the form of which shall be included in the Plan Supplement.

83.    _New HERO Common Stock_: means the shares of common stock of the Reorganized HERO authorized and issued pursuant to the Plan and the New Hercules Charter (including, without limitation, the shares issuable upon the exercise of the New HERO Warrants).

84.    _New HERO Management Incentive Program_: means the management incentive program described in Article V.E, which shall be implemented after the Effective Date and which shall be in form and substance consistent with the Restructuring Support Agreement and otherwise satisfactory to the Steering Group.

85.    _New HERO Management Incentive Program Equity_: means the shares of New HERO Common Stock to be issued by the Reorganized HERO to participating employees of the Reorganized Debtors or the Non-Debtor Subsidiaries, pursuant to awards issued in accordance with the terms of the New Hero Management Incentive Program.

86.    _New HERO Management Incentive Program Agreements_: means the agreements that will govern the terms of the New HERO Management Incentive Program Equity, which shall be in form and substance consistent with the Restructuring Support Agreement and otherwise satisfactory to the Steering Group  and the forms of which shall be included as an exhibit to the Plan Supplement.

87.    _New HERO Warrant Agreement_: means the warrant agreement that will govern the terms of the New HERO Warrants, which shall be in form and substance consistent with the Restructuring Support Agreement and otherwise reasonably satisfactory to the Steering Group and the form of which shall be included in the Plan Supplement.

88.    _New HERO Warrants_: means the six year warrants to be issued in accordance with the New HERO Warrant Agreement, entitling their holders, on a Pro Rata basis, to purchase up to 20% of the New Common Stock (subject to dilution from, among other things, the issuance of equity under the New HERO Management Incentive Program) at a per share price based upon a $1.55 billion total enterprise value of Reorganized HERO (calculated in a manner satisfactory to the Debtors and the Steering Group) and subject to such other terms as are set forth in the New HERO Warrant Agreement and the Restructuring Support Agreement.

89.    _Non-Debtor Subsidiaries_: means, collectively: TODCO Trinidad Ltd.; Cliffs Drilling (Barbados) Holdings SRL; Cliffs Drilling (Barbados) SRL; Cliffs Drilling Trinidad Offshore Limited; Hercules Offshore Holdings, Ltd.; Hercules International Holdings, Ltd.; Hercules Discovery Ltd.; Hercules Offshore Middle East Ltd.; Hercules Offshore Arabia Ltd.; Hercules Oilfield Services Ltd.; Hercules International Offshore, Ltd.; Hercules Offshore (Nigeria) Limited; Hercules North Sea, Ltd.; Hercules International Management Company Ltd.; Hercules International Drilling Ltd.; Hercules Offshore Labuan Corporation; Hercules Tanjung Asia Sdn Bhd; Hercules Britannia Holdings Limited; Hercules British Offshore Limited;

Hercules Offshore UK Limited; Hercules Offshore de Mexico S de R L de CV; Discovery Offshore Sarl; Discovery Offshore (Gibraltar) Limited; Discovery North Sea Ltd.; Discovery Offshore Services Ltd.; Hercules Offshore International LLC; and Hercules North Sea Driller Limited.

90.     _Non-Debtor Subsidiary Interest_: means any "equity security" (as such term is defined in section 101(16) of the Bankruptcy Code) in any of the Non-Debtor Subsidiaries, including any issued or unissued share of common stock, preferred stock, or other instrument evidencing an ownership interest in one of the Non-Debtor Subsidiaries, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire any such interest in any of the Non-Debtor Subsidiaries that existed immediately prior to the Effective Date.

91.     _Non-Eligible Noteholder_: means a Senior Noteholder that does not certify that it is: (a) a "Qualified Institutional Buyer" as such term is defined in 230 CFR 144A(a); or (b) an "Accredited Investor" as defined in Rule 501(a) of Regulation D promulgated under the Securities Act.

92.     _Non-Eligible Noteholder Election Form_: means the election form distributed to holders of Class 3 Senior Notes Claims as an exhibit to the Ballot that provides Non-Eligible Noteholders the option to not grant the voluntary releases provided in Article VII.F of the Plan.

93.     _October 2021 Notes_: means the 7.50% Senior Notes due October 1, 2021 issued pursuant to the October 2021 Indenture.

94.     _October 2021 Notes Claims_: means the Claims evidenced by, derived from, based upon, relating to, or arising from, the October 2021 Notes, which are deemed Allowed in the outstanding principal amount of $300 million plus accrued and unpaid interest.

95.     _October 2021 Notes Indenture_: means that certain Indenture dated October 1, 2013 between HERO, as issuer, the Debtor Subsidiaries, as guarantors, and U.S. Bank National Association, as trustee, as amended from time to time, pursuant to which the October 2021 Notes were issued.

96.     _October 2021 Notes Indenture Trustee_: means U.S. Bank National Association, as trustee for the October 2021 Notes.

97.     _Other Priority Claim_: means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than (i) an Administrative Claim, or (ii) a Priority Tax Claim.

98.     _Other Secured Claim_: means any Claim that is Secured.

99.     _Person_: means any individual, corporation, partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, Governmental Unit or any political subdivision thereof, or any other Entity.

100.    _Petition Date_: means the date on which the Debtors commenced the Chapter 11 Cases.

101.    _Plan_: means this _Debtors' Joint Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code_, together with all addenda, exhibits, schedules, or other attachments, if any, including the Plan Supplement, each of which is incorporated herein by reference, and as the same may be amended, modified, or supplemented from time to time in accordance with the terms herein and in the Restructuring Support Agreement, as applicable.

102.    _Plan Scheduling Motion_: means the motion filed by the Debtors, substantially contemporaneously with the filing of the Chapter 11 Cases, seeking entry of an order (a) scheduling an objection deadline and the Confirmation Hearing, (b) approving the form and notice of the Confirmation Hearing, (c) establishing procedures for objections to the Disclosure Statement and the Plan, (d) approving Solicitation Procedures, and (e) granting related relief, which motion shall be in form and substance consistent with the Restructuring Support Agreement and otherwise reasonably satisfactory to the Steering Group.

103.    _Plan Scheduling Order_: means the order granting the Plan Scheduling Motion, which order shall be in form and substance consistent with the Restructuring Support Agreement and otherwise reasonably satisfactory to the Steering Group.

104.    _Plan Supplement_: means the compilation of documents and forms of documents, schedules, and exhibits to the Plan to be filed with the Court on notice to parties-in-interest, including, but not limited to, the following, each of which must be in form and substance consistent with the Restructuring Support Agreement and otherwise reasonably satisfactory to the Steering Group: (i) the New Hercules Charter; (ii) the New Hercules By-Laws; (iii) the amended organizational documents for the Debtor Subsidiaries, (iv) a description of the New Hero Management Incentive Program, (v) the New HERO Management Incentive Program Agreements; (vi) the New HERO Warrant Agreement; (vii) the identity and affiliations of the officers of Reorganized HERO; and (viii) the First Lien Exit Facility Credit Agreement.  The Debtors shall file forms of the materials comprising the Plan Supplement no later than the Plan Supplement Filing Date.

105.    _Plan Supplement Filing Date_: means the date that is five (5) days prior to the deadline to object to the confirmation of the Plan.

106.    _Priority Tax Claim_: means any Claim that is entitled to priority in right of payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

107.    _Professional_: means any professional employed or retained in the Chapter 11 Cases pursuant to sections 327 or 328 of the Bankruptcy Code.

108.    _Pro Rata_: means, with respect to (a) any Claim, the proportion that the amount of such Claim bears to the aggregate amount of all Claims (including Disputed Claims) in the applicable Class or group of Classes, unless the Plan provides otherwise, and (b) any Equity Interest, the proportion that the amount of such Equity Interest bears to the aggregate

amount of all Equity Interests (including Disputed Equity Interests) in the applicable Class or group of Classes, unless the Plan provides otherwise.

109. _Qualified Institutional Buyer_: has the meaning ascribed to such term in 230 CFR 144A(a).

110. _Record Date_: means, for purposes of making distributions under the Plan, the Confirmation Date, provided that this record date shall not apply to distributions to holders of public securities.

111. _Reinstated_: means, with respect to a Claim, (a) in accordance with section 1124(1) of the Bankruptcy Code, being treated such that the legal, equitable, and contractual rights to which such Claim entitles its holder are left unaltered, or (b) if applicable under section 1124 of the Bankruptcy Code: (i) having all prepetition and postpetition defaults with respect thereto other than defaults relating to the insolvency or financial condition of the Debtors or their status as debtors under the Bankruptcy Code cured, (ii) having its maturity date reinstated, (iii) compensating the holder of such Claim for damages incurred as a result of its reasonable reliance on a provision allowing the Claim's acceleration, and (iv) not otherwise altering the legal, equitable and contractual rights to which the Claim entitles the holder thereof.

112. _Rejection Damage Claims_: means Claims for damages arising from the rejection of Executory Contracts or Unexpired Leases.  Unless otherwise agreed to in writing by the Debtors (with the consent of the Steering Group), all Rejection Damage Claims shall be deemed Disputed Claims.

113. _Released Parties_: means each of: (a) the Debtors and Reorganized Debtors; (b) the Non-Debtor Subsidiaries; (c) the Steering Group; (d) the Steering Group Members; (e) the Senior Notes Indenture Trustees; and (f) with respect to each of the foregoing Entities in clauses (a) through (e), such Entity's predecessors, successors and assigns, affiliates, subsidiaries, funds, portfolio companies, management companies, and each of their respective current and former directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, Professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors (each solely in their capacity as such).

114. _Releasing Parties_: means each of: (a) the Senior Notes Indenture Trustees; (b) the Steering Group and the Steering Group Members; (c) any holder of an Impaired Claim that (i) votes to accept the Plan or (ii) either (A) abstains from voting, (B) votes to reject the Plan or (C) is a Non-Eligible Noteholder and, in the case of either (A),(B) or (C), does not opt out of the voluntary release contained in Section VII.F of the Plan by checking the opt out box on the Ballot or Non-Eligible Noteholder Election Form, as applicable, and returning it in accordance with the instructions set forth thereon, indicating that they opt not to grant the releases provided in the Plan; (d) holders of Unimpaired Claims; (e) any holder of a HERO Equity Interest that does not opt out of the voluntary release contained in Section VII.F of the Plan by completing the steps set forth in the Equity Release Consent Notice, and returning it in accordance with the instructions set forth thereon, indicating that they opt not to grant the releases provided in the Plan; (f) the current and former officers and directors of the Debtors, the

Reorganized Debtors and the Non-Debtor Subsidiaries; and (g) with respect to each of the foregoing Entities in clauses (a) through (f), such Entity's predecessors, successors and assigns, affiliates, subsidiaries, funds, portfolio companies, management companies, and each of their respective current and former shareholders, directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors (each solely in their capacity as such).

115.    *Reorganized Debtor*s: means, collectively, each of the Debtors, or any successor thereto by merger, consolidation, or otherwise, on and after the Effective Date.

116.    *Reorganized HERO*: means HERO or any successor thereto by merger, consolidation, or otherwise, on and after the Effective Date.

117.    *Restructuring Expenses*: means the fees and expenses incurred in connection with the Chapter 11 Cases, as well as the funding of obligations necessary to implement the Plan, including, but not limited to, any costs or reserves associated with the First Lien Exit Facility, the fees due and owing to the U.S. Trustee and the fees and expenses of Professionals and the Steering Group.

