**EXHIBIT E TO THE DISCLOSURE STATEMENT**

**LIQUIDATION ANALYSIS**

# LIQUIDATION ANALYSIS

*Projected as of October 1, 2015*

> **NOTHING CONTAINED IN THE FOLLOWING LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE DEBTORS.  THE ESTIMATED AMOUNT OF ALLOWED CLAIMS SET FORTH HEREIN SHOULD NOT BE RELIED UPON FOR ANY OTHER PURPOSE, INCLUDING ANY DETERMINATION OF THE VALUE OF ANY DISTRIBUTION TO BE MADE ON ACCOUNT OF ALLOWED CLAIMS UNDER THE PLAN.  THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THESE CHAPTER 11 CASES COULD DIFFER MATERIALLY FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.**

Introduction

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that the Bankruptcy Court find, as a condition to confirmation of the Plan, that each holder of a Claim or Interest in each Impaired Class:  (i) has accepted the Plan; or (ii) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such Person would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  To make these findings, the Bankruptcy Court must: (1) estimate the cash proceeds (the "Net Estimated Liquidation Proceeds") that a chapter 7 trustee would generate if each Debtor's Chapter 11 Case were converted to a chapter 7 case on the Effective Date and the assets of such Debtor's estate were liquidated; (2) determine the distribution (the "Estimated Recovery Under Liquidation") that each non-accepting holder of a Claim or Interest would receive from the Net Estimated Liquidation Proceeds under the priority scheme dictated in chapter 7; and (3) compare each holder's Estimated Recovery Under Liquidation to the distribution under the Plan (the "Plan Recovery") that such Holder would receive if the Plan were confirmed and consummated.

Based on the following hypothetical Liquidation Analysis, the Debtors believe that the Plan satisfies the best interests test and that each holder of an Impaired Claim or Equity Interest will receive value under the Plan on the Effective Date that is not less than the value such holder would receive if the Debtors liquidated under chapter 7 of the Bankruptcy Code.  The Debtors believe that the Liquidation Analysis and conclusions set forth herein are fair and represent management's best judgment regarding the results of a liquidation of the Debtors under chapter 7 of the Bankruptcy Code taking into account various factors including the absence of a robust market for the sale of the Debtors' assets and the negative impact on values arising from a distressed sale of a large number of rigs in a relatively short amount of time under current market conditions.  The Liquidation Analysis was prepared for the sole purpose of assisting the Bankruptcy Court and holders of Impaired Claims or Equity Interests in making this determination, and should not be used for any other purpose.  Nothing contained in this Liquidation Analysis is intended as or constitutes a concession or admission for any purpose other than the presentation of a hypothetical Liquidation Analysis for purposes of the best interests test.  Accordingly, asset values discussed herein may be different than amounts referred to in the Plan.  The Liquidation Analysis is based upon certain assumptions discussed herein and in the Disclosure Statement.

Significant Assumptions

The Liquidation Analysis assumes that the Debtors' liquidation would commence on or about October 1, 2015 (the "Conversion Date") under the direction of a chapter 7 trustee and would continue for a period of approximately twelve months, during which time all of the Debtors' assets would be sold, and the cash proceeds (net of liquidation-related costs), together with the cash on hand, would then be distributed to Creditors in accordance with the priority

scheme established under the Bankruptcy Code. The Debtors would expect the chapter 7 trustee to retain professionals to assist in the liquidation of the estates. It is assumed that the Debtors would continue to operate all rigs under customer contracts at the Conversion Date in order to maximize the liquidation value. All other operations are assumed to cease in order to minimize costs associated with the chapter 7 wind down and liquidation. Because the Debtors own 100% of the equity interests in the non-Debtor subsidiaries, with the exception of the Hercules Offshore (Nigeria) Limited ("Nigerian Entity"), and all management and corporate functions reside with the Debtor entities, operations at those subsidiaries would cease as well. Therefore, for the purposes of the Liquidation Analysis, the Debtors and their advisors have attempted to ascribe value to each of the assets individually as they would be liquidated by a chapter 7 trustee and the professionals retained by the trustee. For other assets, liquidation values were assessed for general classes of assets by estimating the percentage recoveries that a trustee might achieve through an orderly disposition. Where applicable, asset recoveries below are shown net of the costs to achieve those recoveries.

