## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re | ) | Chapter 11 |
| | ) | |
| HERCULES OFFSHORE, INC., *et al.*, | ) | Case No. 15-11685 (KJC) |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |
| | ) | **Hearing Date: Sept. 24, 2015 at 10:00 a.m. (ET)** |
| | ) | **Obj. Due: Sept. 17, 2015 at 4:00 p.m. (ET)** |

## MOTION TO APPROVE FDT LLC SETTLEMENT AGREEMENTS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AND SECTIONS 105(A) AND 363(B) OF THE BANKRUPTCY CODE

Hercules Offshore, Inc. ("HERO" or the "Company") and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (with HERO, collectively, the "Debtors"), file this motion (the "Motion"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), for an order approving the following settlement agreements entered into by FDT LLC, which is a Debtor in these cases and was formerly known as Delta Towing LLC ("Delta") substantially in the forms provided: (i) Confidential Settlement and Release Agreement executed on August 5, 2015 (the "Global Settlement Agreement"); (ii) the Agreement between Stephen M. Valdes ("Valdes") and Delta executed on July 29, 2015 and the First Amendment to Agreement executed on August 6, 2015 (collectively, the "Valdes Agreements"); and (iii) the Confidential Settlement and Release Agreement By and Between

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Cliffs Drilling Company (8934); Cliffs Drilling Trinidad L.L.C. (5205); FDT LLC (7581); FDT Holdings LLC (4277); Hercules Drilling Company, LLC (2771); Hercules Liftboat Company, LLC (0791); Hercules Offshore, Inc. (2838); Hercules Offshore Services LLC (1670); Hercules Offshore Liftboat Company LLC (5303); HERO Holdings, Inc. (5475); SD Drilling LLC (8190); THE Offshore Drilling Company (4465); THE Onshore Drilling Company (1072); TODCO Americas Inc. (0289); and TODCO International Inc. (6326). The address of the Debtors' corporate headquarters is Hercules Offshore, Inc., 9 Greenway Plaza, Ste 2200, Houston, TX 77046.

Delta and the Williams Group dated August 5, 2015 (the "Williams Agreement" and together with the Global Settlement Agreement and the Valdes Agreements, the "Settlement Agreements").[2]  The Global Settlement Agreement, the Valdes Agreements (filed *in globo*,) and the Williams Agreement are being filed under seal as **Exhibits B, C and D**, respectively.

In support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012 (the "Amended Standing Order").  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-l(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

## BANKRUPTCY BACKGROUND

4.      On August 13, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief in this Court under chapter 11 of the Bankruptcy Code.

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreements.

5.      On August 14, 2015, the Court entered an order [Docket No. 41] authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.  No official committees have been appointed or designated.

6.      On the Petition Date, the Debtors filed the Debtors' Joint Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan") and the related Solicitation and Disclosure Statement, dated July 13, 2015 (the "Disclosure Statement").

**BACKGROUND OF LITIGATION AND SETTLEMENT AGREEMENTS**

7.      The Settlement Agreements were entered into by and among Delta, the Coats Rose Group, the Williams Group, the International Group, the Platinum/Ferry Group, National Union and Valdes (collectively, the "Parties") to settle and resolve any and all claims, rights, demands, causes of action, defenses and exceptions arising out of or related to the following matters:

- *International Marine, et al v. FDT, LLC*, United States District Court for the Eastern District of Louisiana ("EDLA"), CA#10-0044-EEF-JCW, and related  appeals to the United States Court of Appeals for the Fifth Circuit (the "U.S. Fifth Circuit"), Case Nos. 14-31192, 15-30051 and 15-30321 (collectively, "EDLA Lawsuit")

- *FDT LLC v. Stephen J. Williams, et al*, 24th Judicial District Court of Louisiana ("24th JDC"), Case No. 738-330, Division "K," and related appeals ("24th JDC Lawsuit")

- *International Offshore Services v. Coats, Rose, et al*, 19th Judicial District Court of Louisiana ("19th JDC"), Suit No. 628157, Section 23, and related appeals ("19th JDC Lawsuit")

The EDLA Lawsuit, 24th JDC Lawsuit and 19th JDC Lawsuit, and any and all claims, rights, demands, causes of action, defenses, exceptions and appeals related thereto, are hereinafter collectively referred to as "Lawsuits."

