**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HERCULES OFFSHORE, INC., *et al.* | ) Case No. 15-11685 (KJC) |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |
| | ) **Hearing Date:** |
| | ) **September 24, 2015 at 10:00 a.m. (ET)** |
| | ) **Objections Due:** |
| | ) **September 17, 2015 at 4:00 p.m. (ET)** |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER
AUTHORIZING THE RETENTION AND EMPLOYMENT OF
BAKER BOTTS L.L.P. AS COUNSEL FOR THE DEBTORS AND DEBTORS IN
POSSESSION EFFECTIVE NUNC PRO TUNC TO THE PETITION DATE**

Hercules Offshore, Inc. ("HERO") and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), file this application (the "Application") for the entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the employment and retention of Baker Botts L.L.P. ("Baker Botts") to serve as the counsel to the debtors and debtors in possession effective *nunc pro tunc* to the Petition Date (as defined herein). In support of this Application, the Debtors submit the Declaration of Emanuel C. Grillo, a partner at Baker Botts (the "Grillo Declaration"), attached hereto as **Exhibit B-1** and the declaration of Beau Thompson, Senior Vice President, General Counsel, and Secretary of Hercules Offshore, Inc. and its affiliate chapter 11 debtors, which is attached hereto as **Exhibit C** (the "Thompson Declaration"). In further support of this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Cliffs Drilling Company (8934); Cliffs Drilling Trinidad L.L.C. (5205); FDT LLC (7581); FDT Holdings LLC (4277); Hercules Drilling Company, LLC (2771); Hercules Liftboat Company, LLC (0791); Hercules Offshore, Inc. (2838); Hercules Offshore Services LLC (1670); Hercules Offshore Liftboat Company LLC (5303); HERO Holdings, Inc. (5475); SD Drilling LLC (8190); THE Offshore Drilling Company (4465); THE Onshore Drilling Company (1072); TODCO Americas Inc. (0289); and TODCO International Inc. (6326). The Debtors' corporate headquarters is located at 9 Greenway Plaza, Suite 2200, Houston, Texas 77046.

Application, the Debtors rely upon the *Declaration of Troy L. Carson in Support of the First Day Motions* (the "First Day Declaration") (Docket No. 2) and respectfully state as follows.

### JURISDICTION AND VENUE

1.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-l(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.  Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The bases for the relief requested in this Motion are sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016 of the Local Rules.

### PROCEDURAL BACKGROUND

4.  On August 13, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief in this Court under chapter 11 the Bankruptcy Code.

5. The Debtors remain in possession of their property and are operating their business as debtors-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been requested or appointed in these chapter 11 cases.

6. On the Petition Date, the Debtors filed the *Debtors' Joint Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan") and the related *Solicitation and Disclosure Statement*, dated July 13, 2015 (the "Disclosure Statement").

### BACKGROUND

7. A detailed description of the Debtors' business, capital structure, and the events leading to these chapter 11 cases is fully set forth in the First Day Declaration.

8. The Debtors and their Non-Debtor Subsidiaries (collectively, "Hercules" or the "Company") are leading providers of shallow-water drilling and marine services to the oil and natural gas exploration and production industry globally.  Hercules operates a fleet of 27 self-elevating, mobile drilling units, or "jackup rigs," including one rig under construction, and 24 self-elevating, self-propelled "liftboat" vessels.  This diverse fleet is capable of providing services such as oil and gas exploration and development drilling, well service, platform inspection, maintenance and decommissioning operations.

9. Largely driven by the recent decline in the price of crude oil, Hercules, like other companies in the offshore drilling market, has faced challenges as demand for jackup rigs remains weak, while the market is scheduled to deliver a significant number of newbuild rigs in the next several years.  In early 2015, faced with a heavy debt burden, including approximately $1.2 billion in outstanding unsecured Senior Notes, and declining revenues, Hercules hired financial and legal advisors to evaluate a wide range of options to improve Hercules' financial

position in the event of a prolonged market downturn. As part of its consideration of several possible alternatives, Hercules and an ad hoc group of holders of Senior Notes—which would ultimately become the Steering Group—entered into negotiations regarding a potential restructuring transaction that would allow Hercules to substantially reduce its debt burden and secure additional liquidity to help Hercules navigate the current down cycle.

10. On June 17, 2015, after many weeks of intensive negotiations, the Debtors and the Steering Group, who together hold in excess of two-thirds of the aggregate principal amounts outstanding under the Senior Notes, entered into the Restructuring Support Agreement (as may be amended from time to time, the "Restructuring Support Agreement"). The Restructuring Support Agreement sets forth, subject to certain conditions, the commitment to and obligations of, on the one hand, the Debtors, and on the other hand, the Steering Group members in connection with a restructuring of the Debtors' Senior Notes, which is to be implemented through the Plan.