118.    *Restructuring-Related Action*: means any act taken or omitted to be taken in connection with, or arising from or relating in any way to, the restructuring of the Debtors or the Chapter 11 Cases, including but not limited to, (a) negotiation, formulation and preparation of the Restructuring Support Agreement; (b) the management and operation of the Debtors' businesses and the discharge of their duties under the Bankruptcy Code during the pendency of these Chapter 11 Cases; (c) implementation of any of the transactions provided for, or contemplated in, this Plan or the Plan Supplement; (d) any action taken in the negotiation, formulation, development, proposal, solicitation, disclosure, Confirmation, or implementation of the Plan or Plan Supplement; (e) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the First Lien Exit Facility Documents, the Disclosure Statement and the Plan, the Plan Supplement, the New HERO Management Incentive Program, the issuance of New HERO Warrants and New HERO Common Stock in connection with the Plan, and any related contract, instrument, release or other agreement or document created or entered into in connection therewith (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan); (f) the administration of this Plan or the assets and property to be distributed pursuant to this Plan; (g) any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the bankruptcy restructuring of the Debtors; and (h) the preparation and filing of the Chapter 11 Cases.

119.    *Restructuring Support Agreement*: means the agreement, and all exhibits and schedules attached thereto, dated as of June 17, 2015, among the Debtors and the Steering Group Members, as it may be amended, modified or supplemented by the parties thereto in accordance with the terms of such agreement, a copy of which agreement is attached to the Disclosure Statement as Exhibit B.

120.    *Schedules*: means, to the extent the Court has not waived the requirement to file the Schedules, the schedules of assets and liabilities, statements of financial affairs, and lists of holders of Claims and Equity Interests, filed with the Court by the Debtors, including any amendments or supplements thereto, with the reasonable consent of the Steering Group.

121.    *Secured*: means when referring to a Claim: (a) secured by a Lien on property in which any of the Estates has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) otherwise Allowed pursuant to the Plan as a Claim that is Secured.

122.    *Securities Act*: means the Securities Act of 1933, as amended.

123.    *Senior Notes*: means the April 2019 Notes, the April 2022 Notes, the July 2021 Notes, the October 2021 Notes, the Convertible Notes and the Legacy Notes.

124.    *Senior Notes Claims*: means the April 2019 Notes Claims, the April 2022 Notes Claims, the July 2021 Notes Claims, the October 2021 Notes Claims, the Convertible Notes Claims, the Legacy Notes Claims and the Guarantee Claims

125.    *Senior Notes Equity Distribution*: means a number of shares of New HERO Common Stock equal to 96.9% on fully diluted basis (subject only to dilution as of the Effective Date by the New HERO Warrants and the New HERO Management Incentive Program Equity) of the total number of shares of New HERO Common Stock issued and outstanding on the Effective Date.

126.    *Senior Notes Indentures*: means the April 2019 Notes Indenture, the April 2022 Notes Indenture, the July 2021 Notes Indenture, the October 2021 Notes Indenture, the Convertible Notes Indenture and the Legacy Notes Indenture.

127.    *Senior Notes Indenture Trustees*: means the April 2019 Notes Indenture Trustee, the April 2022 Notes Indenture Trustee, the July 2021 Notes Indenture Trustee, the October 2021 Notes Indenture Trustee, the Convertible Notes Indenture Trustee and the Legacy Notes Indenture Trustee.

128.    *Senior Noteholders*: means the holders of the April 2019 Notes, the April 2022 Notes, the July 2021 Notes, the October 2021 Notes, the Convertible Notes and the Legacy Notes.

129.    *Shareholder Equity Distribution*: means a number of shares of New HERO Common Stock equal to 3.1% on fully diluted basis (subject only to dilution as of the Effective Date by the New HERO Warrants and the New HERO Management Incentive Program Equity) of the New HERO Common Stock issued and outstanding on the Effective Date.

130.   *Solicitation Parties*: means each of the following in its capacity as such: (a) the Debtors and the Reorganized Debtors, (b) the Steering Group and the Steering Group Members and (c) the Professionals of the Debtors and the legal and financial advisors to the Steering Group.

131.   *Solicitation Procedures*: means the procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, which shall be in form and substance consistent with the Restructuring Support Agreement and otherwise reasonably satisfactory to the Steering Group.

132.   *Steering Group*: has the meaning ascribed to such term in the Restructuring Support Agreement.

133.   *Steering Group Member*: has the meaning ascribed to such term in the Restructuring Support Agreement.

134.   *Unexpired Lease*: means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

135.   *Unimpaired*: means any Class of Claims or Equity Interests that is not Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code.

136.   *U.S. Trustee*: means the United States Trustee for the District of Delaware.

137.   *Voting Deadline*: means August 12, 2015 at 5:00 p.m. (prevailing Eastern Time) or such other later date established by the Debtors (with the consent of the Steering Group) or the Court, which is the deadline for submitting Ballots to either accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code.

138.   *Voting Record Date*: means July 13, 2015.

**B.**   **Interpretation, Application of Definitions, and Rules of Construction.**

Except as expressly provided herein, each capitalized term used in the Plan shall either have (i) the meaning ascribed to such term in Article I or (b) if such term is not defined in Article I, but such term is defined in the Bankruptcy Code or Bankruptcy Rules, the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be. Meanings of capitalized terms shall be equally applicable to both the singular and plural forms of such terms. The words "herein," "hereof," and "hereunder" and other words of similar import refer to the Plan as a whole (and, for the avoidance of doubt, the Plan Supplement) and not to any particular section or subsection in the Plan unless expressly provided otherwise. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included. Captions and headings to articles, sections and exhibits are inserted for convenience of reference only, are not a part of this Plan, and shall not be used to interpret this Plan. Where the Plan requires that (i)

any document or agreement shall be in form and substance satisfactory to the Steering Group or (ii) any decisions or actions may be taken only with the consent or approval of the Steering Group, such requirement shall be satisfied by the consent of Steering Group Members holding at least 66 2/3% of the aggregate principal amount of Senior Notes held by all Steering Group Members, which consent shall be evidenced by written consent of counsel to the Steering Group. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Plan.

## C.    **Computation of Time.**

Except as otherwise specifically provided in the Plan, in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, FEE CLAIMS, AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Fee Claims, and Priority Tax Claims, each as described below, have not been classified and thus are excluded from the classes of Claims and Equity Interests set forth in Article III.

## A.    **Administrative Claims (Other Than Fee Claims).**

Each holder of an Allowed Administrative Claim (other than an Administrative Claim that is a Fee Claim) as of the Effective Date shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Administrative Claim, (i) Cash in an amount equal to the amount of such Allowed Administrative Claim as soon as reasonably practicable after either (a) the Effective Date, if such Administrative Claim is Allowed as of the Effective Date, (b) thirty (30) days after the date such Administrative Claim becomes an Allowed Administrative Claim, if such Administrative Claim is Disputed as of, or following, the Effective Date, or (c) the date such Allowed Administrative Claim becomes due and payable in the ordinary course of business in accordance with the terms, and subject to the conditions, of any agreements governing, instruments evidencing, or other documents relating to, the applicable transaction giving rise to such Allowed Administrative Claim, if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business; or (ii) such other treatment as the Debtors, the Steering Group and such holder shall have agreed in writing.

## B.    **Fee Claims.**

1.    *Final Fee Applications*.

The Bankruptcy Court shall determine the Allowed amounts of Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code. The Reorganized Debtors shall pay Fee Claims in Cash in the amount Allowed by the Bankruptcy Court. All requests for compensation or reimbursement of Fee Claims shall be filed and served on the Reorganized Debtors, counsel to the Reorganized Debtors, the U.S. Trustee, counsel to the Steering Group, and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Court, no later than forty-five (45) days after the Effective Date, unless otherwise agreed by the Debtors (with the consent of the Steering Group).

Holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims that do not file and serve such applications by the required deadline shall be forever barred from asserting such Claims against the Debtors, Reorganized Debtors, or their respective properties, and such Fee Claims shall be deemed discharged as of the Effective Date.  Objections to any Fee Claims must be filed and served on the Reorganized Debtors, counsel to the Reorganized Debtors, counsel to the Steering Group, and the requesting party no later than thirty (30) days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the party requesting compensation of a Fee Claim).

2. *Post-Effective Date Fees and Expenses*.

The Reorganized Debtors shall pay in Cash the reasonable legal, professional, or other fees and expenses incurred by the Debtors' Professionals on and after the Effective Date, in the ordinary course of business, and without any further notice to or action, order, or approval of the Court.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and Professionals may be employed and paid in the ordinary course of business without any further notice to, or action, order, or approval of, the Court.

## C.   **Priority Tax Claims.**

Each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, as determined by the applicable Debtor (with the consent of the Steering Group), in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Priority Tax Claim (i) payment in full in Cash, payable in equal Cash installments made on a quarterly basis in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, over a period not to exceed five (5) years following the Petition Date, plus statutory interest on any outstanding balance from the Effective Date, calculated at the prevailing rate under applicable nonbankruptcy law for each taxing authority and to the extent provided for by section 511 of the Bankruptcy Code, and in a manner not less favorable than the most favored nonpriority General Unsecured Claim provided for by the Plan (other than cash payments made to a class of creditors pursuant to section 1122(b) of the Bankruptcy Code); or (ii) such other treatment as may be agreed upon by such holder, the Debtors and the Steering Group or otherwise determined upon a Final Order of the Court.

## D.   **U.S. Trustee Fees.**

Notwithstanding anything to the contrary contained herein, on the Effective Date, the Debtors shall pay, in full, in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation.  On and after the Effective Date, the Reorganized Debtors shall be responsible for filing required post-confirmation reports and paying quarterly fees due to the U.S. Trustee for the Reorganized Debtors until the entry of a final decree in the Chapter 11 Cases or until the Chapter 11 Cases are converted or dismissed.

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF
## CLAIMS AND EQUITY INTERESTS

**A.**     **Classification of Claims and Equity Interests.**

Except for those Claims addressed in Article II, all Claims and Equity Interests are placed in the Classes set forth below.  A Claim or Equity Interest is placed in a particular Class solely to the extent that the Claim or Equity Interest falls within the description of that Class, and the portion of a Claim or Equity Interest which does not fall within such description shall be classified in another Class or Classes to the extent that such portion falls within the description of such other Class or Classes.  A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan solely to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled before the Effective Date.

All claims and interests against a particular Debtor are placed in classes for each of the Debtors (as designated by subclasses a through o for each of the 15 Debtors).  Specifically, such subclasses represent Claims against and Equity Interests in the Debtors as follows: Cliffs Drilling Company (subclass a); Cliffs Drilling Trinidad LLC (subclass b); FDT LLC (subclass c); FDT Holdings LLC (subclass d); Hercules Drilling Company LLC (subclass e); Hercules Liftboat Company LLC (subclass f); Hercules Offshore, Inc. (subclass g); Hercules Offshore Services LLC (subclass h); Hercules Offshore Liftboat Company LLC (subclass i); HERO Holdings, Inc. (subclass j); SD Drilling LLC (subclass k); THE Offshore Drilling Company (subclass l); THE Onshore Drilling Company (subclass m); TODCO Americas, Inc. (subclass n); and TODCO International, Inc. (subclass o).

**B.**     **Record Date.**

As of the close of business on the Record Date, the claims register (for Claims) and transfer ledger (for Equity Interests) shall be closed, and there shall be no further changes in the record holders of any Claims or Equity Interests.  The Reorganized Debtors shall have no obligation to, but may, with the consent of the Steering Group, recognize any transfer of any Claims or Equity Interests occurring after the Record Date.  The Reorganized Debtors shall instead be entitled to recognize and deal for purposes under the Plan with only those record holders stated on the claims register (for Claims) and transfer ledgers (for Equity Interests) as of the close of business on the Record Date.