**The Debtor entities are all guarantors of the Senior Notes Claims and the value of all Debtor and Non-Debtor entities ultimately accrue directly or indirectly to one or more of the Debtor entities, therefore, for purposes of this liquidation analysis the comparison to the chapter 11 Plan is done on a consolidated basis.**

The statements in the Liquidation Analysis, including estimates of Allowed Claims, were prepared solely to assist the Bankruptcy Court in making the findings required under section 1129(a)(7) of the Bankruptcy Code and they may not be used or relied upon for any other purpose.

THE DEBTORS BELIEVE THAT ANY ANALYSIS OF A HYPOTHETICAL LIQUIDATION IS NECESSARILY SPECULATIVE. THERE ARE A NUMBER OF ESTIMATES AND ASSUMPTIONS UNDERLYING THE LIQUIDATION ANALYSIS THAT ARE INHERENTLY SUBJECT TO SIGNIFICANT UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF THE DEBTORS OR A CHAPTER 7 TRUSTEE. NEITHER THE LIQUIDATION ANALYSIS, NOR THE FINANCIAL INFORMATION ON WHICH IT IS BASED, HAS BEEN EXAMINED OR REVIEWED BY INDEPENDENT ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS. THERE CAN BE NO ASSURANCE THAT ACTUAL RESULTS WILL NOT VARY MATERIALLY FROM THE HYPOTHETICAL RESULTS PRESENTED IN THE LIQUIDATION ANALYSIS.

<u>Summary Notes to Liquidation Analysis</u>

1. *Dependence on assumptions*. The Liquidation Analysis is based on a number of estimates and assumptions that, although developed and considered reasonable by management and the Debtors' advisors, are inherently subject to significant economic, business, regulatory and competitive uncertainties and contingencies beyond the control of the Debtors. Accordingly, there can be no assurance that the values reflected in this Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such a liquidation and actual results could vary materially and adversely from those contained herein.

2. *Additional claims in a liquidation*. The liquidation itself may trigger certain obligations and priority payments that otherwise would not be due in the ordinary course of business or would otherwise not exist under a chapter 11 plan. These priority payments would be made in full before any distribution of proceeds to pay holders of general unsecured claims or to make distributions in respect of Equity Interests. The liquidation would likely prompt certain other events to occur including the rejection of executory contracts, unexpired leases, defaults under agreements with suppliers, and severance obligations. Such events, if triggered, would likely create a larger number of creditors and would subject the chapter 7 estates to additional claims. As a general rule, the Company does not enter into long-term contracts with their

vendors and only maintains leases for its corporate offices and Houma facility. As such, the amount of additional unsecured claims is not deemed to have a material impact on the Liquidation Analysis.

3. *Preference transfers.* A thorough preference analysis has not been conducted by the Debtors or their advisors. The Company is currently paying vendors on scheduled terms and is expected to do so through the expected Conversion Date. Therefore the amount of preference claims are estimated at zero for the purposes of this Liquidation Analysis

4. *Fraudulent transfers.* No recovery or related litigation costs have been attributed to any potential fraudulent transfer actions under the Bankruptcy Code. The Debtors do not believe that such causes of action would have a material effect on the Liquidation Analysis for purposes of section 1129(a)(7) of the Bankruptcy Code.

5. *Dependence on a forecasted balance sheet.* This Liquidation Analysis is dependent on a forecasted balance sheet and the Debtors' current best estimates with respect to forecasted balances by Debtor entity and based on the Debtors' current legal and financial review. Forecasted balances could vary from the Debtors' estimates and additional legal or financial analysis could cause the Debtors' estimates to change.

6. *Chapter 7 liquidation costs.* It is assumed that it would take twelve months to complete the wind down and liquidation of the Debtors' estates. The fees and operating expenses incurred during the Chapter 7 process are included in the estimate of Chapter 7 Administrative Claims. In addition, there are liquidation costs associated with most of the Debtors' assets. Asset recoveries are shown in the Liquidation Analysis net of such liquidation costs.