**A. Vessel Sale and IOS Sale**

8.      Delta and International Marine, L.L.C. ("IM") entered into Vessel Sales Agreement dated September 8, 2006 ("VSA") for the sale of the DELTA TEAM and DELTA SKIPPER (collectively, "Vessels").  The VSA also included a non-competition agreement and agreement for the payment of liquidated damages for certain breaches.  International Offshore Services, L.L.C. ("IOS") guaranteed IM's payment and performance obligations under the VSA by executing the Parent Company Guaranty dated September 8, 2006 ("Parent Guaranty").  The Lawsuits arise primarily from Delta's claims that IM violated the non-competition provisions of the VSA by chartering out the Vessels in the Gulf of Mexico thirty-three (33) times from September, 2006 to July, 2007.

9.      IOS and its subsidiaries including IM (collectively, "International") were acquired by Ferry Holding Corporation ("FHC") on January 8, 2009 from its former members, Stephen J. Williams ("Williams"), Kelly B. Steele ("Steele"), Valdes and WMW, LLC (collectively, "Former Members"), pursuant to a Purchase Agreement dated January 8, 2009 ("Purchase Agreement"), whereby FHC purchased an 80% ownership interest in IOS ("IOS Sale").  After the IOS Sale, Williams retained a minority ownership in IOS and operated as the Chief Executive Officer of both IOS and IM until approximately January 2011.  The Purchase Agreement and contemporaneously executed Assignment and Assumption Agreement collectively allocated all pre-Closing liabilities to the Former Members and imposed certain defense and indemnity obligations on the Former Members, who also assumed the pre-Closing liabilities of International.

**B.  EDLA Lawsuit and 5th Circuit Appeal**

10.      The EDLA Lawsuit was instituted on January 27, 2010, in which matter, *inter alia*, Delta sought liquidated and other damages from IM and IOS relating to their alleged breaches of the VSA.  Valdes (who was not a party to the International/Williams Settlement Agreement) was added to the EDLA Lawsuit in a Third Party Demand by IOS and IM, which included a FRCP 14(c) tender of Valdes to Delta.

11.      After a trial on the number of breaches and damages, on June 30, 2014, the EDLA issued Findings of Fact and Conclusions of Law ("FFCL") in the EDLA Lawsuit, awarding Delta $8.25 million in liquidated damages for International Marine's thirty-three (33) breaches of the non-competition provisions of the VSA, plus pre-judgment interest, and finding that IOS was liable under the Parent Guaranty.  The EDLA issued a Final Judgment based upon the FFCL on October 14, 2014 ("Final Judgment"), awarding pre-judgment interest from February 20, 2009 to the date of judgment, October 14, 2014.

12.      The judgment debtors, IM and IOS were (and are) insolvent and could not (and cannot) satisfy the Final Judgment.  IM and IOS nevertheless appealed the Final Judgment to the U.S. Fifth Circuit (Case No. 14-31192), without posting security.  This appeal, with credible arguments and risks on both sides, was pending during the negotiation and execution of the Settlement Agreements.

13.      After ruling on the underlying breaches and damages, the EDLA granted summary judgment against Valdes, finding that he owes 5% of the Final Judgment, plus judicial interest, fees and costs, directly to Delta.  The EDLA issued a final judgment on December 23, 2014.  This final judgment was appealed to the U.S. Fifth Circuit and enforcement against Valdes was suspended due to his posting of security.   This appeal is still pending with the U.S.

Fifth Circuit, but the appeal is stayed pending this Court's approval of the Settlement Agreements.

14.     Additionally, on March 3, 2015, the EDLA awarded Delta attorney's fees in the amount of $716,883.60 and costs in the amount of $56,370.17 related solely to the EDLA Lawsuit for the period of February 2009 through September 2014 ("Fees Award").  International (without positing security) and Valdes appealed the Fees Award to the U.S. Fifth Circuit (Case No. 15-30321).  That appeal has been stayed pending this Court's approval of the Settlement Agreements.