11. The restructuring transactions contemplated by the Plan will significantly deleverage the Debtors' balance sheet, eliminating the Debtors' funded debt obligations by converting the entire $1.2 billion in principal amount of its Senior Notes into 96.9% of the New HERO Common Stock. Despite the fact that the amount of the Debtors' liabilities significantly exceeds the Debtors' enterprise value—by more than $500 million—and thus, the existing equity holders are substantially out of the money, the Plan provides that the other 3.1% of the New HERO Common Stock and 100% of the New HERO Warrants, which provide holders the opportunity to purchase their pro rata share of up to an additional 20.0% of the New HERO Common Stock at a price per share based upon a $1.55 billion total enterprise value, will be allocated to existing equity holders in exchange for cancellation of their existing stock and their

agreement to grant the voluntary third-party releases set forth in the Plan.  Importantly, holders of Allowed General Unsecured Claims will be paid in the ordinary course of business in accordance with ordinary course terms under the Plan subject to any rights or defenses the Debtors may have to all or any portion of such Claims.  Effectively, the Plan will reinstate those General Unsecured Claims and leave them unimpaired.  The Debtors have also received commitments from certain members of the Steering Group for a new $450 million term loan exit facility to provide liquidity for the continuation of operations following the Effective Date.

## RELIEF REQUESTED

12.    By this Application, the Debtors seek the entry of the Order authorizing the retention and employment of Baker Botts as their attorneys in accordance with the terms and conditions set forth in that certain engagement letter between the Debtors and Baker Botts dated March 13, 2015, as amended on August 12, 2015 (the "Engagement Letter"), a copy of which is attached as Exhibit 1 to Exhibit A to the Application and incorporated herein by reference.

## BAKER BOTTS' QUALIFICATIONS

13.    The Debtors seek to retain Baker Botts because of Baker Botts' recognized expertise and extensive experience in the oil and gas industry and with debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code.  With restructuring professionals in New York and Texas, Baker Botts has been actively involved in major chapter 11 cases and has represented debtors and significant stakeholders in many cases, particularly in the energy industry.  For example, Baker Botts represented Global Geophysical Services, a publicly-traded global oil and gas seismic company that reorganized and exited bankruptcy in February 2015, ASARCO, and Pacific Lumber Company in their respective chapter 11 cases.  Baker Botts also represented NRG Energy, Inc. in its acquisition of Edison

Mission Energy through a chapter 11 plan of reorganization in 2014 and is currently representing Hunt Consolidated in the Energy Future Holdings cases in this District.

14. In preparing for its representation of the Debtors in these chapter 11 cases, Baker Botts has become familiar with the Debtors' businesses, debt structure, and many of the legal issues that may arise in the context of these chapter 11 cases. Baker Botts represented HERO in connection with its initial public offering of equity securities more than 10 years ago, has represented HERO in connection with various corporate, litigation and other matters for many years, and has provided general finance counsel to the Debtors for more than 10 years prior to the Debtors' bankruptcy filing. In preparation for this filing, Baker Botts also advised the company in connection with the evaluation of competing restructuring proposals and represented the Debtors in the negotiation and drafting of the Restructuring Support Agreement, the Plan, the Disclosure Statement and related implementation documents. The Debtors believe that Baker Botts is both well qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

### SERVICES TO BE PROVIDED

15. Subject to further order of the Court and consistent with the Engagement Letter, the Debtors request the retention and employment of Baker Botts to render the following legal services:

    a.    advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

    b.    advising and consulting on the conduct of these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

    c.    attending meetings and negotiating with representatives of creditors and other parties in interest;

    d.    taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

    e.    preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

    f.    representing the Debtors in connection with negotiation, documentation and obtaining authority to enter into financing arrangements as may be required, including but not limited to, the exit financing contemplated by the Plan;

    g.    advising the Debtors in connection with any potential sale of assets;

    h.    appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

    i.    representing the Debtors and their current and former officers and directors in connection with any securities-based lawsuits and/or SEC inquiries;

    j.    advising the Debtors regarding tax matters;

    k.    taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan, in particular the Plan and Disclosure Statement on file with the Court and all documents related thereto; and

    l.    performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors; and (iii) advising the Debtors on corporate and litigation matters.