**C.**     **Summary of Classification and Class Identification.**

Below is a chart identifying Classes of Claims and Equity Interests against each such Debtor, a description of whether each Class is Impaired, and each Class's voting rights with respect to the Plan.

| Class | Claim or Equity Interest | Status | Voting Rights |
|-------|--------------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Senior Notes Claims | Impaired | Entitled to Vote[2] |
| 4 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| 5 | Intercompany Claims | Unimpaired | Deemed to Accept |
| 6 | Intercompany Interests | Unimpaired | Deemed to Accept |
| 7 | HERO Equity Interests | Impaired | Deemed to Reject |

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied, for the purposes of Confirmation, by acceptance of the Plan by an Impaired Class of Claims against each such Debtor; provided, however, that in the event no holder of a Claim with respect to a specific voting Class timely submits a Ballot indicating acceptance or rejection of the Plan, such Class will be deemed to have accepted the Plan. The Debtors hereby request that the Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Equity Interests.

**D.    Treatment of Classified Claims and Equity Interests.**

1.    *Class 1 - Other Priority Claims (Subclasses 1a-1o)*.

(a)    *Classification*: Class 1 consists of Other Priority Claims.

(b)    *Treatment*: Except to the extent that a holder of an Allowed Other Priority Claim and the Debtors (with the consent of the Steering Group) agree in writing to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Other Priority Claim, each holder of an Allowed Other Priority Claim shall receive (i) payment in Cash in an amount equal to such Allowed Other Priority Claim as soon as practicable after the later of (a) the Effective Date and (b) thirty (30) days after the date when such Other Priority Claim becomes an Allowed Other Priority Claim or (ii) such other treatment, as determined by the Debtors (with the consent of the Steering Group), that will render it Unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)    *Voting*: Class 1 is Unimpaired by the Plan, and each holder of a Class 1 Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject the Plan.

2.    *Class 2 - Other Secured Claims (Subclasses 2a-2o)*.

(a)    *Classification*: Class 2 consists of Other Secured Claims.

(b)    *Treatment*: Except to the extent that a holder of an Allowed Other Secured Claim and the Debtors (with the consent of the Steering Group) agree in writing to less

---

[2] Holders of Class 3 Senior Notes Claims are entitled to vote to accept or reject the Plan, provided that the Debtors are not soliciting the votes of Non-Eligible Noteholders and any votes cast by Non-Eligible Noteholders will not be counted.

favorable treatment, in full and final satisfaction, settlement, release and discharge of and in exchange for such Other Secured Claim, each holder of an Allowed Other Secured Claim shall, as determined by the Debtors (with the consent of the Steering Group), receive (i) Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim, if such interest is required to be paid pursuant to sections 506(b) and/or 1129(a)(9) of the Bankruptcy Code, as soon as practicable after the later of (a) the Effective Date, and (b) thirty (30) days after the date such Other Secured Claim becomes an Allowed Other Secured Claim, (ii) the Collateral securing its Allowed Other Secured Claim as soon as practicable after the later of (a) the Effective Date and (b) thirty (30) days after the date such Other Secured Claim becomes an Allowed Other Secured Claim, or (iii) such other treatment, as determined by the Debtors (with the consent of the Steering Group), that will render it Unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c) *Voting*: Class 2 is Unimpaired by the Plan, and each holder of a Class 2 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3. *Class 3 – Senior Notes Claims (Subclasses 3a-3o)*.

(a) *Classification*: Class 3 consists of Senior Notes Claims.

(b) *Treatment*: Except to the extent that a holder of an Allowed Senior Notes Claim and the Debtors (with the consent of the Steering Group) agree in writing to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Senior Notes Claim, on or as soon as practicable after the Effective Date, each holder of an Allowed Senior Notes Claim shall receive its Pro Rata share of the Senior Notes Equity Distribution.

In addition to the foregoing, each holder of an Allowed Senior Notes Claim that is an Eligible Noteholder shall have the opportunity to participate, on a Pro Rata basis, in the First Lien Exit Facility in accordance with the terms and conditions set forth in the First Lien Exit Facility Subscription Procedures during the period from the Petition Date through the date of the Confirmation Hearing. The opportunity to participate in the First Lien Exit Facility does not constitute a distribution to the holders of Allowed Senior Notes Claims on account of their Claims.

(c) *Guarantee Claims*: Each holder of an Allowed Senior Notes Claim shall only receive one recovery in full and complete satisfaction of all Senior Notes Claims and all Guarantee Claims that may be held by such holder, which recovery is specified in Article III.D.3(b).

(d) *Voting*: Class 3 is Impaired. Holders of Class 3 Senior Notes Claims are entitled to vote to accept or reject the Plan, provided that the Debtors are not soliciting the votes of Non-Eligible Noteholders and any votes cast by Non-Eligible Noteholders will not be counted.

4.      *Class 4 – General Unsecured Claims (Subclasses 4a-4o)*.

(a)      *Classification*: Class 4 consists of General Unsecured Claims.

(b)      *Allowance*: Each General Unsecured Claim in Class 4 shall be Allowed unless such Claim is Disputed.  For the avoidance of doubt, no provision of the Plan shall diminish, enhance, or modify any applicable nonbankruptcy legal, equitable, and/or contractual rights of a holder of a General Unsecured Claim to receive payment on account of such General Unsecured Claim in Class 4, which are "riding through" the Chapter 11 Cases under the Plan as if the Chapter 11 Cases had not been commenced.

(c)      *Treatment*: In full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed General Unsecured Claim, on the Effective Date, each holder of an Allowed General Unsecured Claim shall, at the discretion of the Debtors (with the consent of the Steering Group), and only to the extent such holder's Allowed General Unsecured Claim was not previously paid in the ordinary course of business, pursuant to an order of the Court, or otherwise: (i) have its Allowed General Unsecured Claim Reinstated as an obligation of the applicable Reorganized Debtor, and be paid in accordance with ordinary course terms, (ii) receive such other treatment as may be agreed between such holder and the Debtors (with the consent of the Steering Group) or (iii) receive such other treatment, as determined by the Debtors (with the consent of the Steering Group), that will render it Unimpaired pursuant to section 1124 of the Bankruptcy Code.  Payment of an Allowed General Unsecured Claim is subject to the rights of the Debtors, Reorganized Debtors or any other party in interest to dispute such Claim as if the Chapter 11 Cases had not been commenced in accordance with applicable nonbankruptcy law.

Notwithstanding anything to the contrary in the Plan, until an Allowed General Unsecured Claim in Class 4 (including Cure Claims) that arises prior to the Effective Date has been (x) paid in full in accordance with applicable law, or on terms agreed to between the holder of such Claim and the Debtor (with the consent of the Steering Group) or Reorganized Debtor, or in accordance with the terms and conditions of the particular transaction giving rise to such Claim, or (y) resolved pursuant to the disputed claims procedures applicable to General Unsecured Claims under Article VIII.A.3 of the Plan: (a) the provisions of Article VII.A.C-H of the Plan shall not apply or take effect with respect to such Claim, (b) such Claim shall not be deemed settled, satisfied, resolved, released, discharged, or enjoined by any provision of the Plan, and (c) the applicable Reorganized Debtor shall remain liable for such Claims.  For the avoidance of doubt, upon the satisfaction of subpart (x) or (y) of the foregoing sentence, subparts (a)-(c) of the foregoing sentence shall no longer apply under the Plan.  Holders of Allowed General Unsecured Claims in Class 4 shall not be required to file a Proof of Claim with the Bankruptcy Court.  Holders of Allowed General Unsecured Claims in Class 4 (including Cure Claims) shall not be subject to any claims resolution process in Bankruptcy Court in connection with their Claims, and shall retain all their rights under applicable nonbankruptcy law to pursue their Allowed General Unsecured Claims in Class 4 against the Debtors or Reorganized Debtors in any forum with jurisdiction over the parties.   The Debtors and Reorganized Debtors shall retain all defenses, counterclaims, rights to setoff, and rights to recoupment as to Allowed General Unsecured Claims in Class 4.  If the Debtors (with the consent of the Steering Group) or the Reorganized Debtors dispute any Allowed General

Unsecured Claims in Class 4, such dispute shall be determined, resolved or adjudicated in the manner as if the Chapter 11 Cases had not been commenced.  Notwithstanding the foregoing, any holder of a Claim who files a Proof of Claim shall be subject to the Article VII of the Plan unless and until such holder withdraws such Proof of Claim, and nothing herein limits the retained jurisdiction of the Bankruptcy Court under Article XI of the Plan.

   *(d)* *Voting*: Class 4 is Unimpaired. Therefore, holders of Class 4 General Unsecured Claims are not entitled to vote to accept or reject the Plan.

   5. *Class 5 – Intercompany Claims (Subclasses 5a-5o)*.

   *(a)* *Classification*: Class 5 consists of Intercompany Claims.

   *(b)* *Treatment*: In full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Intercompany Claim, on the Effective Date, each Intercompany Claim shall be Reinstated.  On and after the Effective Date, the Reorganized Debtors and the Non-Debtor Subsidiaries will be permitted to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan.   Except as set forth herein, any changes to intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' and the Non-Debtor Subsidiaries' historical intercompany account settlement practices.

   *(c)* *Voting*: Class 5 is Unimpaired.  Holders of Class 5 Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 5 Intercompany Claims are not entitled to vote to accept or reject the Plan.

   6. *Class 6 – Intercompany Interests (Subclasses 6a-6o)*.

   *(a)* *Classification*: Class 6 consists of Intercompany Interests.

   *(b)* *Treatment*: On the Effective Date, Intercompany Interests shall be Reinstated.

   *(c)* *Voting*: Class 6 is Unimpaired.  Holders of Class 6 Intercompany Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 6 Intercompany Interests are not entitled to vote to accept or reject the Plan.

   7. *Class 7 – HERO Equity Interests (Subclasses 7a-7o)*.

   *(a)* *Classification*: Class 7 consists of HERO Equity Interests.

   *(b)* *Treatment*: On the Effective Date, HERO Equity Interests shall be cancelled and discharged and shall be of no further force or effect, whether surrendered for cancellation or otherwise, and holders of HERO Equity Interests shall not receive or retain any property under the Plan on account of such HERO Equity Interests.   Notwithstanding the

foregoing, on or as soon as practicable after the Effective Date, holders of HERO Equity Interests shall receive, in exchange for the surrender or cancellation of their HERO Equity Interests and for the releases by such holders of the Released Parties, their Pro Rata share of (1) the Shareholder Equity Distribution and (2) the New HERO Warrants; provided, however, that any holder of a HERO Equity Interest that opts not to grant the voluntary releases contained in Article VII.F of the Plan shall not be entitled to receive its Pro Rata share of the Shareholder Equity Distribution and the New HERO Warrants and shall not receive any consideration in exchange for the surrender or cancellation of its HERO Equity Interests or any distribution whatsoever under the Plan; and provided, further, that, notwithstanding Article VIII.B.8, the Debtors (with the consent of the Steering Group) may provide any holder of a HERO Equity Interest that would otherwise be entitled to receive a distribution of less than one (1) share of the New HERO Common Stock under this Article III.D.7.(b) with a distribution of one (1) share of New HERO Common Stock.

        *(c)*     *Voting*: Class 7 is Impaired.  Holders of Class 7 Equity Interests are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Class 7 HERO Equity Interests are not entitled to vote to accept or reject the Plan.