7. *Claims Estimates.* Claims are estimated at the Conversion Date based on management's recent projections. The Company does not provide projections at the legal entity level, and therefore when claims could not be projected, liabilities as of May 31, 2015 were used.

8. *Claim assertions.* The Senior Note Claims (approximately $1.2 billion) are joint and several obligations of each of the Debtors. As such, Senior Notes Claims, together with Chapter 7 and Chapter 11 Administrative Claims, are represented as being asserted against all Debtor entities. In a Chapter 7, the Senior Note Claims would share pro rata with Allowed General Unsecured Claims in any distribution of liquidation proceeds at the applicable Debtor. However, the Liquidation Analysis is performed on a consolidated basis, and the consolidated net liquidation proceeds are attributed evenly across the Senior Note Claims and consolidated General Unsecured Claims.

**Conclusion: The Debtors have determined, as summarized in the following analysis, that confirmation of the Plan will provide all impaired creditors and equity holders with a recovery (if any) that is not less than what they would otherwise receive pursuant to a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.**

The following Liquidation Analysis should be reviewed with the accompanying notes.

Liquidation Analysis for Consolidated Debtor Entities
($ in Millions)[1]

| | | Amount | Estimated Values in Liquidation | | Estimated Recovery% | |
|---|---|---:|---:|---:|---:|---:|
| | | | Low | High | Low | High |
| (a) | Cash | $ 53.1 | $ 53.1 | $ 53.1 | 100% | 100% |
| (b) | Accounts Receivable - Trade | 42.7 | 21.4 | 32.0 | 50% | 75% |
| | Accounts Receivable - Other | 0.5 | 0.1 | 0.3 | 25% | 50% |
| (c) | Other Current Assets | 20.8 | - | - | 0% | 0% |
| | Total Current Assets | 117.2 | 74.6 | 85.4 | 64% | 73% |
| (d) | Property, Plant & Equipment | 398.3 | 36.9 | 82.0 | 9% | 21% |
| (e) | Deferred Drydock | 1.0 | - | - | 0% | 0% |
| (f) | Other Assets | 19.1 | 2.7 | 5.5 | 14% | 29% |
| (g) | Intercompany Receivables - Non-Debtor | 704.7 | - | - | 0% | 0% |
| (h) | Investment in Non-Debtor Affiliates | 335.3 | 52.4 | 268.0 | 16% | 80% |
| | Total | $ 1,575.6 | $ 166.6 | $ 440.9 | 11% | 28% |
| | **Gross Liquidation Proceeds Available for Distribution** | | $ 166.6 | $ 440.9 | | |

| | | | Estimated Recovery | | Estimated Recovery% | | |
|---|---|---|---:|---:|---:|---:|---:|
| | | | Low | High | Low | High | Ch. 11 Plan |
| (k) | **Chapter 7 Admin Claims** | | | | | | |
| | Total Operating Expenses | | 66.4 | 66.4 | 100% | 100% | N/A |
| | Trustee Fees | | 5.0 | 13.2 | 100% | 100% | N/A |
| (l) | Priority Tax Claims | | 5.5 | 5.5 | 100% | 100% | 100% |
| | **Net Estimated Liquidation Proceeds** | | **89.6** | **355.7** | | | |
| (m) | Chapter 11 Administrative Expenses | | 3.0 | 3.0 | | | |
| (n) | Class 1 - Other Priority Claims | - | - | - | N/A | N/A | 100% |
| (o) | Class 2 - Other Secured Claims | - | - | - | N/A | N/A | 100% |
| (p) | Class 3 - Senior Notes Claims [2] | 1,211.0 | 80.0 | 325.6 | 7% | 27% | 41% |
| (q) | Class 4 - General Unsecured Claims | 100.7 | 6.6 | 27.1 | 7% | 27% | 100% |
| (r) | Class 5 - Intercompany Claims | 480.5 | - | - | 0% | 0% | 100% |
| (s) | Class 6 - Intercompany Interests | - | - | - | N/A | N/A | 100% |
| (t) | Class 7 - HERO Equity Interests [3] | 316.6 | - | - | 0% | 0% | 0% |