15.     On August 10, 2015, after the Settlement Agreements for which approval is being sought herein were executed, the U.S. Fifth Circuit issued an opinion and judgment in Case No. 14-31192 affirming the EDLA Final Judgment in part, vacating it in part and remanding the matter back to the EDLA for further consideration.  The U.S. Fifth Circuit upheld the award of $250,000 of liquidated damages for 28 of the 33 breaches, found that International was only liable for the amounts not paid for the first 5 breaches (as opposed to liquidated damages), and confirming generally the award of prejudgment interest.

16.     Subject to further proceedings before the EDLA on remand, the total amount for which International is liable for the breaches of the VSA (not counting fees and costs), as a result of the U.S. Fifth Circuit ruling, is approximately $9.75 million.  The total amount owed by International in the EDLA Lawsuit, which is currently on remand to the district court but stayed pending this Court's approval of the Settlement Agreement, is approximately $10.3 million ("Delta Damages"), with Valdes being liable for 5% of that amount.

**C.  19th JDC Lawsuit**

17.     While the EDLA Lawsuit was pending, in October 29, 2013, IOS sued Coats, Rose, Yale, Ryman & Lee, P.C. and two of its partners for malpractice relating to the alleged professional negligence and breach of fiduciary duties arising from alleged conflicts involving representation of both Stephen J. Williams and International.   IOS is attempting to recover through these claims the Delta Damages and other damages from the Coats Rose Group.   The Coats Rose Group has a variety of defenses to the claims against them in the 19th JDC Lawsuit. Delta has attached/seized IOS's claims against Coats Rose and its two partners in the 19th JDC Lawsuit.   The 19th JDC Lawsuit has been stayed pending this Court's approval of the Global Settlement Agreement.

**D.  24th JDC Lawsuit**

18.     Recognizing fact that IOS and IM cannot pay the Delta Damages in the EDLA Lawsuit due to their insolvency, Delta filed the 24th JDC Lawsuit on May 9, 2014 against the International Group, the Platinum Group, National Union, the Williams Group and Valdes to recover the Delta Damages and other damages.   The 24th JDC Lawsuit involves complicated and involved claims that include assumption and third party beneficiary actions, fraudulent transfer and breach of fiduciary duty claims, alter ego and single business enterprise claims, and oblique actions.   Valdes was dismissed from the 24th JDC Lawsuit since Delta already has a judgment against Valdes in the EDLA Lawsuit.   Moreover, through an exception of *res judicata*, Steele has been dismissed from the 24th JDC Lawsuit and certain claims against Williams arising under his assumption obligations have been dismissed.    Delta is appealing the judgment as to Steele and is the process of appealing the judgment as to Williams.   The appeal to the Louisiana Fifth Circuit Court of Appeal is stayed pending this Court's approval of the Settlement Agreements.

### E.  Settlement Negotiations

19.    A mediation among the Parties (except for Valdes) was held on July 27 and 28, 2015 and settlement negotiations continued after the mediation was concluded.  As a result of separate negotiations between Delta and Valdes, a settlement agreement was reached, with the Valdes Agreements being executed on July 29, 2015 and August 6, 2015.  As a result of the mediation and continued negotiations between Delta and the Williams Group, a Confidential Memorandum of Understanding was agreed on July 30, 2015 and the Williams Agreement was executed on August 5, 2015.

20.    As a result of the mediation and continued negotiations by and among all of the Parties, the Global Settlement Agreement was concluded and executed on August 5, 2015.  If approved by this Court, the Global Settlement Agreement, along with the Valdes Agreements and the Williams Agreement, resolve all claims, rights, demands, causes of action, defenses and exceptions arising out of or related to the EDLA Lawsuit, the 24th JDC Lawsuit and the 19th JDC Lawsuit.

21.    Per these Settlement Agreements, the Debtors are guaranteed $5.22 million upon the approval of this Motion, thereby avoiding expensive, complicated, risky and lengthy litigation and potential further collection difficulty given the insolvency of IOS and IM.  This $5.22 million is being held in trust pending this Court's approval of this Motion.

### RELIEF REQUESTED

22.    By this Motion, the Debtors seek an order, pursuant to Bankruptcy Rule 9019 and sections 105(a) and 363(b) of the Bankruptcy Code, approving the Settlement Agreements and authorizing the Debtors to take any and all action necessary to implement the Settlement Agreements.