## PROFESSIONAL COMPENSATION

16.    Baker Botts intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court. The hourly rates and corresponding rate structure Baker Botts will use in these chapter 11 case are comparable to the hourly rates and corresponding rate structure that

Baker Botts uses for its work in other bankruptcy and non-bankruptcy matters, regardless of whether a fee application is required. These rates and the rate structure reflect that Baker Botts' work is often national in scope and involves great complexity, high stakes, and severe time pressures. Baker Botts will maintain detailed, contemporaneous records of time and any actual and necessary expenses incurred in connection with the rendering of the legal services described above by category and nature of the services rendered.

17. Baker Botts operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors. Prior to the Petition Date, Baker Botts charged the Debtors at a preferred rate that incorporates a discount of approximately 10-15% off of Baker Botts' standard billing rates. Baker Botts will maintain this same rate structure for post-bankruptcy, pre-confirmation time periods in 2015. Baker Botts did not vary its rates based on the filing of the bankruptcy case or the geographic location of the bankruptcy case.

18. Baker Botts' current standard hourly rates range as follows:

| **Billing Category** | **Range** |
|---|---|
| Partners | $750.00 - $1,250.00 |
| Special Counsel | $600.00 - $1,000.00 |
| Associates | $400.00 - $700.00 |
| Paraprofessionals | $165.00 - $325.00 |

19. The following professionals presently are expected to have primary responsibility for providing services to the Debtors, and their respective rates for this matter are set forth below:

| **Timekeeper** | **Rate** |
|---|---|
| Grillo, Emanuel (Manny) | $1,050.00 |
| McDowell, Luckey | $750.00 |
| Prince, Jim | $850.00 |

    Weedon, Luke               $800.00

  20.  In addition, as necessary, other Baker Botts professionals and paraprofessionals will provide services to the Debtors.[2] A complete list of Baker Botts professionals who are expected to provide services in connection with these chapter 11 cases and their hourly rates for this matter are attached as Exhibit B-2. In every instance, the rate is less than the individual's standard billing rate.

  21.  Baker Botts' hourly rates are set at a level designed to fairly compensate Baker Botts for the work of its attorneys and paraprofessionals and to cover fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[3]

  22.  It is Baker Botts' policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also Baker Botts' policy to charge its clients only the amount actually incurred by Baker Botts in connection with such items. Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

  23.  Baker Botts will charge for photocopy and facsimile expenses consistent with the United States Trustee guidelines in these chapter 11 cases. Computer-assisted legal research is

---

[2] Although Baker Botts does not anticipate using contract attorneys during these chapter 11 cases, in the unlikely event that it becomes necessary to use contract attorneys, Baker Botts will not charge a markup to the Debtors with respect to fees billed by such attorneys. Moreover, any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by Baker Botts will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.

[3] Baker Botts will provide ten business days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases during the period from the Petition Date through confirmation of Debtors' chapter 11 plan.

used whenever the researcher determines that using Westlaw is more cost effective than using traditional (non-computer assisted legal research) techniques.

### COMPENSATION RECEIVED BY BAKER BOTTS FROM THE DEBTORS

24.     As set forth in the Grillo Declaration, Baker Botts has provided, and agrees to continue to provide, assistance to the Debtors in accordance with the terms and conditions set forth in the Application and Engagement Letter.

25.     Pursuant to Bankruptcy Rule 2016(b), Baker Botts has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with Baker Botts or (b) any compensation another person or party has received or may receive.  As of the filing of the petitions, the Debtors did not owe Baker Botts any amounts for legal services rendered.

### BAKER BOTTS' DISINTERESTEDNESS

26.     To the best of the Debtors' knowledge and as disclosed herein and in the Grillo Declaration, (a) Baker Botts is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) Baker Botts has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Grillo Declaration.

27.     Baker Botts will periodically review its files during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, Baker Botts will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## SUPPORTING AUTHORITY

28. The Debtors seek retention of Baker Botts as their attorneys pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

29. Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

FED. R. BANKR. P. 2014.

30. The Debtors submit that for all the reasons stated above and in the Grillo Declaration, the retention and employment of Baker Botts as counsel to the Debtors is warranted. Further, as stated in the Grillo Declaration, Baker Botts is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Grillo Declaration.

## NOTICE

31. The Debtors will provide notice of this Application to: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 35 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Senior Notes Indenture Trustees; (d)

counsel to the Steering Group; (e) the United States Environmental Protection Agency; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the office of the attorneys general for the states in which the Debtors operate; (i) the Securities and Exchange Commission; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### NO PRIOR REQUEST

32.     No prior request for the relief sought in this Application has been made to this or any other court.

WHEREFORE, Debtors respectfully request that the Court enter an order granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: September 3, 2015

_____
Beau Thompson
Senior Vice President, General Counsel and Secretary
Hercules Offshore, Inc. and its Affiliated Debtors