**E.**      **Special Provision Regarding Unimpaired and Reinstated Claims.**

        Except as otherwise specifically provided in this Plan, nothing herein shall be deemed to affect, diminish, or impair the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Reinstated Claim or Unimpaired Claim, including, but not limited to, legal and equitable defenses to setoffs or recoupment against Reinstated Claims or Unimpaired Claims.  Except as otherwise specifically provided in this Plan, nothing herein shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense which the Debtors had immediately prior to the Petition Date against, or with respect to, any Claim left Unimpaired by this Plan.  Except as otherwise specifically provided in this Plan, the Reorganized Debtors shall have, retain, reserve, and be entitled to assert, all such Claims, Causes of Action, rights of setoff, and other legal or equitable defenses which they had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights with respect to any Reinstated Claim or Claim left Unimpaired by this Plan may be asserted by the Reorganized Debtors after the Confirmation Date and the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

**F.**      **Voting of Claims.**

        Each holder of an Allowed Claim as of the Voting Deadline in an Impaired Class of Claims that is not (a) deemed to have rejected the Plan or (b) conclusively presumed to have accepted the Plan, and that held such Claim as of the Voting Record Date, shall be entitled to vote to accept or reject the Plan.  The instructions for completion of the Ballots are set forth in the instructions accompanying each Ballot.  The Debtors will seek approval of the Solicitation Procedures in the Plan Scheduling Motion.  The Solicitation Procedures are described in the Disclosure Statement.

**G.**     **Nonconsensual Confirmation.**

The Debtors intend to request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that has not accepted or is deemed to have rejected the Plan pursuant to section 1126 of the Bankruptcy Code, including Class 7 (HERO Equity Interests).

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.**     **Operations Between the Confirmation Date and Effective Date**

During the period from the Confirmation Date through and until the Effective Date, the Debtors may continue to operate their businesses as debtors in possession, subject to all applicable orders of the Bankruptcy Court and any limitations set forth in the Restructuring Support Agreement.

**B.**     **First Lien Exit Facility.**

On or before the Effective Date, the Debtors (with the consent of the Steering Group) shall be authorized, without the need for any further corporate action or without any further action by the Debtors or the Reorganized Debtors, as applicable, to enter into the First Lien Exit Facility Credit Agreement, the First Lien Exit Facility Documents and any ancillary documents necessary or appropriate to satisfy the conditions to effectiveness of the First Lien Exit Facility.  The proceeds of the First Lien Exit Facility shall be used to (i) pay the final installment and related expenses, costs and charges in the approximate amount of $200 million related to the construction and purchase of the Highlander, (ii) pay the Restructuring Expenses and (iii) provide the Reorganized Debtors and the Non-Debtor Subsidiaries with working capital for their post-Effective Date operations and for other general corporate purposes.  The First Lien Exit Facility shall be Secured by first priority security interests in substantially all of the assets of the Reorganized Debtors and the Non-Debtor Subsidiaries that are guarantors under the First Lien Exit Facility, including without limitation, the Highlander and all contracts related to the Highlander.

Prior to the Petition Date, the Debtors and certain of the Steering Group Members entered into the First Lien Exit Facility Commitment Letter, pursuant to which such Steering Group Members agreed to provide backstop commitments for the First Lien Exit Facility.  As set forth in Article III.D.3, each holder of an Allowed Senior Notes Claim that is an Eligible Noteholder shall have the opportunity to participate, on a Pro Rata basis, in the First Lien Exit Facility in accordance with the terms and conditions set forth in the First Lien Exit Facility Subscription Procedures during the period from the Petition Date through the date of Confirmation Hearing.  The opportunity to participate in the First Lien Exit Facility does not constitute a distribution to the holders of Allowed Senior Notes Claims on account of their Claims.

C.      **Issuance of New HERO Common Stock and New HERO Warrants.**

1.      *Issuance of Securities*.  Shares of New HERO Common Stock shall be authorized under the New HERO Charter, and shares of New HERO Common Stock shall be issued on the Effective Date and distributed as soon as practicable thereafter in accordance with the Plan.  The number of shares of New HERO Common Stock to be distributed as set forth in this Plan, and the number of shares of New HERO Common Stock issuable upon exercise of New HERO Warrants and the New HERO Management Incentive Program Equity and corresponding strike prices, are subject to adjustment by the Debtors (with the consent of the Steering Group) in a manner that does not alter the respective percentages of the outstanding New HERO Common Stock allocated to any Class or Claim holder, except for immaterial changes resulting from the treatment of fractional shares; provided that the New HERO Common Stock, as of the Effective Date, shall be subject to dilution from the New HERO Management Incentive Program Equity.  All of the New HERO Common Stock, issuable in accordance with the Plan, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable.  The issuance, with the consent of the Steering Group, of the New HERO Common Stock, the New HERO Warrants, the New HERO Management Incentive Program Equity by Reorganized HERO, and the issuance of shares pursuant to the exercise of New HERO Warrants and the New HERO Management Incentive Program Equity, is authorized without the need for any further corporate action and without any further action by any holder of a Claim or Equity Interest.

Except as provided below, the New HERO Common Stock distributed under the Plan will be issued in book-entry form through the direct registry system of the transfer agent and DTC.  The ownership interest of each holder of such New HERO Common Stock, and transfers of ownership interests therein, will be recorded on the records of the transfer agent and the direct and indirect participants in DTC.  To receive distributions of New HERO Common Stock through DTC, holders of Senior Notes Claims will be required to designate a direct or indirect participant in DTC with whom such holder has an account into which such New HERO Common Stock may be deposited.  The New HERO Common Stock issuable to holders of HERO Equity Interests will, with respect to HERO Equity Interests held through DTC, be delivered by the Reorganized HERO to the holders of HERO Equity Interests through DTC (via Mandatory Exchange if applicable), and holders that do not hold their HERO Equity Interests in DTC may to designate a direct or indirect participant in DTC with whom such holder has an account into which such New HERO Common Stock may be deposited or have their shares issued in book-entry form on the register of the transfer agent.

2.      *Exemption from Registration*.  The offering of the New HERO Common Stock under Article III of the Plan shall be exempt from the registration requirements of section 5 of the Securities Act and other applicable law under section 4(a)(2) of the Securities Act or another available exemption from registration under the Securities Act.  The issuance and distribution of the New HERO Common Stock and the New HERO Warrants under Article III of the Plan, and the New HERO Common Stock issuable upon exercise of the New HERO Warrants shall be exempt from the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration of an offer or sale of securities under section 1145(a) of the Bankruptcy Code.  The New HERO Common Stock underlying the Management Incentive Program will be issued pursuant to a registration statement or another available exemption from registration under the Securities Act and other applicable law.

The issuance of the New HERO Equity Interests to the holders of Senior Notes Claims and the issuance of the New HERO Equity Interests and the New HERO Warrants to the holders of HERO Equity Interests shall be exempt from the requirements of section 16(b) of the Securities and Exchange Act of 1934 (pursuant to Rule 16b-3 promulgated thereunder) with respect to any acquisition of such securities by an officer or director (or a director by deputization for purposes thereof) as of the Effective Date.

3.      *SEC Reporting Requirements and Listing of New HERO Common Stock*. As of the Effective Date, Reorganized HERO will be a reporting company under the Securities Exchange Act of 1934, as amended.  As of July 13, 2015, HERO common stock was listed for trading on The Nasdaq Global Select Market ("NASDAQ").  In March 2015, HERO received a letter from NASDAQ informing HERO that its common stock was below the minimum bid price requirement for continued listing on NASDAQ.  Reorganized HERO will use reasonable efforts to cause the listing on NASDAQ of the New HERO Common Stock on or as soon as reasonably practicable after the Effective Date.

## D.      **The New HERO Warrants.**

1.      *Issuance*. The New HERO Warrants will be issued pursuant to the terms of the New HERO Warrant Agreement.  Each New HERO Warrant will, subject to the anti-dilution adjustments described below and in the New HERO Warrant Agreement, be exercisable for one (1) share of New HERO Common Stock.

2.      *Anti-Dilution Protection*. The New HERO Warrant Agreement shall contain provisions for the adjustment of the exercise price and shares of New Common Stock issuable upon exercise following certain organic dilutive events such as splits, combinations, stock dividends or other similar organic dilutive events involving the New HERO Common Stock.  There shall be no anti-dilution adjustment for the New HERO Warrants upon the post-Effective Date issuance of New HERO Common Stock at a value below the exercise price for the New HERO Warrants.  The New HERO Warrants, as of the Effective Date, shall be subject to dilution from the New HERO Management Incentive Program Equity.

3.      *Form*.  Except as provided below, all New HERO Warrants distributed under the Plan will be issued in book-entry form through the direct registry system of the warrant agent and DTC.  The warrant agent will be the transfer agent for the New HERO Common Stock.  The ownership interest of each holder of such New HERO Warrants, and transfers of ownership interests therein, will be recorded on the records of the warrant agent and the direct and indirect participants in DTC.  Holders of HERO Equity Interests that hold such HERO Equity Interests in DTC will receive their New HERO Warrants by deposit to the account of a direct or indirect participant in DTC in which such HERO Equity Interests are held.  Holders that do not hold their HERO Equity Interests in DTC may designate a direct or indirect participant in DTC with whom such holder has an account into which such New HERO Warrants may be deposited or have their Warrants issued in book-entry form on the register of the warrant agent for the New HERO Warrants.  Beneficial owners of the New HERO Warrants will be required to follow the procedures that DTC or its direct or indirect participants, or the warrant agent for the New HERO Warrants, as applicable, may establish for exercising their rights in respect of the New HERO Warrants, including exercise and transfer thereof.  New HERO Common Stock

issuable upon exercise of such New HERO Warrants will be issued in book-entry form and held through DTC or the warrant agent for the New Hero Warrants, as applicable.

**E.** **Cancellation of Certain Indebtedness, Agreements, and Existing Securities.**

On the Effective Date, except as otherwise specifically provided for in the Plan, the obligations of the Debtors under the Restructuring Support Agreement, the Senior Notes, the Guarantees, the Senior Notes Indentures and any other certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in any of the Debtors giving rise to any Claim or Equity Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of any Debtors that are specifically reinstated pursuant to the Plan), shall be cancelled as to any such Debtors, and the Reorganized Debtors shall not have any continuing obligations thereunder; and the obligations of any of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, by-laws, or certificate or articles of incorporation or similar documents governing the Restructuring Support Agreement, the Senior Notes, the Guarantees, the Senior Notes Indentures and any other shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of any of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of any Debtors that are specifically reinstated pursuant to the Plan or assumed by any such Debtors) shall be released and discharged; provided, however, that, notwithstanding the occurrence of the Confirmation Date or the Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim shall continue in effect solely for purposes of (a) allowing holders of such Claims to receive distributions under the Plan as provided herein, (b) allowing the Senior Notes Indenture Trustees to make distributions under the Plan as provided herein, and deduct therefrom such reasonable compensation, fees, and expenses due thereunder or incurred in making such distributions, to the extent not paid by the Debtors and authorized under such agreement, and (c) allowing the Senior Notes Indenture Trustees to seek compensation and/or reimbursement of fees and expenses in accordance with the terms of the Plan. For the avoidance of doubt, nothing in this section shall affect the discharge of or result in any obligation, liability, or expense of the Debtors or the Reorganized Debtors, or affect the discharge of Claims or Equity Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any additional obligation, expense, or liability of the Debtors or the Reorganized Debtors.  On and after the Effective Date, all duties and responsibilities of the Senior Notes Indenture Trustees shall be discharged except to the extent required to effectuate the Plan.