(1) Value of zero indicates amount less than $50,000
(2) For the avoidance of doubt, the projected recovery for holders of Senior Notes Claims does not include any recovery attributable to the right of holders of Senior Notes Claims who are Eligible Noteholders to participate in the First Lien Exit Facility
(3) Holders of Class 7 Equity Interests will receive no distribution on account of their HERO Equity Interests, provided, however, that such holders that do not opt out of the Releases contained in Article VII of the Plan shall receive their Pro Rata share of (i) 3.1% of the New HERO Common Stock, and (ii) the New HERO Warrants

**Detailed Assumptions**

*Asset Recovery Estimates*

Asset recovery estimates presented in this Liquidation Analysis are based on the Company's projected consolidated Debtor balance sheet for October 1, 2015. When assets could not be projected, May 31, 2015 balances were used and noted.

(a) Cash: The Liquidation Analysis assumes current operations continue and ongoing expenses are incurred until the Conversion Date. The book cash balance at October 1, 2015 is based on the most recent projections prepared by management. The Debtors estimate a 100% recovery on Cash.

(b) <u>Accounts Receivable</u>: Because the Company does not forecast accounts receivable at the entity level, the balance is based on the May 31, 2015 balances for the consolidated Debtor entities. It is not expected that the October 1, 2015 accounts receivable balance will vary materially from this estimate. It is assumed that in a Chapter 7 certain existing staff of the Debtors would be retained to lead an aggressive collection effort for outstanding Accounts Receivable.  In order to achieve the highest recovery of accounts receivable, the Debtors believe that relatively senior level people will be retained.  The costs associated with such employees (excluding any retention or incentive payments that may be required) are included in the Chapter 7 operating expenses.  Due to the contract nature of the Debtors' business, and the assumption that contracted rig operations will continue until the rigs are sold over the twelve-month liquidation period, it is very likely that conversion to a Chapter 7 will disrupt operations in the middle of a contract.  Although the Debtors expect that the operating rigs would be sold and the contracts would be assigned to the buyer, it is likely that there are certain instances where this will not occur.  As a result, the Debtors estimate a 50% - 75% recovery rate on accounts receivable.

The line item entitled "Accounts Receivable – Other" consists primarily of a single receivable related to an insurance claim.  The Debtors estimate a 25%-50% recovery rate for this receivable in a chapter 7 scenario.

(c) <u>Other Current Assets</u>: Amounts in this category predominantly represent prepaid expenses, prepaid insurance, and deferred tax assets all of which are assumed to have no recovery in a liquidation.  The Liquidation Analysis uses the book value as of May 31, 2015 for such amounts, which does not have a meaningful impact on recovery.

(d) <u>Property, Plant & Equipment</u>: Fixed assets primarily include rigs and related equipment, liftboats, and miscellaneous equipment.  The Debtors currently have 19 jackup rigs primarily located in the Gulf of Mexico. 9 rigs are cold stacked, 6 are under contract and 4 are warm stacked as of June 23, 2015. All of the current rig contracts expire prior to the end of 2015. There is currently a significant oversupply of rigs in the market, and the average age of the Debtors' rigs is 37 years. It is management's view that rigs are becoming increasingly difficult to sell in an over saturated market with decreasing demand.

In general, contracted rigs can be sold at the highest values, and warm stacked rigs can be sold more easily at higher values than cold stacked rigs.  Based on management's knowledge of the rigs and current market conditions, comparable rigs sales Hercules made in 2015, and other data points, the Debtors and their advisors assigned orderly liquidation values to each of the Debtors' rigs by rig category (i.e., cold stacked rigs, warm stacked rigs and contracted rigs). Given the already over saturated nature of the market and the shortage of willing buyers in the market under present conditions, it is likely that 19 additional rigs hitting the market at one time would significantly reduce these already depressed liquidation values.  For this reason, the Debtors applied an additional 50-75% discount to the liquidation values.