## BASIS FOR RELIEF

23.     Settlements in bankruptcy are favored as a means of minimizing litigation, and expediting the administration of the bankruptcy estate.  *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (citing COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. 1993)); *In re TSIC, Inc.*, 393 B.R. 71, 78 (Bankr. D. Del. 2008).

24.     Section 105(a) of the Bankruptcy Code provides in relevant part that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).  Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l).  The standard for approval of the sale and use of property of the estate under section 363(b) of the Bankruptcy Code in this circuit is whether the debtor can demonstrate a sound business justification for the proposed transaction. *See Dai-ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Com.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions.") (citing to *Committee of Equity Sec. Holders v. Lionel Com. (In re Lionel Com.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).

25.     Bankruptcy Rule 9019 governs the procedural prerequisites to approval of a settlement, providing that:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

FED. R. BANKR. P. 9019(a).  Courts have interpreted this rule, as well as its predecessor,

section 27 of the Bankruptcy Act, as granting the debtor in possession broad authority to settle controversies.

26.     Courts in the Third Circuit examine four factors in determining whether to approve a proposed settlement: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Martin*, 91 F.3d at 393 (citing *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)); *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *TSIC*, 393 B.R. at 78.

27.     When applying these criteria to a particular motion, "the court is not supposed to have a 'mini-trial' on the merits, but should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness." *Aetna Casualty & Surety Co. v. Jasmine, Ltd (In re Jasmine, Ltd)*, 258 B.R. 119, 123 (D.N.J. 2000) (internal quotations omitted); *see also TSIC*, 393 B.R. at 79; *World Health*, 344 B.R. at 296. Although approval of a compromise is within the "sound discretion" of the bankruptcy court, *see World Health*, 344 B.R. at 296, the court should not substitute its judgment for that of a trustee or debtor in possession. *In re Parkview Hosp.-Osteopathic Med. Ctr.*, 211 B.R. 603, 610 (Bankr. N.D. Ohio 1996). The ultimate inquiry is whether the compromise is "fair, reasonable, and in the interests of the estate." *TSIC*, 393 B.R. at 78. A court need not be convinced that a proposed settlement is the best possible settlement, but "must conclude that it is within the reasonable range of litigation possibilities." *World Health*, 344 B.R. at 296 (internal citations omitted).

28.     Here, the Settlement Agreements are fair, reasonable, and in the best interests of the Debtors' estates. The Settlement Agreements are the product of extensive, active, good-faith

discussions and arms' length bargaining among Delta and the other Parties.    The global settlement embodied in the Settlement Agreements resolves long-running litigation claims, as the EDLA Lawsuit having been pending for nearly six years.    Most significantly, the Settlement Agreements provide Delta with a guaranteed recovery of $5.22 million, while outside the context of a settlement there is significant risk and uncertainty regarding the ability to collect 95% of the $10.3 million judgment the Debtors obtained in the EDLA Lawsuit.

29.    The Settlement Agreements also satisfy the factors cited in *Martin*.    Delta had (and has) a good probability of success on the merits in the EDLA Lawsuit, as evidence by the judgment it has obtained and the results of the U.S. Fifth Circuit appeal; however, Delta cannot recover 95% of its damages as IOS and IM are insolvent.    The probability of success in the other Lawsuits, through which Delta would have to pursue the remaining portion of the damages, is much more difficult to ascertain.    The 24th JDC Lawsuit involves highly complex litigation, with over thirty (30) total defendants represented by numerous different counsel.    For the most part the claims are very fact- and document-intensive and involve difficult to prove legal theories such as alter ego and single business enterprise.    The fraudulent transfer and breach of fiduciary duty claims and related oblique actions are extremely complicated and involve various prescription (statute of limitation) issues which have been asserted by the defendants relating to transactions going back as far as 2009.    Most of the defendants involved are very sophisticated and have strong incentives to fight these claims aggressively with their ample resources. Moreover, the more straight-forward claims in 24th JDC Lawsuit, the assumption claims against Williams and Steele, have been dismissed at the district court level, although those dismissals are being appealed.    The 24th JDC Lawsuit would most likely continue to be an extremely expensive and lengthy process, with the likelihood of numerous appeals.