**F.** **Claims Against Non-Debtor Subsidiaries.**

Any claim (as such term is defined in section 101(5) of the Bankruptcy Code), Cause of Action, or remedy asserted against any Non-Debtor Subsidiary by any Debtor will be reinstated, adjusted (including by contribution, distribution in exchange for new debt or equity, or otherwise), paid, continued, cancelled, or discharged to the extent determined appropriate by the Reorganized Debtors (with the consent of the Steering Group).  Any such transaction, with the consent of the Steering Group, may be effectuated on the Effective Date or subsequent to the

Effective Date without any further action by the Court or by the stockholders of the Reorganized Debtors.

**G.      Intercompany Interests.**

The Intercompany Interests shall be retained and the legal, equitable, and contractual rights to which the holder of such Intercompany Interest is entitled shall remain unaltered.

**H.      Continued Corporate Existence and Vesting of Assets.**

Except as otherwise provided herein: (i) each Debtor will, as a Reorganized Debtor, continue to exist after the Effective Date as a separate legal entity, with all of the powers of such a legal entity under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution or otherwise) under applicable law; and (ii) on the Effective Date, all property of each Debtor's Estate, and any property acquired by each Debtor or Reorganized Debtor under the Plan, will vest in such Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances, Equity Interests, and other interests, except for the Liens and Claims established under the Plan (including in respect of the First Lien Exit Facility).

On and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire, and dispose of property and compromise or settle any claims without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, subject only to those restrictions expressly imposed by the Plan or the Confirmation Order as well as the documents and instruments executed and delivered in connection therewith, including the documents, exhibits, instruments, and other materials comprising the Plan Supplement.  Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur from and after the Effective Date for Fee Claims, disbursements, expenses, or related support services (including fees relating to the preparation of Professional fee applications) without application to, or the approval of, the Court.

**I.      Steering Group Fees and Expenses.**

On the Effective Date, the Reorganized Debtors shall pay, in full, in Cash, the unpaid reasonable fees, expenses, costs, and other charges of the Steering Group's professionals (including the fees, expenses, costs, and other charges of Akin Gump Strauss Hauer & Feld LLP and Blackstone Advisory Partners L.P.), in each case in accordance with the Restructuring Support Agreement, and as required by the underlying fee letters of such professionals.

The reasonable fees, expenses, costs, and other charges of the Steering Group's professionals (including the fees, expenses, costs, and other charges of Akin Gump Strauss Hauer & Feld LLP and Blackstone Advisory Partners L.P.) shall be paid in the ordinary course in accordance with the underlying fee letters of such professionals during the Chapter 11 Cases.

**J.**      **Senior Notes Indenture Trustee Fees and Expenses**

On the Effective Date, the Reorganized Debtors shall pay all reasonable and documented fees and expenses (including reasonable and documented fees and expenses of counsel) incurred by the Senior Notes Indenture Trustees through and including the Effective Date to the extent required by the Senior Notes Indentures. For the avoidance of doubt, any such fees and expenses of the Senior Notes Indenture Trustees shall not be treated under this Plan as General Unsecured Claims and shall not be subject to avoidance, objection, challenge, deduction, subordination, recharacterization or offset. The Senior Notes Indenture Trustees shall not be required to file any application under sections 330 or 331 of the Bankruptcy Code or otherwise with regard to the allowance of their fees and expenses.

**K.**      **Waiver of Avoidance Actions.**

To the extent not already otherwise waived pursuant to another order of the Bankruptcy Court, effective as of the Effective Date, the Debtors shall be deemed to have waived the right to prosecute, and to have settled and released for fair value, any avoidance or recovery actions under sections 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or other applicable law that belong to the Debtors on account of paying or having paid all General Unsecured Claims in full pursuant to an Order of the Court or this Plan.

**L.**      **Preservation of Causes of Action.**

In accordance with section 1123(b) of the Bankruptcy Code, and except as expressly provided herein (including Articles IV.L and VII), the Reorganized Debtors shall retain all Causes of Action. Nothing contained in this Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense of any Debtor that is not specifically waived or relinquished by this Plan. The Reorganized Debtors shall have, retain, reserve, and be entitled to assert, all such claims, Causes of Action, rights of setoff, and other legal or equitable defenses that any Debtor had immediately before the Petition Date as fully as if the Chapter 11 Cases had not been commenced, and all of the Reorganized Debtors' legal and equitable rights respecting any claim that is not specifically waived or relinquished by this Plan may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against such Person. The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, in accordance with the Plan. From and after the Effective Date, the Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Cause of Action and to decline to do any of the foregoing without further notice to or action, order, or approval of the Court. The Reorganized Debtors are deemed representatives of the Estates for the purpose of prosecuting any Claim or Cause of Action and any objections to Claims pursuant to 11 U.S.C. § 1123(b)(3)(B).

**M.**    **Claims Incurred After the Effective Date.**

Claims incurred by the Debtors after the Effective Date may be paid by the Reorganized Debtors in the ordinary course of business and without application for or Court approval, subject to any agreements with such holders of a Claim and applicable law.

**N.**    **Corporate Action.**

Each of the matters provided for by the Plan involving the corporate structure of the Debtors or corporate or related actions to be taken by or required of the Reorganized Debtors, whether taken prior to or as of the Effective Date, shall be deemed authorized and approved in all respects without the need for any further corporate action and without any further action by the Debtors or the Reorganized Debtors, as applicable; provided, however, that any such matters or corporate or related actions taken by the Debtors shall be subject to the consent of the Steering Group.  Such actions may include: (a) the adoption and filing of the New HERO Certificate of Incorporation, the New HERO Bylaws and the amended articles of incorporation or certificates of formation for each of the Reorganized Debtors (other than Reorganized HERO); (b) the authorization, issuance, and distribution of New HERO Common Stock and New HERO Warrants; (c) the adoption or assumption, as applicable, of Executory Contracts or Unexpired Leases; (d) adoption of the New HERO Management Incentive Program; and (e) the entry into the First Lien Exit Facility and the execution and delivery of the First Lien Exit Facility Documents, as applicable.

**ARTICLE V.**
**PROVISIONS REGARDING CORPORATE GOVERNANCE**
**OF THE REORGANIZED DEBTOR**

**A.**    **Organizational Documents.**

1.    *Reorganized HERO*. On or immediately before the Effective Date, the New HERO Charter will be filed with the applicable authority in Delaware in accordance with the corporate laws of Delaware.  The New HERO By-Laws will be deemed to have been adopted and will become effective on the Effective Date.  The New HERO Charter shall prohibit the issuance of nonvoting equity securities only so long as, and to the extent that, the issuance of nonvoting equity securities is prohibited by the Bankruptcy Code.

2.    Reorganized Debtor Subsidiaries. On or immediately before the Effective Date, the amended articles of incorporation or certificates of formation for each of the Reorganized Debtors (other than Reorganized HERO) will be filed with the applicable authorities in the respective jurisdictions of incorporation or formation in accordance with the corporate laws of its jurisdiction.  The amended by-laws or operating agreements for the Reorganized Debtors (other than Reorganized HERO) will be deemed to have been adopted and will become effective on the Effective Date.  To the extent applicable, the amended organization documents for the Reorganized Debtors (other than Reorganized HERO) shall prohibit the issuance of nonvoting equity securities only so long as, and to the extent that, the issuance of nonvoting equity securities is prohibited by the Bankruptcy Code.

**B.**        **Appointment of Officers and Directors.**

As of the Effective Date, the term of the current members of the board of directors of HERO shall expire without further action by any Person.  The New Board shall consist of seven (7) members.  The initial directors of the New Board shall be comprised of John Rynd and six (6) other directors selected by the Steering Group, one of whom will be chair and an independent director (as defined by NASDAQ).

As of the Effective Date, subject to the consent of the Steering Group, the current members of the boards of directors or boards of managers, as applicable, of the Debtor Subsidiaries shall serve as the initial directors or managers for such Entities.

From and after the Effective Date, John Rynd shall be employed and serve as the Chief Executive Officer of Reorganized HERO.  The other senior executive officers of Reorganized HERO shall be acceptable to the Steering Group and identified in the Plan Supplement.

**C.**        **Powers of Officers.**

The officers of the Reorganized Debtors shall have the power to enter into or execute any documents or agreements that they deem reasonable and appropriate to effectuate the terms of the Plan.

**D.**        **Existing Benefits Agreements and Retiree Benefits.**

Except as such benefits may be otherwise terminated by the Debtors in a manner permissible under applicable law, all Existing Benefits Agreements shall be deemed assumed as of the Effective Date.  Notwithstanding anything to the contrary contained herein, pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

**E.**        **New HERO Management Incentive Program.**

On or after the Effective Date, the Reorganized Debtors shall adopt the New HERO Management Incentive Program and shall provide for the distribution, and the reservation for future issuance, as applicable, of the New HERO Management Incentive Program Equity to participating officers, directors and employees of the Reorganized Debtors.  A description of the New HERO Management Incentive Program will be set forth in the Plan Supplement.

Allocation of the New HERO Management Incentive Program Equity to the Reorganized Debtors' participating officers, directors and employees shall be determined by the New Board under the terms set forth in the New HERO Management Incentive Program Equity Agreements.

**F.**     <u>Indemnification of Directors, Officers, and Employees.</u>

Notwithstanding any other provisions of the Plan, from and after the Effective Date, indemnification obligations owed by the Debtors or the Reorganized Debtors to directors, officers, or employees of the Debtors who served or were employed by the Debtors before, on or after the Petition Date, to the extent provided in the articles or certificates of incorporation, by-laws or similar constituent documents, by statutory law or by written agreement, policies or procedures of the Debtors, will be deemed to be, and treated as though they are, executory contracts that are assumed pursuant to the Plan and section 365 of the Bankruptcy Code. All such indemnification obligations shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged, irrespective of whether indemnification, defense, reimbursement or limitation is owed in connection with an event occurring before, on, or after the Petition Date.

**ARTICLE VI.**
**CONFIRMATION OF THE PLAN**

**A.**     <u>Conditions to Confirmation.</u>

The following are conditions to the entry of the Confirmation Order, unless such conditions, or any of them, have been satisfied or duly waived in accordance with Article VI.B:

1.     The Court shall have approved the Disclosure Statement, which shall be in form and substance consistent with the Restructuring Support Agreement unless otherwise agreed to by the Steering Group, it being understood that the Disclosure Statement dated July 13, 2015 is satisfactory to the Steering Group.

2.     The Confirmation Order shall be in form and substance consistent with the Restructuring Support Agreement or otherwise reasonably satisfactory to the Debtors and the Steering Group.

3.     The Plan (which, for purposes of this Article VI.A.3 shall exclude the Plan Supplement), shall be in form and substance consistent with the Restructuring Support Agreement unless otherwise agreed to by the Steering Group, it being understood that the Plan dated July 13, 2015 is satisfactory to the Steering Group.

4.     The Plan Supplement shall be in form and substance consistent with the Restructuring Support Agreement and otherwise reasonably satisfactory to the Debtors and the Steering Group.

5.     (i) The Restructuring Support Agreement shall not have been terminated in accordance with the terms thereof, and such Restructuring Support Agreement shall be in full force and effect, and (ii) all conditions to closing set forth in the Restructuring Support Agreement shall have been satisfied.

6.     Since the date of entry into the Restructuring Support Agreement, there shall not have been a Material Adverse Change.

7.      The assets related to the Highlander, including all contracts related thereto, shall be owned in the same Non-Debtor Subsidiaries that owned such assets prior to the Petition Date.  Since the date of entry into the Restructuring Support Agreement, such Non-Debtor Subsidiaries shall have engaged in no other business other than the ownership of such assets and shall not have incurred any other obligations other than those directly related to the ownership of such assets.