Additionally, the Debtors own 10 liftboats in various classes. The liftboats were reviewed using a methodology similar to that used for the drilling rigs. Of the 10 liftboats, management believes 3 are significantly more marketable due to age and class and these were ascribed a higher value. It is management's opinion that there are few, if any, potential buyers currently in the market for liftboats and therefore it was assumed that an additional discount of 50-75% should be applied to reflect the incremental reduction in value due to marketing all 10 liftboats at the same time.

For other fixed asset classes, liquidation discounts were applied based on discussions with management and current market demand as outlined in the table below. These discounts were applied on fair market value of the assets in question if available, and on net book value where unavailable.

It is assumed that the Chapter 7 trustee would retain a broker to sell the fixed assets, and therefore a market standard brokerage fee of 2% was applied.

| PPE Sumary for the Consolidated Debtor Entities ($ in Millions) | NBV | Estimated Values in Liquidation | | Estimated Recovery% | |
|---|---|---|---|---|---|
| | | Low | High | Low | High |
| Net Buildings | $ 0.0 | $ 0.0 | $ 0.0 | 50% | 75% |
| PPE-Land | - | - | - | 50% | 75% |
| Net Leasehold Improvements | 3.3 | - | - | 0% | 0% |
| Net Furniture & Fixtures | 0.5 | - | 0.0 | 0% | 5% |
| Net information Technology | 3.7 | - | 0.4 | 0% | 10% |
| PPE-CIP-Additions | 6.6 | 1.6 | 3.3 | 25% | 50% |
| Net Drillpipe and Collars | 0.0 | 1.9 | 3.8 | 25% | 50% |
| Net Pool Equipment | 1.4 | 1.8 | 3.6 | 25% | 50% |
| Top Drives | 7.4 | 1.4 | 2.9 | 25% | 50% |
| Net Vehicles | 0.0 | 0.0 | 0.0 | 25% | 50% |
| Net Yard Equipment | - | 0.4 | 0.9 | 25% | 50% |
| Rigs and Related Equipment | 333.2 | 14.7 | 36.1 | 4% | 11% |
| Net Vessels and Marine Equipment | 42.2 | 15.7 | 32.8 | 37% | 78% |
| Total Gross PPE Proceeds | $ 398.3 | $ 37.6 | $ 83.7 | 9% | 21% |
| Less: Broker Fee | | (0.8) | (1.7) | | |
| Total Net PPE | $ 398.3 | $ 36.9 | $ 82.0 | 9% | 21% |

(e) <u>Deferred Drydock</u>: Includes certain amortized dry-docking cost and coast guard fees. They are assumed to have no estimated recovery.

(f) <u>Other Assets</u>: Includes capitalized debt cost, marketable securities related to the deferred compensation plan and deposits. The capitalized debt issuance costs are expected to have no value in a liquidation. The marketable securities are not protected in the event of a Chapter 7. The recovery on cash deposits and marketable securities is estimated at 50-100% of book balance.

| | NBV | Estimated Values in Liquidation | | Estimated Recovery% | |
|---|---|---|---|---|---|
| | | Low | High | Low | High |
| Debt Issuance Costs | $ 13.8 | $ - | $ - | 0% | 0% |
| Deferred Comp Plan-Marketable Securities | 3.4 | 1.7 | 3.4 | 50% | 100% |
| Deposits | 2.1 | 1.1 | 2.1 | 50% | 100% |
| Other | - | - | - | 0% | 0% |
| Total Other Assets | 19.3 | 2.7 | 5.5 | | |

(g) <u>Intercompany Receivables – Non Debtor</u>: Collection of Intercompany Receivables (i.e. collections from non-Debtors) is estimated at zero. Any recoveries related to assets from non-Debtor subsidiaries are assumed to be recovered under "Investments in Non-Debtor Affiliates" as described below in section (h).

(h) <u>Investment in Non-Debtor Affiliates</u>: The Debtors have investments in certain non-debtor foreign subsidiaries. The management team and substantially all of the administrative functions exist at the debtor

Page **6** of **9**

level. For this reason, it is unlikely the non-debtor entities would be able to operate as a going concern and would instead be forced into a liquidation. In addition, it is assumed that the rigs are being sold with contracts in place, and therefore it is unlikely that the liquidation proceeds would vary substantially from the proceeds received under a hypothetical sale of the non-Debtor entities as going concerns.