30.     The 19th JDC Lawsuit against members of Coats, Rose, Yale, Ryman & Lee, P.C. (which is funding the majority of the settlement proceeds) is being advanced by IOS, with Delta having seized IOS's interests in that matter.  Again, IOS is insolvent and has indicated that it will not continue to fund the litigation.  A malpractice action is personal to the aggrieved party, which creates further complexities with respect to Delta trying to enforce any rights it may have.  Furthermore, the Coats Rose Group has various arguably meritorious defenses on the merits.

31.     The Debtors believe that the proposed settlement contemplated under the Settlement Agreements constitutes a cost-effective method for resolving many outstanding claims and avoiding the great expense and risk inherent in litigating these claims while resulting in the immediate recovery of a significant portion of the amount of the judgment rendered in the EDLA Lawsuit during the Debtors' reorganization process.  The Settlement Agreements guarantee a $5.22 million recovery for the Debtors upon the approval of this Motion, thereby avoiding the difficulty of prevailing on the pending claims against the Parties and potential collection difficulties upon any ultimate successful conclusion of litigation, which could be years away.  This is especially important given the insolvency of the IOS and IM, as there is no direct way to recover the amount of the judgment against them except through additional litigation against the other Parties.

32.     The Settlement Agreements resolve the disputes between Delta and a multitude of different parties, which will bring an end to lengthy and costly proceedings in at least three different courts (and appeals).  All of the issues resolved under the Settlement Agreements would take a substantial amount of time to fully litigate, with the potential for no ultimate benefit to the Debtors.  Any award in a litigation context could be significantly reduced by further attorneys' fees and litigation expenses.  The Settlement Agreements avoid the expense, inconvenience, and

delay of proceeding further with each of the Lawsuits.  Further, the Settlement Agreements, if approved, will eliminate an on-going distraction while the Debtors' management team navigates the company through chapter 11.

33.    Finally, the Settlement Agreements are in the best interest of creditors and the estates.  As noted above, the Settlement Agreements will provide the Debtors with $5.22 million in settlement of the Lawsuits—a helpful cash infusion as the Debtors complete their reorganization process and begin to focus on emergence from chapter 11.  The Debtors believe that the Settlement Agreements present a favorable result for the estates that is clearly in the best interests of creditors.

34.    For all the reasons set forth above, the Debtors submit that the Settlement Agreements are fair, reasonable, and appropriate and should be approved by this Court.

**NOTICE**

35.    The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 35 largest unsecured claims against the Debtors (on a consolidated basis); (c) Akin Gump Strauss Hauer & Feld LLP, as counsel to the Steering Group, Attn: Arik Preis and Michael S. Stamer; (d) counsel for the Parties to the Settlement Agreements; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**NO PRIOR REQUEST**

36.    No prior request for the particular relief sought in this Motion has been made to this or any other court in connection with these chapter 11 cases.

<u>**CONCLUSION**</u>

WHEREFORE the Debtors respectfully request that the Court: (a) enter an order, substantially in the form annexed as **<u>Exhibit A</u>** hereto, granting the relief requested herein; and (b) grant such other and further relief as may be just.

Dated:   September 3, 2015
         Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Tamara K. Minott*
Robert J. Dehney (No. 3578)
Eric D. Schwartz (No. 3134)
Matthew B. Harvey (No. 5186)
Tamara K. Minott (No. 5643)
1201 N. Market St., 16th Flr.
PO Box 1347
Wilmington, DE  19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
rdehney@mnat.com
eschwartz@mnat.com
mharvey@mnat.com
tminott@mnat.com

- and -

BAKER BOTTS LLP
Emanuel C. Grillo (admitted pro hac vice)
Christopher Newcomb (admitted pro hac vice)
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 892-4000
emanuel.grillo@bakerbotts.com
chris.newcomb@bakerbotts.com

- and -

James Prince II (admitted pro hac vice)
C. Luckey McDowell (admitted pro hac vice)
Meggie S. Gilstrap (admitted pro hac vice)
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 953-6500
jim.prince@bakerbotts.com
luckey.mcdowell@bakerbotts.com
meggie.gilstrap@bakerbotts.com

*Proposed Counsel for Debtors*
*and Debtors in Possession*