## B.      Waiver of Conditions Precedent to Confirmation.

The Debtors, with the written consent of the Steering Group, may waive the conditions set forth in Article VI.A above at any time without leave or order of the Court and without any formal action.

## ARTICLE VII.
## SETTLEMENT,  RELEASE, INJUNCTION AND RELATED PROVISIONS

## A.      General Settlement of Claims and Interests.

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim, or any Distribution to be made on account of such Allowed Claim.

Without limiting the foregoing, the provisions of the Plan shall, upon consummation, constitute a good faith compromise and settlement, pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code, among the Debtors and the Steering Group of all disputes among the parties, including those arising from, or related to, (i) the Senior Notes Claims and the Guarantee Claims and (ii) the Guarantees.  In the event that, for any reason, the Confirmation Order is not entered or the Effective Date does not occur, the Debtors and the Steering Group reserve all of their respective rights with respect to any and all disputes that would have been resolved and settled under the Plan had the Effective Date occurred.

The entry of the Confirmation Order shall constitute the Court's approval of each of the compromises and settlements embodied in the Plan, and the Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, their Estates, creditors, and other parties-in-interest, and are fair, equitable, and within the range of reasonableness.  The Plan and the Confirmation Order shall have res judicata, collateral estoppel, and estoppel (judicial, equitable, or otherwise) effect with respect to all matters provided for, or resolved pursuant to, the Plan and/or the Confirmation Order, including, without limitation, the release, injunction, exculpation, discharge, and compromise provisions contained in the Plan and/or the Confirmation Order.  The provisions of the Plan, including, without limitation, its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.

B.      **Subordination of Claims**

        The allowance, classification and treatment of all Allowed Claims and Equity Interests and the respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto. However, the Debtors (with the consent of the Steering Group) reserve the right to reclassify any Allowed Claim or Equity Interest in accordance with any contractual, legal or equitable subordination relating thereto, unless otherwise provided in a settlement agreement concerning such Allowed Claim.

C.      **Discharge of the Debtors.**

        **Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan: (a) the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims, Equity Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against and Equity Interests in, the Debtors, the Reorganized Debtors or any of their assets, properties or Estates, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, Equity Interests and Causes of Action, including demands, liabilities and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date; (b) the Plan shall bind all holders of Claims and Equity Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Equity Interests shall be satisfied, discharged and released in full, and the Debtors' liability with respect thereto, shall be extinguished completely, including debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a proof of Claim or Equity Interest based upon such debt, right, or Equity Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Equity Interest based upon such debt, right or Equity Interest is Allowed; or (iii) the holder of such a Claim or Equity Interest has accepted the Plan or is entitled to receive a distribution hereunder; and (d) all Entities shall be precluded from ever asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any Claims and Equity Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.  Any default by the Debtors with respect to any Claim or Equity Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests subject to the Effective Date occurring.**

**D.**     **Release of Liens.**

Except (a) with respect to the Liens securing the First Lien Exit Facility, to the extent set forth in the First Lien Exit Facility Documents, and (b) as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, and other security interests against any property of the Debtors' Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, and other security interests shall revert to the Reorganized Debtors and each of their successors and assigns.

**E.**     **Releases by the Debtors.**

Except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the restructuring contemplated by the Restructuring Support Agreement and the Plan and the compromises contained herein, on and after the Effective Date, the Released Parties are hereby released and discharged by the Debtors, the Non-Debtor Subsidiaries, the Reorganized Debtors and the Estates, including any successor to the Debtors or any Estate representative from all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent  or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for indemnification, tort, contract, violations of federal or state securities laws or otherwise, including, those that any of the Debtors, the Non-Debtor Subsidiaries, the Reorganized Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or any other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Non-Debtor Subsidiaries, the Estates, the conduct of the businesses of the Debtors and their Non-Debtor Subsidiaries, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the Non-Debtor Subsidiaries, or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the restructuring of Claims and Equity Interests prior to or during the Chapter 11 Cases, the negotiation,  formulation or preparation of the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement, First Lien Exit Facility Documents, the New HERO Warrant Agreement or, in each case, related agreements, instruments or other documents,  any action or omission with respect to Intercompany Claims, any action or omission as an officer, director, agent, representative, fiduciary,  controlling  person, affiliate or responsible party, or any transaction entered into or affecting, a Non-Debtor Subsidiary, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan, <u>other than</u> claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, bad faith, fraud or a criminal act.

**F.**      **Releases by Holders of Claims and Equity Interests.**

Any holder of HERO Equity Interests that opts not to grant the releases contained in this Article VII.F shall not receive the New HERO Equity Interests and New HERO Warrants that it would otherwise be entitled to receive under Article III.D.7 of the Plan and will not receive any distribution whatsoever under the Plan.

Except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the restructuring contemplated by the Restructuring Support Agreement or the Plan, and the compromises contained herein, on and after the Effective Date, to the fullest extent permitted by applicable  law, the Releasing Parties (regardless of whether a Releasing Party is a Released Party) shall be deemed to conclusively, absolutely, unconditionally, irrevocably and forever release, waive and discharge the Released Parties of any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including:  any derivative claims asserted  or assertable on behalf of a Debtor or a Non-Debtor Subsidiary, whether  known or unknown,  foreseen or unforeseen, liquidated or unliquidated, contingent  or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for indemnification, tort, contract, violations of federal or state securities laws or otherwise, including, those that any of the Debtors, the Non-Debtor Subsidiaries, the Reorganized Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or any other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Non-Debtor Subsidiaries, the Estates, the conduct of the businesses of the Debtors and their Non-Debtor Subsidiaries, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any Security of the Debtors, the Non-Debtor Subsidiaries or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the restructuring of Claims and Equity Interests prior to or during the Chapter 11 Cases, the negotiation,  formulation or preparation of the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement,  the First Lien Exit Facility Documents, the New HERO Warrant Agreement or, in each case, related agreements, instruments or other documents,  any action or omission with respect to Intercompany Claims, any action or omission as an officer, director, agent, representative, fiduciary, controlling person, affiliate or responsible party, or any transaction entered into or affecting, a non-Debtor subsidiary, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date of the Plan, <u>other than</u> claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, bad faith, fraud or a criminal act.

Each Person providing releases under the Plan, including the Debtors, the Reorganized Debtors, the Non-Debtor Subsidiaries, the Estates and the Releasing Parties, shall be deemed to have granted the releases set forth in those sections notwithstanding that such Person may hereafter discover facts in addition  to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or

existence of such different or additional facts, and such Person expressly waives any and all rights that it may have under any statute or common law principle which would limit the effect of such releases to those claims or causes of action actually known or suspected to exist at the time of execution of such release.

G.    **Exculpation.**

Notwithstanding anything herein to the contrary and to the extent permitted by applicable law, the Exculpated Parties shall neither have nor incur any liability to any Entity for any Restructuring-Related Action; provided that nothing in the foregoing "Exculpation" shall exculpate any Entity from any liability resulting from any act or omission that is determined by Final Order to have constituted fraud, willful misconduct, gross negligence, or criminal conduct; provided that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement.

Notwithstanding anything herein to the contrary, as of the Effective Date, pursuant to section 1125(e) of the Bankruptcy Code, the Solicitation Parties upon appropriate findings of the Bankruptcy Court will be deemed to have solicited acceptance of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan of a Reorganized Debtor, and shall not be liable to any Entity on account of such solicitation or participation.

In addition to the protections afforded in this Article VII.G to the Exculpated Parties, and not in any way reducing or limiting the application of such protections, the Bankruptcy Court retains exclusive jurisdiction over any and all Causes of Action asserted against any Debtor for any Restructuring-Related Action that are not otherwise exculpated or enjoined by this Plan.

H.    **Injunction.**

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR EQUITY INTERESTS THAT HAVE BEEN RELEASED OR DISCHARGED PURSUANT TO THIS PLAN OR ARE SUBJECT TO EXCULPATION PURSUANT TO THIS ARTICLE VII ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED DEBTORS, OR THE RELEASED PARTIES: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH RELEASED PARTIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH

RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS; (3) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH RELEASED PARTIES OR AGAINST THE PROPERTY OR ESTATES OF SUCH RELEASED PARTIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM ANY OF THE DEBTORS, REORGANIZED DEBTORS, OR NON-DEBTOR SUBSIDIARIES OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF ANY OF THE DEBTORS, REORGANIZED DEBTORS, OR NON-DEBTOR SUBSIDIARIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS RELEASED, SETTLED, OR DISCHARGED PURSUANT TO THE PLAN OR CONFIRMATION ORDER.

**I.**      **Limitations on Exculpations and Releases.**

**Notwithstanding anything contained herein to the contrary, the releases and exculpation contained herein do not release any obligations of any party arising under this Plan or any document, instrument or agreement (including those set forth in the First Lien Exit Facility Documents, the New HERO Warrant Agreement and the Plan Supplement) executed to implement the Plan.**

**J.**      **Preservation of Insurance.**

The Debtors' discharge, exculpation and release, and the exculpation and release in favor of the Released Parties, as provided herein, shall not, except as necessary to be consistent with this Plan, diminish or impair the enforceability of any insurance policy that may provide coverage for claims against the Debtors, the Reorganized Debtors, the Non-Debtor Subsidiaries, their current and former directors and officers, or any other Person.

**ARTICLE VIII.**
**DISTRIBUTIONS UNDER THE PLAN**

**A.**      **Procedures for Treating Disputed Claims.**

1.      *Filing Proofs of Claim*.  Holders of Claims need not file proofs of Claim with the Court.  In the event that a holder of a Claim elects to file a proof of Claim with the Court, it will be deemed to have consented to the exclusive jurisdiction of the Court for all purposes with respect to the determination, liquidation, allowance, or disallowance of such Claim.

2.      *Disputed Claims*.  If the Debtors (with the consent of the Steering Group) dispute any Claim as to which no proof of Claim has been filed, such dispute shall be determined, resolved, or adjudicated, as the case may be, in a manner as if the Chapter 11 Cases had not been commenced, provided, however, that the Reorganized Debtors may elect, with the

consent of the Steering Group, to object under section 502 of the Bankruptcy Code to any proof of Claim filed by or on behalf of a holder of a Claim.

3.     *Objections to Claims*.  Except insofar as a Claim is Allowed under the Plan, the Debtors (with the consent of the Steering Group), the Reorganized Debtors, and any other party in interest shall be entitled to object to Claims.  Any objections to Claims other than General Unsecured Claims shall be filed and served by the Claims Objection Deadline.  Any Claims other than General Unsecured Claims not objected to by the Claims Objection Deadline shall be deemed Allowed unless such period is extended upon approval of the Bankruptcy Court.

Notwithstanding the foregoing, the Debtors, Reorganized Debtors, or any other party with standing shall be entitled to dispute and/or otherwise object to any General Unsecured Claim in accordance with applicable nonbankruptcy law.  If the Debtors, Reorganized Debtors, or any other party with standing dispute any General Unsecured Claim, such dispute shall be determined, resolved, or adjudicated, as the case may be, in the manner as if the Chapter 11 Cases had not been commenced.  In any action or proceeding to determine the existence, validity, or amount of any General Unsecured Claim, any and all claims or defenses that could have been asserted by the applicable Debtor(s) or the Entity holding such General Unsecured Claim are preserved as if the Chapter 11 Cases had not been commenced.