As noted previously, the Debtors own 100% of the equity interest in the non-Debtor subsidiaries with the exception of the Nigerian entity, which is 60% owned by a local Nigerian party. While only the pro-rata portion of the net liquidation proceeds at the Nigerian entity would go towards satisfying the Debtors' investment in non-Debtor affiliates, we do not expect the net recovery of the Nigerian Entity's liquidation to have a meaningful impact on the liquidation analysis.

Any proceeds from liquidation of non-Debtor subsidiaries must first be used to satisfy trade payables and other expenses at the foreign entity level, prior to being returned to the Debtors. Therefore, the foreign liquidation analysis was performed on a consolidated basis using the Asset Recovery Estimates outlined above in sections (a) – (f).

It should be noted that all seven of the foreign rigs are either under long term contracts or being actively marketed. Two rigs in particular, the *Hercules Triumph* and *Hercules Resilience*, have significantly more value than the other rigs in a liquidation scenario. Both rigs were built in 2013.

In addition, the foreign entities have currently made two installment payments totaling $47.2 million toward the building of a new rig, the *Hercules Highlander*, with a final installment of $188.8M due upon delivery of the vessel, estimated in the second quarter of 2016. In a chapter 7 scenario, the company will not have the liquidity to make the final installment payment, and therefore the payment will not be made. In this case, the contracted customer for the *Hercules Highlander* has the right to purchase the rig from the shipyard at full value resulting in a recoup of the $47.2 million (included as the high scenario). If the customer refuses the right to purchase the rig, ownership is retained by the shipyard which will then market the rig for sale. In current market conditions, it is assumed that the remaining rig payment will exceed the sale value of the rig by the shipyard, resulting in no recovery of the first two installment payments (included as the low scenario). Per the contract, no deficiency claim arises as a result of failing to make the final payment and secure delivery of the rig.

The table below shows the net proceeds of the consolidated non-Debtor subsidiaries in a liquidation scenario. The amounts available to pay intercompany interests (which are bolded below, and are listed as between $52.4 million and $268.0 million) correlate to line item "h" on the table in page 4, entitled, "Investment in Non-Debtor Affiliates".

| | | Amount | | Estimated Values in Liquidation | | Estimated Recovery% | |
|---|---|---|---|---|---|---|---|
| | | | | Low | High | Low | High |
| (a) | Cash | $ 32.3 | $ | 32.3 | $ 32.3 | 100% | 100% |
| (b) | Accounts Receivable - Trade | 64.4 | | 32.2 | 48.3 | 50% | 75% |
| | Accounts Receivable - Other | 2.0 | | 0.5 | 1.0 | 25% | 50% |
| (c) | Other Current Assets | 4.4 | | - | - | 0% | 0% |
| | Total Current Assets | 103.1 | | 64.9 | 81.5 | 63% | 79% |
| (d) | Property, Plant & Equipment | 1,166.2 | | 109.8 | 308.8 | 9% | 26% |
| (e) | Deferred Drydock | 0.3 | | - | - | 0% | 0% |
| (f) | Other Assets | 2.8 | | 0.1 | 0.1 | 2% | 4% |
| (g) | Intercompany Receivables - Debtor | 480.5 | | - | - | 0% | 0% |
| | Total | $ 1,752.9 | $ | 174.8 | $ 390.4 | 10% | 22% |
| | **Gross Liquidation Proceeds Available for Distribution** | | $ | **174.8** | **$ 390.4** | | |
| | Operating Expenses during Liquidation Period | | | 53.4 | 53.4 | | |
| | Total Payables and Accrued Liabilities | 69.1 | | 69.1 | 69.1 | 100% | 100% |
| | **Intercompany Interests** | **335.3** | | **52.4** | **268.0** | **16%** | **80%** |
| | Intercompany Payables | 704.7 | | - | - | 0% | 0% |

Liquidation Analysis for Consolidated Non-Debtor Subsidiaries
($ in Millions)[1]

(1) Value of zero indicates amount less than $50,000

(i) <u>Estimated Preference Claims</u>: In general the company pays its vendor to terms. As such, the amount of preference claims was estimated at zero for purposes of this liquidation analysis.