4.     *Disallowance of Claims*.  **Except as provided herein or otherwise agreed, any and all proofs of Claim shall be deemed expunged from the claims register on the Effective Date without any further notice to or action, order, or approval of the Court and the Claim on which such proof of Claim was filed shall be determined, resolved, or adjudicated, as the case may be, in the manner as if the Chapter 11 Cases had not been commenced and shall survive the Effective Date as if the Chapter 11 Cases had not been commenced.**

B.     **Allowed Claims and Equity Interests.**

1.     *Delivery of Distributions in General*.  Except as otherwise provided herein, distributions under the Plan shall be made by the Reorganized Debtors (or their agent or designee) to the holders of Allowed Claims and Allowed Equity Interests in all Classes for which a distribution is provided in this Plan at the addresses set forth on the Schedules (if filed) or in the Debtors' books and records, as applicable, unless such addresses are superseded by proofs of Claim or Equity Interests or transfers of Claim filed pursuant to Bankruptcy Rule 3001 by the Record Date (or at the last known addresses of such holders if the Debtors or the Reorganized Debtors have been notified in writing of a change of address).

2.     *Delivery of Distributions to Holders of Senior Notes Claims*.  Each Senior Notes Indenture Trustee may, at the discretion of the Debtors (with the consent of the Steering Group), be deemed to be the holder of all applicable Senior Notes Claims for purposes of distributions to be made hereunder, and all distributions on account of each Senior Notes Claim may be, at the discretion of the Debtors (with the consent of the Steering Group), made to the applicable Senior Notes Indenture Trustee.  If such distributions are made to the applicable Senior Notes Indenture Trustee, as soon as practicable following compliance with the requirements set forth in Article VIII of the Plan, the Senior Notes Indenture Trustees shall

arrange to deliver or direct the delivery of such distributions to or on behalf of the holders of Allowed Senior Notes Claims in accordance with the terms of the Senior Notes Indentures and the Plan. Notwithstanding anything in the Plan to the contrary, and without limiting the exculpation and release provisions of the Plan, the Senior Notes Indenture Trustees shall not have any liability to any person with respect to distributions made or directed to be made by the Senior Notes Indenture Trustees.

3. *Distribution of Cash*. Any payment of Cash by the Reorganized Debtors pursuant to the Plan shall be made at the option and in the sole discretion of the Reorganized Debtors by (i) a check drawn on, or (ii) wire transfer from, a domestic bank selected by the Reorganized Debtors.

4. *Unclaimed Distributions of Cash*. Any distribution of Cash under the Plan that is unclaimed after six (6) months after it has been delivered (or attempted to be delivered) shall, pursuant to section 347(b) of the Bankruptcy Code, become the property of the Reorganized Debtors notwithstanding any state or other escheat or similar laws to the contrary, and the entitlement by the holder of such unclaimed Allowed Claim or Allowed Equity Interest to such distribution or any subsequent distribution on account of such Allowed Claim or Allowed Equity Interest shall be extinguished and forever barred.

5. *Distributions of New HERO Common Stock and New HERO Warrants*. On or about the Effective Date, the Reorganized Debtors (or their agent or designee) shall distribute (i) the Senior Notes Equity Distribution to the holders of the Senior Notes Claims, (ii) the Shareholder Equity Distribution to the holders of Allowed HERO Equity Interests, and (iii) the New HERO Warrants to the holders of Allowed HERO Equity Interests.

6. *Unclaimed Distributions of New HERO Common Stock and New HERO Warrants*. Any distribution of New HERO Common Stock and New HERO Warrants under the Plan that is unclaimed after six (6) months after it has been delivered (or attempted to be delivered) shall be retained by the Reorganized Debtors, notwithstanding any state or other escheat or similar laws to the contrary, and the entitlement by the holder of such Allowed Claim or Allowed Equity Interest to such distribution or any subsequent distribution on account of such Allowed Claim or Allowed Equity Interest shall be extinguished and forever barred.

7. *Saturdays, Sundays, or Legal Holidays*. If any payment, distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, and shall be deemed to have been completed as of the required date.

8. *Fractional New HERO Common Stock and New HERO Warrants and De Minimis Distributions*. Notwithstanding any other provision in the Plan to the contrary, no fractional shares of New HERO Common Stock or fractional New HERO Warrants shall be issued or distributed pursuant to the Plan. Whenever any distribution of a fraction of a share of New HERO Common Stock or a fractional New HERO Warrant would otherwise be required under the Plan, the actual distribution made shall reflect a rounding of such fraction to the nearest whole share or warrant (up or down), with half shares or warrants or less being rounded down and fractions in excess of a half of a share or warrant being rounded up. No consideration

will be provided in lieu of fractional shares that are rounded down.  Fractional shares of New HERO Common Stock or New HERO Warrants, as applicable, that are not distributed in accordance with this Article VII.B.8 shall be cancelled.  The Reorganized Debtors shall not be required to, but may in their sole and absolute discretion, make any payment on account of any Claim or Equity Interest in the event that the costs of making such payment exceeds the amount of such payment.

9.    *Distributions to Holders of Claims:*

(a)    *Initial Distribution to Claims Allowed as of the Effective Date*.  On or as soon as reasonably practicable after the Effective Date, or as otherwise expressly set forth in the Plan, the Reorganized Debtors (or their agent or designee) shall distribute Cash or Collateral, as the case may be, to the holders of Allowed Claims as contemplated herein.

(b)    *Claims Allowed after the Effective Date*.  Each holder of a Claim that becomes an Allowed Claim subsequent to the Effective Date shall receive the distribution to which such holder of an Allowed Claim is entitled as set forth in Article III, and distributions to such holder shall be made in accordance with the provisions of this Plan.  As soon as practicable after the date that the Claim becomes an Allowed Claim, the Reorganized Debtors shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under this Plan as of the Effective Date, without any interest to be paid on account of such Claim.

10.    *Special Rules for Distributions to Holders of Disputed Claims and Disputed Equity Interests*.  Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a Disputed Claim or Disputed Equity Interest until all such disputes in connection with such Disputed Claim or Disputed Equity Interest, respectively, have been resolved by settlement or Final Order.  In the event that there are Disputed Claims or Disputed Equity Interests requiring adjudication and resolution, the Reorganized Debtors shall establish appropriate reserves for potential payment of such Claims or Equity Interests.  For the avoidance of doubt, General Unsecured Claims are not subject to this Article VIII.B.9.  If the Debtors, Reorganized Debtors or any other party in interest dispute any General Unsecured Claim, such dispute shall be governed by Article VIII.A.3 hereof.

11.    *Interest on Claims and Equity Interests*.  Except as specifically provided for in the Plan, no Claims or Equity Interests, Allowed or otherwise (including Administrative Claims), shall be entitled, under any circumstances, to receive any interest on a Claim or Equity Interests.

## C.    Allocation of Consideration.

The aggregate consideration to be distributed to the holders of Allowed Claims in each Class under the Plan shall be treated as first satisfying an amount equal to the principal amount of the Allowed Claim for such holders, and any remaining consideration as satisfying accrued, but unpaid interest, as applicable.

**D.**    <u>**Estimation.**</u>

Prior to or after the Effective Date, the Debtors (with the consent of the Steering Group) or the Reorganized Debtors, as applicable, may (but are not required to), at any time, request that the Court estimate (i) any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code or (ii) any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, for any reason, regardless of whether the Debtors or the Reorganized Debtors has previously objected to such Claim or whether the Court has ruled on any such objection. The Court will retain jurisdiction to estimate any Claim at any time, including during proceedings concerning any objection to such Claim. In the event that the Court estimates any Claim, such estimated amount shall constitute either (i) the Allowed amount of such Claim, (ii) the amount on which a reserve is to be calculated for purposes of any reserve requirement under the Plan or (iii) a maximum limitation on such Claim, as determined by the Court. If the estimated amount constitutes the maximum limitation on such Claim, the Debtors (with the consent of the Steering Group) or the Reorganized Debtors, as the case may be, may elect to object to any ultimate allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another.

**E.**    <u>**Insured Claims.**</u>

If any portion of an Allowed Claim is an Insured Claim, no distributions under the Plan shall be made on account of such Allowed Claim until the holder of such Allowed Claim has exhausted all remedies with respect to any applicable insurance policies. To the extent that the Debtors' insurers agree to satisfy a Claim in whole or in part, then immediately upon such agreement, the portion of such Claim so satisfied may be expunged without an objection to such Claim having to be filed and without any further notice to or action, order or approval of the Court.

**ARTICLE IX.**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction:

(i)    to resolve any matters related to (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which one or more of the Debtors or the Reorganized Debtors is party or with respect to which the Debtors or the Reorganized Debtors may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; and (b) any dispute regarding whether a contract or lease is or was executory or expired;

(ii)    to determine, adjudicate, or decide any other applications, adversary proceedings, contested matters, and any other matters pending on the Effective Date;

(iii)    to ensure that distributions to holders of Allowed Claims and Equity Interests are accomplished as provided herein;

(iv)    to resolve disputes as to the ownership of any Claim or Equity Interest;

(v)    to allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

(vi)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, reversed, modified, or vacated;

(vii)    to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(viii)    to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including the Confirmation Order;

(ix)    to hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331, and 503(b) of the Bankruptcy Code;

(x)    to hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including the release of the Guarantee Claims;

(xi)    to hear and determine any issue for which the Plan requires a Final Order of the Court;

(xii)    to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(xiii)    to hear and determine disputes arising in connection with compensation and reimbursement of expenses of professionals for services rendered during the period commencing on the Petition Date through and including the Effective Date;

(xiv)    to hear and determine any Causes of Action preserved under the Plan;

(xv)    to hear and determine any matter regarding the existence, nature, and scope of the Debtors' discharge;

(xvi)    to hear and determine any matter, case, controversy, suit, dispute, or Cause of Action (i) regarding the existence, nature, and scope of the discharge, releases, injunctions, and exculpation provided under the Plan, and (ii) enter such orders as may be necessary or appropriate to implement such discharge, releases, injunctions, exculpations, and other provisions;

(xvii)    to enter a final decree closing the Chapter 11 Cases;

(xviii) to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

(xix)    to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(xx)    to adjudicate any and all disputes arising from or relating to the First Lien Exit Facility Subscription Procedures;

(xxi)    to enforce all orders previously entered by the Court; and

(xxii)    to hear any other matter not inconsistent with the Bankruptcy Code.

For the avoidance of doubt, the Court shall not retain exclusive jurisdiction with respect to the following documents entered into by the Reorganized Debtors on or after the Effective Date: (i) the First Lien Exit Facility Credit Agreement, (ii) the First Lien Exit Facility Documents, (iii) the New HERO By-Laws, (iv) the New HERO Charter, (v) the amended organizational documents for any of the Reorganized Debtors (other than Reorganized Hero), (vi) the New HERO Warrant Agreement and (v) the New HERO Management Incentive Program Agreements.

## ARTICLE X.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    **Assumption of Executory Contracts and Unexpired Leases.**

Each Executory Contract and Unexpired Lease shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code. The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to Debtors or Non-Debtor Subsidiaries. The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions and assignments pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

Except as otherwise provided herein or agreed to by the Debtors, the Steering Group, and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

B.    **Cure Claims.**

At the election of the Debtors (with the consent of the Steering Group) or the Reorganized Debtors, as applicable, any monetary defaults under each Executory Contract and Unexpired Lease to be assumed under the Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code in one of the following ways: (i) payment of the Cure Claim in Cash on or as soon as reasonably practicable following the occurrence of (A) thirty (30) days after the determination of the Cure Claim, and (B) the Effective Date or such other date as may be set by the Court; or (ii) on such other terms as agreed to by the Debtors (with the consent of the Steering Group) or the Reorganized Debtors and the non-Debtor counterparty to such Executory Contract or Unexpired Lease.