(j) <u>Other Causes of Action</u>: No material causes of action have been identified and as such they are currently estimated at zero for purposes of this Liquidation Analysis.

*Other Items*

The Company has reviewed off balance sheet items for other potential recoveries in the context of a liquidation. These could consist of assignment of large rig contracts. Although in certain instances, these contracts are transferrable, any value reflected in the transfer of the contracts is included in the liquidation value of the rigs under contract as of the Conversion Date.

*Claims*

(k) <u>Chapter 7 Admin Claims</u>: Amount represents the estimated chapter 7 trustee costs, costs of the trustee's professionals, and chapter 7 operating expenses not captured elsewhere in the analysis. The Liquidation Analysis assumes that the Chapter 7 trustee would be compensated in accordance with the guidelines of section 326 of the Bankruptcy Code. In addition, we have included an estimate for legal and financial professionals assisting the trustee in the amount of $1 million per month for the first 3 months, $500,000 per month for the next four months, and $250,000 per month for the remaining five months of the liquidation period.

Operating costs incurred during the liquidation period were estimated based on management projections for the twelve months following the Conversion Date. Operating expenses were forecasted on a per rig basis.

    Rigs currently under contracts that extend past the Conversion Date were assumed to continue operating under their current operating structure until sold. Rigs currently under contracts that expire prior to the Conversion Date were assumed to be warm stacked until liquidated. The remaining rigs were assumed to remain warm stacked or cold stacked based on their current status. As rigs are liquidated over the twelve month liquidation period, their operating expenses were removed accordingly. In addition, as the company has already made significant cuts to general and administrative expenses ("G&A") in the months leading up to the bankruptcy filing, it is expected that G&A will remain at current projected levels for the first three months as the company continues to operate contracted rigs and market them for sale and to aggressively collect outstanding receivables. As rigs and vessels are sold, G&A steps down over the twelve month period until eventually reaching zero.

(l) <u>Priority Tax Claims</u>: Reflects estimated unpaid tax claims as of the Conversion Date.

(m) <u>Chapter 11 Admin Claims</u>: Administrative expenses would primarily include estimates for post-petition accounts payable and unpaid professional fees after the Conversion Date. As there is only a short period of time expected between the Chapter 11 filing and the Conversion Date, Chapter 11 Administrative claims were estimated at $3 million.

(n) <u>Other Priority Claims</u>: For purposes of this Liquidation Analysis, Other Priority Claims are estimated at zero. Such amount is an estimate and the actual claims could be higher than this estimate.

(o) <u>Other Secured Claims</u>: Currently the Debtor entities assume Other Secured Claims are zero.

(p) <u>Senior Note Claims</u>: These claims are estimated at $1.2 billion, the approximate outstanding principal balance of the Senior Notes Claims as of the bankruptcy filing. Senior Note Claims are asserted against all the Debtor entities with Hercules Offshore, Inc. as the borrower and all other Debtor entities as Guarantors.

(q) <u>General Unsecured Claims</u>: Includes trade claims and other accrued liabilities. The Debtors' estimate of $100.7 million of General Unsecured Claims is based on the balance of payables and accrued liabilities as reflected on the Debtors' books and records as of May 21, 2015. Such amount is an estimate and the actual Allowed amount of such claims could be either higher or lower than this estimate.

(r) <u>Intercompany Claims</u>: Includes all intercompany notes and payables to non-Debtor entities. Intercompany Claims of non-Debtor entities were estimated at $480.5M. Such amount is an estimate and the actual Allowed amount of such claims could be higher or lower than this estimate.

(s) <u>Intercompany Interests</u>: Represents the equity interests of one Debtor owned by another Debtor.

(t) <u>HERO Equity Interests</u>: Represents the outstanding equity interest in Hercules Offshore, Inc.