In the event of a dispute pertaining to assumption or assignment, the Cure Claim payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.  No later than the Plan Supplement Filing Date, to the extent not previously filed with the Court and served on affected counterparties, the Debtors shall provide for notices (in form and substance reasonably satisfactory to the Steering Group) of proposed assumption and proposed cure amounts to be sent to applicable contract and lease counterparties, together with procedures for objecting thereto and resolution of disputes by the Court (in form and substance reasonably satisfactory to the Steering Group).  Any objection by a contract or lease counterparty to a proposed assumption or related cure amount must be filed, served, and actually received by the Debtors and counsel to the Steering Group by the date on which objections to Confirmation are due (or such other date as may be provided in the applicable assumption notice).  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount.

The only adequate assurance of future performance shall be the promise of the Reorganized Debtors to perform all obligations under any executory contract or unexpired lease under this Plan.

**ASSUMPTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE DATE ANY OF THE DEBTORS OR THE REORGANIZED DEBTORS ASSUMES SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE. ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE COURT.**

Obligations arising under insurance policies assumed by any of the Debtors before the Effective Date shall be adequately protected in accordance with any order authorizing such assumption.

## C.      Reservation of Rights.

Nothing contained in the Plan shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors (with the consent of the Steering Group) or the Reorganized Debtors, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease., in which case the deemed assumptions and rejections provided for in the Plan shall not apply to such contract or lease.

## D.      Assignment.

Any Executory Contract or Unexpired Lease to be held by any of the Debtors or the Reorganized Debtors and assumed hereunder or otherwise in the Chapter 11 Cases, if not expressly assigned to a third party previously in the Chapter 11 Cases, will be deemed assigned to the applicable Reorganized Debtor pursuant to section 365 of the Bankruptcy Code.  If an objection to a proposed assumption, assumption and assignment, or Cure Claim is not resolved in favor of the Debtors before the Effective Date, the applicable Executory Contract or Unexpired Lease may be designated by the Debtors (with the consent of the Steering Group) or the Reorganized Debtors for rejection within five (5) Business Days of the entry of the order of the Court resolving the matter against the Debtors. Such rejection shall be deemed effective as of the Effective Date.

## E.      Insurance Policies.

Notwithstanding anything in this Plan to the contrary, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan.  On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto.

## F.      Post-Petition Contracts and Leases.

All contracts, agreements, and leases that were entered into by  one or more of the Debtors or assumed by any of the Debtors after the Petition Date shall be deemed assigned by the applicable Debtor(s) to the applicable Reorganized Debtor(s) on the Effective Date.

## ARTICLE XI.
## EFFECTIVENESS OF THE PLAN

**A.      Conditions Precedent to Effectiveness.**

      The Plan shall not become effective unless and until the Confirmation Date has occurred and the following conditions have been satisfied in full or waived in accordance with Article X.B:

      1.      the Confirmation Order entered by the Court shall be in form and substance consistent with the Restructuring Support Agreement or otherwise reasonably satisfactory to the Debtors and the Steering Group;

      2.      the Confirmation Order shall not have been stayed, modified, or vacated on appeal;

      3.      the Definitive Documents (as such term is defined in the Restructuring Support Agreement) shall be in form and substance consistent with the Restructuring Support Agreement and otherwise reasonably satisfactory to the Debtors and the Steering Group;

      4.      all actions, documents, certificates, and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws;

      5.      all authorizations, consents, and regulatory approvals required (if any) for the Plan's effectiveness shall have been obtained;

      6.      the Reorganized Debtors shall have executed the First Lien Exit Facility Credit Agreement and all other First Lien Exit Facility Documents, and all conditions precedent to effectiveness of the First Lien Exit Facility shall have been satisfied or waived in accordance with the terms of the First Lien Exit Facility;

      7.      (i) the Restructuring Support Agreement shall not have been terminated in accordance with the terms thereof, and such Restructuring Support Agreement shall be in full force and effect, and (ii) all conditions to closing set forth in the Restructuring Support Agreement shall have been satisfied.

      8.      since the date of entry into the Restructuring Support Agreement, there shall not have been a Material Adverse Change;

      9.      the assets related to the Highlander, including all contracts related thereto, shall be owned in the same Non-Debtor Subsidiaries that owned such assets prior to the Petition Date.  Since the date of entry into the Restructuring Support Agreement, such Non-Debtor Subsidiaries shall have engaged in no other business other than the ownership of such assets and shall not have incurred any other obligations other than those directly related to the ownership of such assets; and

10.    all unpaid reasonable fees, expenses, costs, and other charges of the Steering Group's professionals (including the fees, expenses, costs and other charges of Akin Gump Strauss Hauer & Feld LLP and Blackstone Advisory Partners L.P.) shall have been paid pursuant to the applicable fee letters of such professionals.

## B.    Waiver of Conditions Precedent to Effectiveness.

The Debtors, with the written consent of the Steering Group, may waive conditions set forth in Article XI.A above at any time without leave of or order of the Court and without any formal action.

## C.    Effect of Failure of Conditions.

In the event that the Effective Date does not occur on or before fifteen (15) days after the Confirmation Date, but in no event later than November 7, 2015, upon notification submitted by the Debtors (with the consent of the Steering Group) to the Court: (i) the Confirmation Order may be vacated, (ii) no distributions under the Plan shall be made; (iii) the Debtors and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver, release, or discharge of any Claims or Equity Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors unless extended by Court order.

## D.    Vacatur of Confirmation Order.

If a Final Order denying confirmation of the Plan is entered, or if the Confirmation Order is vacated, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (i) constitute a waiver, release, or discharge of any Claims, Guarantee Claims, or Equity Interests; (ii) prejudice in any manner the rights of the holder of any Claim, Guarantee Claim, or Equity Interest; (iii) prejudice in any manner any right, remedy, or claim of the Debtors or the Non-Debtor Subsidiaries; or (iv) be deemed an admission against interest by the Debtors or the Non-Debtor Subsidiaries.

## E.    Modification of the Plan.

Subject to the limitations contained in the Plan, and subject to the terms of the Restructuring Support Agreement, (i) the Debtors reserve the right (with the consent of the Steering Group), in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and (ii) after entry of the Confirmation Order, with the consent of the Steering Group, the Debtors or the Reorganized Debtors, as the case may be, may, upon order of the Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code.  Notwithstanding the foregoing, the Confirmation Order shall authorize the Debtors (with the consent of the Steering Group) or the Reorganized Debtors, as the case may be, to make appropriate technical adjustments, remedy any defect or omission, or reconcile any inconsistencies in the Plan, the documents included in the

Plan Supplement, any and all exhibits to the Plan, and/or the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided, however, that such action does not materially and adversely affect the treatment of holders of Allowed Claims or Equity Interests pursuant to the Plan.

**F.     Revocation, Withdrawal, or Non-Consummation.**

1.     *Right to Revoke or Withdraw*. The Debtors (with the consent of the Steering Group) reserve the right to revoke or withdraw the Plan at any time before the Effective Date; provided, however, that this provision shall have no impact on the rights of the Steering Group, as set forth in the Restructuring Support Agreement, in respect of any such revocation or withdrawal.

2.     *Effect of Withdrawal, Revocation, or Non-Consummation*. If the Debtors revoke or withdraw the Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests), the assumption or rejection of Executory Contracts, Unexpired Leases or benefit plans effected by the Plan, any release, exculpation, or indemnification provided for in the Plan, and any document or agreement executed pursuant to the Plan shall be null and void. In such event, nothing contained herein, and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims by or against or Equity Interests in the Debtors or any other Person, to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or to constitute an admission of any sort by the Debtors or any other Person.

**ARTICLE XII.
MISCELLANEOUS PROVISIONS**

**A.     Immediate Binding Effect.**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with any of the Debtors.   The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**B.     Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Delaware (without reference to the conflicts of laws provisions thereof that would require or permit the application of the law of another jurisdiction) shall govern the construction and implementation of the Plan and any

agreements, documents, and instruments executed in connection with the Plan, unless otherwise specified.

### C.      Filing or Execution of Additional Documents.

On or before the Effective Date or as soon thereafter as is practicable, the Debtors or the Reorganized Debtors shall (on terms materially consistent with the Plan) file with the Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, which agreements and documents shall be in form and substance reasonably satisfactory to the Steering Group.

### D.      Term of Injunctions or Stays.

All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### E.      Withholding and Reporting Requirements.

In connection with the Plan and all instruments issued in connection therewith and distributions thereon, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any United States federal, state, local, or non-U.S. taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distribution pending receipt of information necessary or appropriate to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.

### F.      Exemption From Transfer Taxes.

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, all transfers of property pursuant hereto, including (i) the issuance, transfer, or exchange under the Plan of New HERO Common Stock, the New HERO Warrants, the New HERO Management Incentive Program Equity, and the security interests in favor of the lenders under the First Lien Exit Facility, (ii) the making or assignment of any lease or sublease, or (iii) the making or delivery of any other instrument whatsoever, in furtherance of or in connection with the Plan, shall not be subject to any stamp, conveyance, mortgage, sales or use, real estate transfer, recording, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

G.      **Plan Supplement.**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  The documents contained in the Plan Supplement shall be available online at www.pacer.gov and cases.primeclerk.com/hercules. Holders of Claims or Equity Interests may obtain a copy of the Plan Supplement upon written request to counsel to the Debtors.  The Debtors reserve the right, in accordance with the terms hereof, and with the consent of the Steering Group, to modify, amend, supplement, restate, or withdraw any part of the Plan Supplement after they are filed and shall promptly make such changes available online at www.pacer.gov and cases.primeclerk.com/hercules.

H.      **Notices.**

All notices, requests, and demands hereunder to be effective shall be made in writing or by e-mail, and unless otherwise expressly provided herein, shall be deemed to have been duly given when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed.  Each of such notices shall be addressed as follows:

1.      *To the Debtor*s: Hercules Offshore Inc., 9 Greenway Plaza, Suite 2200, Houston, TX 77046, Attn: Beau M. Thompson, General Counsel, Tel.: (713) 350-8301, Fax: (713) 350-5109, with a copy to (i) Baker Botts LLP, 30 Rockefeller Plaza, New York, NY 10112, Attn: Emanuel C. Grillo, Esq.,  Tel.: (212) 892-4000,  Fax: (212) 408-2500,  e-mail: emanuel.grillo@bakerbotts.com; and (ii) Baker Botts LLP, 2001 Ross Avenue, Dallas, Texas 75201, Attn:  C. Luckey McDowell, Esq., Tel.: (214) 953-6500, Fax: (214) 953-6503, e-mail: luckey.mcdowell@bakerbotts.com.

2.      *To the Steering Group*: Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, Bank of America Tower, New York, NY 10036-6745 Attn: Arik Preis, Esq. and Michael S. Stamer, Esq., Tel: (212) 872-1000, Fax: (212) 872-1002, e-mail: apreis@akingump.com and mstamer@akingump.com.

3.      *To the U.S. Trustee*: (i) if by mail to: Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Tel.: (302) 573-6491, Fax: (302) 573-6497.

I.      **Conflicts.**

The terms of the Plan shall govern in the event of any inconsistency between the Plan and the Disclosure Statement. In the event of any inconsistency with the Plan and the Confirmation Order, the Confirmation Order shall govern with respect to such inconsistency.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated: July 13, 2015

**HERCULES OFFSHORE INC.**
**on behalf of itself and all other Debtors**


By: /s/   John Rynd
Name:  John Rynd
Title:  Chief Executive Officer and President